**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, and ALLSTATE COUNTY MUTUAL INSURANCE COMPANY** | § | |
| **Plaintiffs** | § | |
| **vs.** | § | |
| **MICHAEL KENT PLAMBECK, D.C., MICHAEL CAPOBIANCO, D.C., ROBERT EKIN, D.C., PAUL GRINDSTAFF, D.C., RANDALL TOCA (aka RANDY TOCA), ROLAND G. TOCA II (aka RIC TOCA), ANGEL JUNIO, DOUGLAS FRIEDMAN, JENNIFER GIESSNER (fna JENNIFER BLAND, JENNIFER MAKARWICH), KIM GRINDSTAFF, CHARLES MORA, IRMA ESCANDON, EUGENE MERCIER, RODNEY SIPES, MARGARET INGLE (aka MEGAN INGLE), THOMAS MAGELANER, CHIROPRACTIC STRATEGIES GROUP, INC., MEDIA PLACEMENT SERVICES, INC., PROFESSIONAL MANAGEMENT GROUP, LLC, LAW OFFICE NETWORK, LLC, DOVE POINT CHIROPRACTIC CLINIC, INC., BROWNSVILLE CHIROPRACTIC CLINIC, INC., EL PASO CHIROPRACTIC CLINIC, LLC, WTC CHIROPRACTIC CLINIC, LLC, HARLINGEN CHIROPRACTIC CLINIC, INC., WOLFIN CHIROPRACTIC CLINIC, LLC, 11TH STREET CHIROPRACTIC CLINIC, LLC, MAINLAND CHIROPRACTIC CLINIC, LLC, BERGSTROM CHIROPRACTIC CLINIC, INC., LAREDO CHIROPRACTIC CLINIC,** | § | **Civil Action No. 3:08CV-0388-M** |

**LLC, SA CHIROPRACTIC CLINIC, LLC, §**
**N. CARRIER CHIROPRACTIC CLINIC, §**
**INC., BUCKNER 30 CHIROPRACTIC §**
**CLINIC, INC., HAMPTON §**
**CHIROPRACTIC CLINIC, INC., HALTOM §**
**CITY CHIROPRACTIC CLINIC, INC., §**
**BROWNSVILLE CHIROPRACTIC & §**
**WELLNESS CENTER, INC., §**
**CONGRESSIONAL CHIROPRACTIC §**
**HEALTH CENTER, INC., AKRON §**
**SQUARE CHIROPRACTIC, INC., EAST §**
**BROAD CHIROPRACTIC, INC., DAYTON §**
**CHIROPRACTIC, INC., OLD TOWN §**
**CHIROPRACTIC, INC., SHAKER SQUARE §**
**CHIROPRACTIC, INC., SHOREWAY §**
**CHIROPRACTIC, LLC, VERNON PLACE §**
**CHIROPRACTIC HEALTH CENTER, INC., §**
**WEST BROAD CHIROPRACTIC, INC., §**
**WEST TUSC CHIROPRACTIC, INC., §**
**WEST TUSC CHIROPRACTIC, LLC, §**
**YOUNGSTOWN CHIROPRACTIC, INC., §**
**ARLINGTON CHIROPRACTIC, INC., §**
**AMERICAN CHIROPRACTIC, INC., §**
**PEARL ROAD CHIROPRACTIC, INC., §**
**INDIANAPOLIS CHIROPRACTIC, LLC, §**
**MAIN STREET CHIROPRACTIC, INC., §**
**MONON TRAIL CHIROPRACTIC, INC., §**
**KENNEDY AVENUE CHIROPRACTIC, §**
**LLC, MOBILE SPINE & REHAB CENTER §**
**ON THE LOOP, INC., FIVE POINTS §**
**CHIROPRACTIC, INC., RAINBOW §**
**MARKETING CONSULTANTS, INC., §**
**SIPES & ASSOCIATES, PLLC (fna SIPES & §**
**BOUDREAUX, PLLC), LAW OFFICES OF §**
**EUGENE X. MERCIER, PLLC, THE INGLE §**
**LAW FIRM, LLC, and MAGELANER & §**
**ASSOCIATES, LTD. §**

**Defendants**

**<u>PLAINTIFFS' FIRST AMENDED ORIGINAL COMPLAINT</u>**

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Come now **Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, and Allstate County Mutual Insurance Company,** hereinafter referred to as "Plaintiffs," and complain of:

(1) **Michael Kent Plambeck, D.C.,**

(2) **Michael Capobianco, D.C.**

(3) **Robert Ekin, D.C.**

(4) **Paul Grindstaff, D.C.**

(5) **Randall Toca, aka Randy Toca**

(6) **Roland Garic Toca II, aka Ric Toca**

(7) **Angel Junio**

(8) **Douglas Friedman**

(9) **Jennifer Giessner**

(10) **Kim Grindstaff**

(11) **Charles Mora**

(12) **Irma Escandon**

(13) **Eugene Mercier**

(14) **Rodney Sipes**

(15) **Margaret Arlene Henderson Ingle, aka Megan Ingle**

(16) **Thomas Magelaner**

(17) **Chiropractic Strategies Group, Inc.**

(18) **Media Placement Services, Inc.**

(19) **Professional Management Group, LLC**

(20) **Law Office Network, L.L.C**

(21) **Dove Point Chiropractic Clinic, Inc.**

(22) **Brownsville Chiropractic Clinic, Inc**

(23) **El Paso Chiropractic Clinic, LLC**

(24) **WTC Chiropractic Clinic, LLC**

(25) **Harlingen Chiropractic Clinic, Inc.**

(26) **Wolfin Chiropractic Clinic, LLC**

(27) **11th Street Chiropractic Clinic, LLC**

(28) **Mainland Chiropractic Clinic, LLC**

(29) **Bergstrom Chiropractic Clinic, Inc.**

(30) **Laredo Chiropractic Clinic, LLC**

(31) **SA Chiropractic Clinic, LLC**

(32) **N. Carrier Chiropractic Clinic, Inc.**

(33) **Buckner 30 Chiropractic Clinic, Inc.**

(34) **Hampton Chiropractic Clinic, Inc**.

(35) **Haltom City Chiropractic Clinic, Inc.**

(36) **Brownsville Chiropractic & Wellness Center, Inc.**

(37) **Congressional Chiropractic Health Center, Inc.**

(38) **Akron Square Chiropractic, Inc.**

(39) **East Broad Chiropractic, Inc.**

(40) **Dayton Chiropractic, Inc.**

(41) **Old Town Chiropractic, Inc.**

(42) **Shaker Square Chiropractic, Inc.**

(43) **Shoreway Chiropractic, LLC**

(44) **Vernon Place Chiropractic Health Center, Inc.**

(45) **West Broad Chiropractic, Inc.**

(46) **West Tusc Chiropractic, Inc.**

(47) **West Tusc Chiropractic, LLC**

(48) **Youngstown Chiropractic, Inc.**

(49) **Arlington Chiropractic, Inc.**

(50) **American Chiropractic, Inc.**

(51) **Pearl Road Chiropractic, Inc.**

(52) **Indianapolis Chiropractic, LLC**

(53) **Main Street Chiropractic, Inc.**

(54) **Monon Trail Chiropractic, Inc.**

(55) **Kennedy Avenue Chiropractic, LLC**

(56) **Mobile Spine & Rehab Center on the Loop, Inc.**

(57) **Five Points Chiropractic, Inc.,**

(58) **Rainbow Marketing Consultants, Inc.**

(59) **Sipes & Associates, PLLC (fna Sipes & Boudreaux, PLLC),**

(60) **Law Offices of Eugene X. Mercier, PLLC,**

(61) **The Ingle Law Firm, LLC,**

(62) **Magelaner & Associates, Ltd,**

hereinafter referred to collectively as “Defendants,” and for such action would respectfully show the Court as follows:

## I.
## PREDICATE

1. Plaintiffs seek to recover sums fraudulently procured by Defendants from Plaintiffs since at least 2002, by means of bodily injury claims based on chiropractic billings for unnecessary and unreasonable examinations, x-rays, and treatment. Plaintiffs also request relief under the Federal Declaratory Judgment Act, 28 United States Code, Section 2201, to determine their duty to pay for purported chiropractic treatment of certain insureds, and third parties making claims against insureds, and Plaintiffs' right to recover such payments previously made to Defendants.

2. Plaintiffs would show this Honorable Court that Defendants telemarket individuals involved in automobile collisions, and solicits them to come to a chiropractic clinic operated by Defendants. The solicited individuals are told they will receive a free initial examination, if they accept an appointment. Telemarketers, at times, misrepresent that they are automobile insurance company representatives. At other times, the telemarketer misrepresent that they are a hospital representative, or offer the solicited individual other incentives, such as gift cards, if they will come to the clinic. In Alabama, where uninvited telephone solicitation of prospective patients by chiropractors is prohibited, the telemarketers solicit the individuals to go to a purported medical clinic located within the chiropractic clinic, and the purported medical clinic in turn allegedly refers the solicited person to a chiropractic clinic operated by Defendants.

3. At the clinics, the individuals are advised that they have injuries requiring treatment. Supposed x-rays results are often utilized to convince the solicited person that they need treatment. However, although the x-rays are charged, they often are not of diagnostic quality. It is now questionable whether some x-rays were in fact taken.

4. The individuals are also told, prior to treatment and as an additional incentive to accept treatment, that they will never be personally liable for payment of clinic bills. However, patients are presented various documents to sign, including an assignment document. This document contains various authorizations and assignments, and a portion of the document contains a provision where the new patient purports to acknowledge that they remain personally liable for payment of all clinic bills. These documents are then forwarded to automobile insurers such as Plaintiffs.

5. The individuals are also referred to particular law offices associated with the Enterprise.

6. The individuals are put through a set course of unnecessary treatment. Defendants then generate documents, such as narrative reports and billings, to falsely substantiate the unnecessary treatment. These documents are presented to automobile insurers, such as Plaintiffs, directly or through the law offices to which the patients were referred.

7. As a result, Plaintiffs have been damaged by the payment of sums in regard to the claims at issue. To obtain just compensation for this organized fraudulent activity, Plaintiffs seek treble damages, plus interest thereon, and the costs of this suit, including reasonable attorneys' fees, pursuant to Title 18, United States Code, Sections 1962 (c) and (d), and Section 1964 ("RICO"). Plaintiffs also seek compensatory and exemplary damages under applicable state law.

## II.
## ADOPTION AND INCORPORATION OF RICO CASE STATEMENT AND APPENDIX DOCUMENTS FILED UNDER SEAL

8. On June 23, 2008, Plaintiffs filed a detailed *RICO Case Statement* in this cause of action. Plaintiffs also filed an Appendix to the *RICO Case Statement*. Pursuant to Order of this Court, the documents attached to the Appendix are filed under seal. Copies of the documents filed under seal have been provided to Defendants.

9. Exhibit A of the Appendix to the *RICO Case Statement* is a matrix containing the identification of the patients at issue. The Matrix also includes further information, such as the Defendants' clinic at which the patient was purportedly treated, the law office that represented the patient in claims with Plaintiffs, and predicate mailing dates of assignment documents, representation letters, and demand letters.

10. Exhibit B of the Appendix to the *RICO Case Statement* consists of the assignment documents, representation letters, and demand letters referenced in the Exhibit A Matrix. These documents identify the Chiropractic Strategies clinic, or law office employee who purportedly forwarded the document, the Plaintiffs' representative to whom it was addressed, and the date of the document. These documents also contain misrepresentations made to Plaintiffs.

11. Plaintiffs adopt and incorporate the *RICO Case Statement* and the documents filed under seal by reference, as if fully copied and set forth at length herein. *See* Federal Rule of Civil Procedure 10(c).

## III. JURISDICTION AND VENUE

12. Pursuant to Title 28, United States Code, Section 1331, this Court has subject matter jurisdiction over the claims alleged in Counts One and Two because such claims arise under the laws of the United States, specifically Title 18, United States Code, Sections 1962(c) and (d) and 1964. Pursuant to Title 28, United States Code, Section 1367, this Court has subject matter jurisdiction over the state common law fraud, conspiracy, unjust enrichment, declaratory relief, and racketeering claims alleged in Counts Three through Eight, because they are so related to the RICO claims they form part of the same case or controversy.

13. Venue is proper in this District pursuant to Title 28, United States Code, Section 1391 (a) and (c) in that a substantial part of the events or omissions giving rise to the claims alleged

herein occurred within this District. Venue is also proper pursuant to Title 18, United States Code, Section 1965(a) and (b), as a number of the Defendants reside, or maintain their principle place of business, in this District.

## IV.
## PARTIES

**A. Plaintiffs**

14. Plaintiff, **Allstate Insurance Company,** is a corporation incorporated under the laws of Illinois, with its principal place of business in Illinois.

15. Plaintiff, **Allstate Indemnity Company,** is a corporation incorporated under the laws of Illinois, with its principal place of business in Illinois.

16. Plaintiff, **Allstate Property & Casualty Insurance Company,** is a corporation incorporated under the laws of Illinois, with its principal place of business in Illinois.

17. Plaintiff, **Allstate County Mutual Insurance Company,** is a corporation incorporated under the laws of Texas, with its principal place of business in Texas.

**B. Defendants**

18. Defendant, **Michael Kent Plambeck, D.C.**, is a citizen and resident of the State of Texas, and may be served at his residence, 4321 Windhaven, Dallas, Texas, or place of business, 1184 W. Pioneer Parkway, Arlington, Texas, or alternative place of business, 1919 Veterans Memorial Boulevard, Suite 300, Kenner, Louisiana. Plambeck has answered in this cause of action.

19. Defendant, **Michael Capobianco, D.C.**, is a citizen and resident of the State of Ohio, and may be served at his residence, 5248 Tanager Avenue N.E., Canton, Ohio. Capobianco has answered in this cause of action.

20. Defendant **Robert Ekin, D.C.,** is a citizen and resident of the State of Indiana, and may be served at his residence, 6326 West Wellington Way, Apartment D, McCordsville, Indiana. Ekin has answered in this cause of action.

21. Defendant, **Paul Grindstaff, D.C.**, is a citizen and resident of the State of Texas, and may be served at his place of business, 5309 N. McColl Road, McAllen, Texas. Paul Grindstaff has answered in this cause of action.

22. Defendant, **Randall Toca**, **aka Randy Toca** is a citizen and resident of the State of Louisiana, and may be served at his place of business, 1919 Veterans Memorial Boulevard, Suite 303, Kenner, Louisiana. Randy Toca has appeared and filed a responsive pleading in this cause of action.

23. Defendant, **Roland Garic Toca II**, **aka Ric Toca**, is a citizen and resident of the State of Louisiana, and may be served at his place of business, 1919 Veterans Memorial Boulevard, Suite 303, Kenner, Louisiana. Ric Toca has appeared and filed a responsive pleading in this cause of action.

24. Defendant, **Angel Junio**, is a citizen and resident of the State of Louisiana, and may be served at his place of business, 610 Baronne Street, New Orleans, Louisiana. Angel Junio has appeared in this cause of action by filing an answer, which has been subsequently stricken as not being in proper form pursuant to Federal Rule of Civil Procedure 11(a), specifically in regard to failure to provide an address and telephone number. Junio has subsequently filed correspondence with the Court providing this information.

25. Defendant, **Douglas Friedman**, is a citizen and resident of the State of Louisiana, and may be served at his place of business, 1919 Veterans Memorial Boulevard, Suite 300, Kenner, Louisiana. Friedman has answered in this cause of action.

26. Defendant, **Jennifer Giessner**, is a citizen and resident of the State of Texas, and may be served at her residence, 3611 Lake Tahoe, Arlington, Texas 76016, or place of business, 1184 W. Pioneer Parkway, Arlington, Texas. Giessner has answered in this cause of action.

27. Defendant, **Kim Grindstaff**, is a citizen and resident of the State of Texas, and may be served at her place of business, 5309 N. McColl Road, McAllen, Texas. Kim Grindstaff has answered in this cause of action.

28. Defendant **Charles "Charlie" Mora** is a citizen and resident of the State of Texas, and may be served at his residence, 11301 N. Taylor Road, McAllen, Texas. Mora has answered in this cause of action.

29. Defendant **Irma Escandon** is a citizen and resident of the State of Texas, and may be served at her residence, 7779 Tuscarora, El Paso, Texas. Escandon has answered in this cause of action.

30. Defendant, **Eugene Mercier**, is a citizen and resident of the State of Texas, and may be served at his place of business, 4550 Corona, Corpus Christi, Texas. Mercier has answered in this cause of action.

31. Defendant, **Rodney Sipes**, is a citizen and resident of the State of Texas, and may be served at his place of business, 3007 W. Alberta Road, Edinburg, Texas. Sipes has appeared and filed a responsive pleading in this cause of action.

32. Defendant, **Margaret Arlene Henderson Ingle, aka Megan Ingle**, is a citizen and resident of the State of Texas, and may be served at her place of business, 2101 South I.H. 35, Suite 215, Austin, Texas. Ingle has appeared and filed a responsive pleading in this cause of action.

33. Defendant, **Thomas Magelaner,** is a citizen and resident of the State of Ohio, and may be served at his place of business, 1557 Vernon Odom Boulevard, Suite 201, Akron, Ohio. Magelaner has appeared and filed a responsive pleading in this cause of action.

34. Defendant, **Chiropractic Strategies Group, Inc.,** is a corporation organized under the laws of the State of Texas, with its principal place of business in Arlington, Texas. **Chiropractic Strategies Group, Inc.** may be served through its registered agent for service, Jennifer Giessner, or through any of its officers, at its corporate home office, 1184 W. Pioneer Parkway, Arlington, Texas. Chiropractic Strategies Group has answered in this cause of action.

35. Defendant, **Media Placement Services, Inc.,** is a corporation organized under the laws of the State of Louisiana, with its principal place of business in Kenner, Louisiana. **Media Placement Services, Inc.** may be served through its director and registered agent for service, Michael Kent Plambeck, 1919 Veterans Memorial Boulevard, Suite 300, Kenner, Louisiana. Media Placement Services has answered in this cause of action.

36. Defendant, **Professional Management Group, LLC**, is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business in Kenner, Louisiana. **Professional Management Group, LLC** may be served through its manager and registered agent for service, Randall J. Toca, 1919 Veterans Memorial Boulevard, Suite 303, Kenner, Louisiana. Professional Management Group has appeared and filed a responsive pleading in this cause of action.

37. Defendant, **Law Office Network, LLC**, is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business in Kenner, Louisiana. **Law Office Network, LLC** may be served through its manager and registered agent for service,

Randall J. Toca, 1919 Veterans Memorial Boulevard, Suite 303, Kenner, Louisiana. Law Office Network has appeared and filed a responsive pleading in this cause of action.

38. Defendant, **Dove Point Chiropractic Clinic, Inc.,** doing business as Dove Point Chiropractic, is a corporation organized under the laws of the State of Texas, with its principal place of business in Arlington, Texas. **Dove Point Chiropractic Clinic, Inc.** may be served through its registered agent for service, Jennifer Giessner, or through any of its officers, at its registered office, 1184 W. Pioneer Parkway, Arlington, Texas. Dove Point Chiropractic Clinic has answered in this cause of action.

39. Defendant, **Brownsville Chiropractic Clinic, Inc.**, is a corporation organized under the laws of the State of Texas, with its principal place of business in Arlington, Texas. **Brownsville Chiropractic Clinic, Inc.** may be served through its registered agent for service, Jennifer Giessner, or through any of its officers, at its registered office, 1184 W. Pioneer Parkway, Arlington, Texas. Brownsville Chiropractic Clinic has answered in this cause of action.

40. Defendant, **El Paso Chiropractic Clinic, LLC,** is a limited liability company organized under the laws of the State of Texas, with its principal place of business in Arlington, Texas. **El Paso Chiropractic Clinic, LLC,** may be served through its registered agent for service, Jennifer Giessner, or members, Michael Capobianco or Michael Kent Plambeck, at its registered office, 1184 W. Pioneer Parkway, Arlington, Texas. El Paso Chiropractic Clinic has answered in this cause of action.

41. Defendant, **WTC Chiropractic Clinic, LLC,** is a limited liability company organized under the laws of the State of Texas, with its principal place of business in Arlington, Texas. **WTC Chiropractic Clinic, LLC,** may be served through its registered agent for service, Jennifer Giessner, or members, Michael Kent Plambeck or Susan Plambeck, at its registered

office, 1184 W. Pioneer Parkway, Arlington, Texas. WTC Chiropractic Clinic has answered in this cause of action.

42. Defendant, **Harlingen Chiropractic Clinic, Inc.,** is a corporation organized under the laws of the State of Texas, with its principal place of business in Arlington, Texas. **Harlingen Chiropractic Clinic, Inc.,** may be served through its registered agent for service, Jennifer Giessner, or through any of its officers, at its registered office, 1184 W. Pioneer Parkway, Arlington, Texas. Harlingen Chiropractic Clinic has answered in this cause of action.

43. Defendant, **Wolfin Chiropractic Clinic, LLC,** is a limited liability company organized under the laws of the State of Texas, with its principal place of business in Arlington, Texas. **Wolfin Chiropractic Clinic, LLC** may be served through its registered agent for service, Jennifer Giessner, or members, Michael Capobianco or Michael Kent Plambeck, at its registered office, 1184 W. Pioneer Parkway, Arlington, Texas. Wolfin Chiropractic Clinic has answered in this cause of action.

44. Defendant, **11th Street Chiropractic Clinic, LLC,** is a limited liability company organized under the laws of the State of Texas, with its principal place of business in Arlington, Texas. **11th Street Chiropractic Clinic, LLC** may be served through its registered agent for service, Jennifer Giessner, or managing member, Michael Kent Plambeck, at its registered office, 1184 W. Pioneer Parkway, Arlington, Texas. 11th Street Chiropractic Clinic has answered in this cause of action.

45. Defendant, **Mainland Chiropractic Clinic, LLC,** is a limited liability company organized under the laws of the State of Texas, with its principal place of business in Arlington, Texas. **Mainland Chiropractic Clinic, LLC** may be served through its registered agent for service, Jennifer Giessner, or managing member, Michael Kent Plambeck, at its registered office,

1184 W. Pioneer Parkway, Arlington, Texas. Mainland Chiropractic Clinic has answered in this cause of action.

46. Defendant, **Bergstrom Chiropractic Clinic, Inc.,** is a corporation organized under the laws of the State of Texas, with its principal place of business in Arlington, Texas. **Bergstrom Chiropractic Clinic, Inc.,** may be served through its registered agent for service, Jennifer Giessner, or through any of its officers, at its registered office, 1184 W. Pioneer Parkway, Arlington, Texas. Bergstrom Chiropractic Clinic has answered in this cause of action.

47. Defendant, **Laredo Chiropractic Clinic, LLC,** is a limited liability company organized under the laws of the State of Texas, with its principal place of business in Arlington, Texas. **Laredo Chiropractic Clinic, LLC** may be served through its registered agent for service, Jennifer Giessner, or members, Michael Capobianco or Michael Kent Plambeck, at its registered office, 1184 W. Pioneer Parkway, Arlington, Texas. Laredo Chiropractic Clinic has answered in this cause of action.

48. Defendant, **SA Chiropractic Clinic, LLC,** is a limited liability company organized under the laws of the State of Texas, with its principal place of business in Arlington, Texas. **SA Chiropractic Clinic, LLC** may be served through its registered agent for service, Jennifer Giessner, or members, Michael Capobianco or Michael Kent Plambeck, at its registered office, 1184 W. Pioneer Parkway, Arlington, Texas. SA Chiropractic Clinic has answered in this cause of action.

49. Defendant, **N. Carrier Chiropractic Clinic, Inc.,** is a corporation organized under the laws of the State of Texas, with its principal place of business in Arlington, Texas. **N. Carrier Chiropractic Clinic, Inc.,** may be served through its registered agent for service, Jennifer

Giessner, or through any of its officers, at its registered office, 1184 W. Pioneer Parkway, Arlington, Texas. N. Carrier Chiropractic Clinic has answered in this cause of action.

50. Defendant, **Buckner 30 Chiropractic Clinic, Inc.,** is a corporation organized under the laws of the State of Texas, with its principal place of business in Arlington, Texas. **Buckner 30 Chiropractic Clinic, Inc.** may be served through its registered agent for service, Jennifer Giessner, or through any of its officers, at its registered office, 1184 W. Pioneer Parkway, Arlington, Texas. Buckner 30 Chiropractic Clinic has answered in this cause of action.

51. Defendant, **Hampton Chiropractic Clinic, Inc.,** is a corporation organized under the laws of the State of Texas, with its principal place of business in Arlington, Texas. **Hampton Chiropractic Clinic, Inc.,** may be served through its registered agent for service, Jennifer Giessner, or through any of its officers, at its registered office, 1184 W. Pioneer Parkway, Arlington, Texas. Hampton Chiropractic Clinic has answered in this cause of action.

52. Defendant, **Haltom City Chiropractic Clinic, Inc.,** is a corporation organized under the laws of the State of Texas, with its principal place of business in Arlington, Texas. **Haltom City Chiropractic Clinic, Inc.** may be served through its registered agent for service, Jennifer Giessner, or through any of its officers, at its registered office, 1184 W. Pioneer Parkway, Arlington, Texas. Haltom City Chiropractic Clinic has answered in this cause of action.

53. Defendant, **Brownsville Chiropractic & Wellness Center, Inc.,** is a corporation organized under the laws of the State of Texas, with its principal place of business in Arlington, Texas. **Brownsville Chiropractic & Wellness Center, Inc.,** may be served through its registered agent for service, Jennifer Giessner, or through any of its officers, at its registered office, 1184 W. Pioneer Parkway, Arlington, Texas. Brownsville Chiropractic & Wellness Center has answered in this cause of action.

54. Defendant**, Congressional Chiropractic Health Center, Inc..,** is a corporation organized under the laws of the State of Ohio, with its principal place of business in Arlington, Texas. **Congressional Chiropractic Health Center, Inc.** may be served through its registered agent for service, CT Corporation System, 1300 E. 9th Street, Cleveland, Ohio 44114. Congressional Chiropractic Health Center has answered in this cause of action.

55. Defendant, **Akron Square Chiropractic, Inc.,** is a corporation organized under the laws of the State of Ohio, with its principal place of business in Akron, Ohio. **Akron Square Chiropractic, Inc.** may be served through its registered agent for service, Arlington Chiropractic, Inc., 1184 W. Pioneer Parkway, Arlington, Texas. Akron Square Chiropractic has answered in this cause of action.

56. Defendant, **East Broad Chiropractic, Inc.,** is a corporation organized under the laws of the State of Ohio, with its principal place of business in Columbus, Ohio. **East Broad Chiropractic, Inc.** may be served through its registered agent for service, CT Corporation System, 1300 E. 9th Street, Cleveland, Ohio 44114. East Broad Chiropractic has answered in this cause of action.

57. Defendant, **Dayton Chiropractic, Inc.,** is a corporation organized under the laws of the State of Ohio, with its principal place of business in Dayton, Ohio. **Dayton Chiropractic, Inc.** may be served through its registered agent for service, CT Corporation System, 1300 E. 9th Street, Cleveland, Ohio 44114. Dayton Chiropractic has answered in this cause of action.

58. Defendant, **Old Town Chiropractic, Inc.,** is a corporation organized under the laws of the State of Ohio, with its principal place of business in Columbus, Ohio. **Old Town Chiropractic, Inc.** may be served through its registered agent for service, Congressional

Chiropractic, Inc., 1184 W. Pioneer Parkway, Arlington, Texas. Old Town Chiropractic has answered in this cause of action.

59. Defendant, **Shaker Square Chiropractic, Inc.,** is a corporation organized under the laws of the State of Ohio, with its principal place of business in Cleveland, Ohio. **Shaker Square Chiropractic, Inc.** may be served through its registered agent for service, CT Corporation System, 1300 E. 9th Street, Cleveland, Ohio 44114. Shaker Square Chiropractic has answered in this cause of action.

60. Defendant, **Shoreway Chiropractic, LLC,** is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Cleveland, Ohio. **Shoreway Chiropractic, LLC** may be served through its registered agent for service, CT Corporation System, 1300 E. 9th Street, Cleveland, Ohio 44114. Shoreway Chiropractic has answered in this cause of action.

61. Defendant, **Vernon Place Chiropractic Health Center, Inc.,** is a corporation organized under the laws of the State of Ohio, with its principal place of business in Cincinnati, Ohio. **Vernon Place Chiropractic Health Center, Inc.** may be served through its registered agent for service, CT Corporation System, 1300 E. 9th Street, Cleveland, Ohio 44114. Vernon Place Chiropractic Health Center has answered in this cause of action.

62. Defendant, **West Broad Chiropractic, Inc.,** is a corporation organized under the laws of the State of Ohio, with its principal place of business in Columbus, Ohio. **West Broad Chiropractic, Inc.** may be served through its registered agent for service, CT Corporation System, 1300 E. 9th Street, Cleveland, Ohio 44114. West Broad Chiropractic has answered in this cause of action.

63. Defendant, **West Tusc Chiropractic, Inc.,** is a corporation organized under the laws of the State of Ohio, with its principal place of business in Arlington, Texas. **West Tusc Chiropractic, Inc.** may be served through its registered agent for service, CT Corporation System, 1300 E. 9th Street, Cleveland, Ohio 44114. West Tusc Chiropractic, Inc. has answered in this cause of action.

64. Defendant, **West Tusc Chiropractic, LLC,** is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Arlington, Texas. **West Tusc Chiropractic, LLC** may be served through its registered agent for service, CT Corporation System, 1300 E. 9th Street, Cleveland, Ohio 44114. West Tusc Chiropractic, LLC has answered in this cause of action.

65. Defendant, **Youngstown Chiropractic, Inc.** is a corporation organized under the laws of the State of Ohio, with its principal place of business in Youngstown, Ohio. **Youngstown Chiropractic, Inc.** may be served through its registered agent for service, CT Corporation System, 1300 E. 9th Street, Cleveland, Ohio 44114. Youngstown Chiropractic has answered in this cause of action.

66. Defendant, **Arlington Chiropractic, Inc.,** is a corporation organized under the laws of the State of Ohio, with its principal place of business in Arlington, Texas. **Arlington Chiropractic, Inc.** may be served through its registered agent for service, CT Corporation System, 1300 E. 9th Street, Cleveland, Ohio 44114. Arlington Chiropractic has answered in this cause of action.

67. Defendant, **American Chiropractic, Inc.** is a corporation organized under the laws of the State of Ohio, with its principal place of business in Toledo, Ohio. **American Chiropractic,**

**Inc.** may be served through its registered agent for service, CT Corporation System, 1300 E. 9th Street, Cleveland, Ohio 44114. American Chiropractic has answered in this cause of action.

68. Defendant, **Pearl Road Chiropractic, Inc.,** is a corporation organized under the laws of the State of Ohio, with its principal place of business in Middleburg Heights, Ohio. **Pearl Road Chiropractic, Inc.** may be served through its registered agent for service, CT Corporation System, 1300 E. 9th Street, Cleveland, Ohio 44114. Pearl Road Chiropractic has answered in this cause of action.

69. Defendant, **Indianapolis Chiropractic, LLC,** is a limited liability company organized under the laws of the State of Indiana, with its principal place of business in Arlington, Texas. **Indianapolis Chiropractic, LLC** may be served through its registered agent for service, CT Corporation System, 251 E. Ohio Street, Suite 1100**,** Indianapolis, Indiana 46204. Indianapolis Chiropractic has answered in this cause of action.

70. Defendant, **Main Street Chiropractic, Inc.,** is a corporation organized under the laws of the State of Indiana, with its principal place of business in Arlington, Texas. **Main Street Chiropractic, Inc.** may be served through its registered agent for service, CT Corporation System, 251 E. Ohio Street, Suite 1100**,** Indianapolis, Indiana 46204. Main Street Chiropractic has answered in this cause of action.

71. Defendant, **Monon Trail Chiropractic, Inc.,** is a corporation organized under the laws of the State of Indiana, with its principal place of business in Arlington, Texas. **Monon Trail Chiropractic, Inc.** may be served through its registered agent for service, CT Corporation System, 251 E. Ohio Street, Suite 1100**,** Indianapolis, Indiana 46204. Monon Trail Chiropractic has answered in this cause of action.

72. Defendant, **Kennedy Avenue Chiropractic, LLC,** is a limited liability company organized under the laws of the State of Indiana, with its principal place of business in Arlington, Texas. **Kennedy Avenue Chiropractic, LLC** may be served through its registered agent for service, CT Corporation System, 251 E. Ohio Street, Suite 1100**,** Indianapolis, Indiana 46204. Kennedy Avenue Chiropractic has answered in this cause of action.

73. Defendant, **Mobile Spine & Rehab Center on the Loop, Inc.**, is a corporation organized under the laws of the State of Alabama, with its principal place of business in Montgomery, Alabama. **Mobile Spine & Rehab Center on the Loop, Inc.** may be served through its registered agent for service, The Corporation Company, 2000 Interstate Park Drive, Suite 204, Montgomery, Alabama. Mobile Spine & Rehab Center on the Loop has answered in this cause of action.

74. Defendant, **Five Points Chiropractic, Inc.**, is a corporation organized under the laws of the State of Alabama, with its principal place of business in Montgomery, Alabama. **Five Points Chiropractic, Inc.** may be served through its registered agent for service, The Corporation Company, 2000 Interstate Park Drive, Suite 204, Montgomery, Alabama. Five Points Chiropractic has answered in this cause of action.

75. Defendant **Rainbow Marketing Consultants, Inc.**, is a corporation organized under the laws of the State of Tennessee, with its principle place of business in Marietta, Georgia, and registered as a foreign corporation doing business in Ohio. **Rainbow Marketing Consultants, Inc.** may be served through its registered agent for service in Ohio, Susan Harris, 3162 Lee Ellen Place, Columbus, Ohio. Rainbow Marketing Consultants has appeared and filed a responsive pleading in this cause of action.

76. Defendant **Sipes & Associates, PLLC (fna Sipes & Boudreaux, PLLC),** is a professional limited liability company organized under the laws of the State of Texas, with its principal place of business in Edinburg, Texas. **Sipes & Associates, PLLC** may be served through its registered agent for service, Rodney W. Sipes, 3007 W. Alberta, Edinburg, Texas. Sipes & Associates has appeared and filed a responsive pleading in this cause of action.

77. Defendant **Law Offices of Eugene X. Mercier, PLLC,** is a professional limited liability company organized under the laws of the State of Texas, with its principal place of business in Corpus Christi, Texas. **Law Offices of Eugene X. Mercier** may be served through its member and registered agent for service, Eugene X. Mercier, 4550 Corona Drive, Corpus Christi, Texas. Law Offices of Eugene X. Mercier has appeared and filed a responsive pleading in this cause of action.

78. Defendant **The Ingle Law Firm, LLC,** is a limited liability company organized under the laws of the State of Texas, with its principal place of business in Austin, Texas. **The Ingle Law Firm, LLC** may be served through its member and registered agent for service, Margaret Ingle, 2101 South I.H. 35, Suite 215, Austin, Texas. The Ingle Law Firm has appeared and filed a responsive pleading in this cause of action.

79. Defendant **Magelaner & Associates, Ltd,** is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Columbus, Ohio. **Magelaner & Associates, Ltd** may be served through its registered agent for service, Thomas Magelaner, 1557 Vernon Odom Boulevard, Suite 201, Akron, Ohio. Magelaner & Associates has appeared and filed a responsive pleading in this cause of action.

80. At all times relevant to the allegations in the Complaint, each Defendant was the agent of the others and responsible by law for the others' conduct.

## V.
## STATEMENT OF FACTS COMMON TO ALL CAUSES OF ACTION

### A. General Background

81. Michael Kent Plambeck ("Plambeck") is a chiropractor. He graduated from chiropractic school in 1982. Plambeck opened many clinics in the period 1983 through the early 1990s, in various states, including Texas, Indiana, Ohio, and Alabama. Plambeck has been licensed to practice chiropractic in a number of these states.

82. Those previous Texas, Indiana, Ohio, and Alabama clinics closed by the late 1990s, and are not at issue in this action.

### B. Formation of Corporate Entities

83. On June 15, 1992, Plambeck formed a Louisiana corporation, Media Placement Services, Inc., ("Media Placement") to conduct market research, lobby, and perform other advertising and marketing services for the clinics. Media Placement's corporate office is located in Kenner, Louisiana.

84. Plambeck has always been the sole owner and president of Media Placement.

85. In 1994, Douglas Friedman became marketing director for Plambeck's Behrman Chiropractic Clinics, Inc. His duties included managing Media Placement. Friedman has been the manager of Media Placement since that time.

86. Friedman has participated in lobbying efforts, developed advertising, etc, on behalf of the "Behrman" clinics, and later clinics operated through Chiropractic Strategies Group.

87. On January 9, 1996, Sid Weigand incorporated a Texas corporation, Chiropractic Strategies Group, Inc. ("Chiropractic Strategies"). At the time, Weigand was controller for

Plambeck's Behrman Chiropractic Clinics, Inc. Weigand also became controller for Chiropractic Strategies.

88. Chiropractic Strategies' corporate home office has always been located in Arlington, Texas. Sid Weigand himself officed in Arlington. Chiropractic Strategies has maintained a second office in Kenner, Louisiana.

89. Chiropractic Strategies was formed to provide management services to clinics owned by Plambeck or Plambeck entities.

90. Sid Weigand remained controller of Chiropractic Strategies until around 1997 or 1998, when he left the company to start his own, non-chiropractic related, business. Upon Weigand's departure, or soon thereafter, Jennifer Giessner (then known as Jennifer Bland) became Controller for Chiropractic Strategies. Giessner has, since that time, officed at Chiropractic Strategies' corporate home office in Arlington, Texas.

91. Giessner is a layperson, and has never held a Texas chiropractic license. On information and belief, she has never held a chiropractic license in any jurisdiction.

92. On September 22, 1997, Randy Toca organized a Louisiana limited liability company, Professional Management Group, LLC ("PMG").

93. Randy Toca and Jacquelyn Toca were the original members of PMG. On information and belief, Randy Toca is presently the only member of the company.

94. PMG was formed to provide management services to law offices, such as staffing, lease of office space, provision of equipment, etc.

95. Randy Toca has never been licensed to practice law in any jurisdiction.

96. PMG's corporate home office is located in Kenner, Louisiana.

97. Since its formation, PMG (or its successor, Law Office Network), have provided management services to law offices in various states.

98. PMG has had authority to draft checks on trust and/or operating accounts of law offices for which it provides management services. This includes the authority to draft checks on the trust accounts disbursing settlement proceeds.

99. In some cases, PMG has also had signatory authority over trust and operating accounts of law offices for which it provides management services.

100. On June 20, 2006, Randy Toca organized another Louisiana limited liability company, Law Office Network, LLC. Randy Toca is Law Office Network's sole member.

101. The purpose of Law Office Network is to provide management services to law offices, similar to the services provided by PMG. Law Office Network's corporate home office is located in Kenner, Louisiana.

102. Law Office Network, in whole or in part, took over the functions of PMG. Law Office Network is located in the same office suite as PMG, and PMG employees immediately became Law Office Network employees.

103. On October 3, 2007, Angel Junio organized a Louisiana limited liability company, Angel Law Management Group, LLC. On information and belief, this entity provides management services to law offices in various states.

104. Chiropractic Strategies' second corporate office, and the corporate home offices of Media Placement, PMG, and Law Office Network are all located at 1919 Veterans Memorial Boulevard, in Kenner, Louisiana.

105. Subsequent to PMG's formation, Chiropractic Strategies, PMG, and Media Placement associated together and began coordinating activities. Media Placement conducted advertising,

telemarketing, lobbying, etc. for clinics managed by Chiropractic Strategies, and PMG provided management services to law offices to which clinic patients could be referred.

106. Subsequent to its formation, Douglas Friedman became Chiropractic Strategies' marketing director, and began receiving compensation from both Chiropractic Strategies and Media Placement Services.

107. In the late 1990s, Kim Grindstaff (then known as Kim Estrada) became the billings and collections manager at Chiropractic Strategies Kenner, Louisiana office.

**C. <u>General Activities</u>**

108. Subsequent to the formation of Chiropractic Strategies, Chiropractic Strategies assumed management and control of Plambeck chiropractic clinics. The chiropractors and staff at these clinics are paid by Chiropractic Strategies. Hereinafter, these clinics will be referred to as "Chiropractic Strategies clinics."

109. Michael Capobianco, D.C. graduated from Logan College of Chiropractic in 1997. He was licensed to practice chiropractic in Ohio in 1999, and in Texas in 2000. He also obtained licenses in other states.

110. Capobianco was a resident of El Paso, Texas in the early 2000s.

111. Beginning around 2000, Capobianco assisted in opening additional Chiropractic Strategies clinics, and helps oversee clinic operations.

112. Robert Ekin, D.C., graduated from Logan College of Chiropractic in 1995. He was licensed to practice chiropractic in Ohio in 1996, and in Indiana in 2000. Subsequently, Ekin was licensed in other states, including Texas.

113. Beginning about 2000, Robert Ekin, D.C., became the clinic chiropractor at a Chiropractic Strategies clinic in Ohio. Subsequently, he assisted in the opening of Chiropractic Strategies clinics in Indiana, and other states.

114. Each Chiropractic Strategies clinic has one assigned chiropractor. The clinic will also have one to three assigned 'chiropractic assistants' or 'front desk' personnel. The clinic may also have a driver, to transport patients to and from the clinic.

115. Chiropractors are recruited by Defendants. Plambeck, Capobianco, and Giessner participate in the recruitment, and negotiation with potential new chiropractors.

116. The recruitment activities are generally directed from Kenner, Louisiana. Much of the recruitment efforts are directed to chiropractic colleges. For example, an October 10, 2007 notice placed by a Chiropractic Strategies recruiter with Western State Chiropractic College advertises positions in satellite clinics in a number of states, including Texas, Ohio, Indiana, and Alabama. Potential recruits are promised a salary of "$60,000 - $70,000/year minimum plus unlimited bonus to care for patients that we provide for you!" New Orleans area fax numbers are provided in such postings, for use by respondents in forwarding resumes, etc.

117. Plambeck and other Defendants prefer to hire newly graduated chiropractors, who do not have practical experience in clinic operations and management, or billing of services. Such chiropractors are less likely to question Defendants' policies, such as "conversion" of telemarketed individuals into patients, even when there is no basis to treat these persons, conducting extensive x-rays as a matter of routine, and advising prospective patients that they will never be liable for clinic bills to entice them to treat.

118. Newly recruited chiropractors usually receive initial training at the Chiropractic Strategies office in Kenner, Louisiana, followed by further training at the Dove Point

Chiropractic clinic in McAllen, Texas. The training includes the use of scripts in communicating with potential patients and patients. Plambeck personally conducts the training at the Kenner office. At times, Douglas Friedman participates in this training.

119. The Chiropractic Strategies' corporate home office in Arlington, Texas conducts staff recruitment and training, narrative report generation, clinic supplies, accounting, deposits, and payroll. Giessner oversees this office.

120. The Chiropractic Strategies' corporate office in Kenner, Louisiana conducts chiropractor recruiting, clinic billing, and clinic collections. PMG's/Law Office Network's corporate office in Kenner, Louisiana, conducts claims settlement negotiations in regard to some of the law offices for which it performs management services, purportedly on behalf of the law offices. All such law offices are located in other states. PMG's corporate office also issues checks from trust accounts of the law offices for which it performs management services, disbursing proceeds obtained in settlements to other states. Media Placement's corporate office in Kenner, Louisiana, conducts telemarketing to persons involved in motor vehicle accidents, in various states in which Chiropractic Strategies clinics are located.

**D. <u>Texas</u>**

121. During the period January 1999 through July 2000, Defendants had no clinics in Texas. However, Chiropractic Strategies continued to maintain its corporate home office in Arlington, Texas, in regard to its operations in other states. Plambeck maintained his residence of record in Dallas, Texas.

**1. Opening of the Texas Clinics at Issue**

122. In July 2000, Plambeck opened Dove Point Chiropractic clinic in McAllen. Subsequently, Dove Point Chiropractic was used as the location for the second phase of new

chiropractor training, for chiropractors to be assigned to Chiropractic Strategies clinics in the various states.

122. About the same time, Plambeck opened the Mesquite Chiropractic clinic, in Brownsville, Texas.

123. Beginning in 2001, Plambeck began opening other new clinics in Texas. The following clinics have been opened in Texas since July 2000:

| | | |
|---|---|---|
| (1) | Dove Point Chiropractic | 5309 N. McColl, Ste. A, McAllen |
| (2) | Harlingen Chiropractic | 1733 S. 77 Sunshine Strip, Ste. B, Harlingen |
| (3) | Weslaco Chiropractic | 623 A S. Texas Blvd., Weslaco |
| (4) | Mesquite Chiropractic | 1100 N. Expressway S-2, Brownsville |
| (5) | Brownsville Chiropractic & Wellness | 1213 E. Alton Gloor, Brownsville |
| (6) | Rio Grande Chiropractic | 5918 McPherson St., Laredo |
| (7) | Hillside Spine & Rehab | 201 W. Hillside Rd., Ste. 26, Laredo |
| (8) | Eastwood Chiropractic | 10664 Vista Del Sol, El Paso |
| (9) | Central Chiropractic | 2030 Montana Ave., El Paso |
| (10) | Leon Valley Chiropractic | 5407 Bandera, Ste. 21F, San Antonio |
| (11) | Ben White Chiropractic | 321 W. Ben White, Ste. 202, Austin |
| (12) | 11th Street Chiropractic | 105 N. 11th Street, Beaumont |
| (13) | Mainland Chiropractic | 1100 1st St., Ste. B, La Marque |
| (14) | Buckner 30 Chiropractic | 3040 N. Buckner Blvd., Dallas |
| (15) | Hampton Chiropractic | 2412-A W. Kiest Blvd., Dallas |
| (16) | Webb Chapel Chiropractic | 10016 Monroe Dr., Dallas |
| (17) | High Five Spine & Rehab | 13021 Coit Rd., #106, Dallas |
| (18) | Grand Prairie Chiropractic | 1101 N. Carrier Parkway, Ste. C, Grand Prairie |
| (19) | Haltom City Chiropractic | 2227 Haltom, Suite D, Haltom City |
| (20) | South Cooper Spine & Rehab | 1820 S. Cooper, Arlington |
| (21) | Washington Street Chiropractic | 2026 S. Washington St., Amarillo |

124. Capobianco assisted in the opening of the new Texas clinics and helps oversee clinic operations.

125. Corporations and limited liability companies were formed under Texas law, coinciding to the opening of these clinics. Generally, the officers, directors, and/or members of these entities consisted of, or included, Plambeck, Capobianco, and Giessner (previously known as Jennifer

Bland and Jennifer Makarwich). The address listed for all these individuals, and the entities, in the corporate filings is Chiropractic Strategies' home corporate office in Arlington, Texas (1028 W. Pioneer Parkway, Suite 100, and subsequently 1184 W. Pioneer Parkway).

126. Since 2000, Giessner organized or incorporated the following entities from Chiropractic Strategies' corporate home office in Arlington, Texas:

(1) Brownsville Chiropractic Clinic, Inc.
Articles of Incorporation filed April 21, 2000
Initial Director: Michael K. Plambeck

(2) Dove Point Chiropractic Clinic, Inc.
Articles of Incorporation filed May 22, 2000
Initial Director: Michael K. Plambeck

(3) El Paso Chiropractic Clinic, LLC
Articles of Organization filed September 11, 2000
Initial Members: Michael K. Plambeck, Michael A. Capobianco

(4) Harlingen Chiropractic Clinic, Inc.
Articles of Incorporation filed April 9, 2001
Initial Director: Michael K. Plambeck

(5) Wolfin Chiropractic Clinic, LLC
Articles of Organization filed April 20, 2001
Initial Members: Michael K. Plambeck, Michael A. Capobianco

(6) 11th Street Chiropractic Clinic, LLC
Articles of Organization filed September 10, 2001
Initial Members: Michael K. Plambeck, Eric Hawkins

(7) Mainland Chiropractic Clinic, LLC
Articles of Organization filed October 12, 2001
Initial Member: Michael K. Plambeck

(8) WTC Chiropractic Clinic, LLC
Articles of Organization filed November 19, 2001
Initial Members: Michael K. Plambeck, Susan Plambeck

(9) Bergstrom Chiropractic Clinic, Inc.
Articles of Incorporation filed February 6, 2002
Initial Directors: Michael K. Plambeck, Jennifer D. Giessner

(10) Laredo Chiropractic Clinic, LLC
Articles of Organization filed May 7, 2002
Initial Members: Michael K. Plambeck, Michael A. Capobianco

(11) SA Chiropractic Clinic, LLC
Articles of Organization filed June 7, 2002
Initial Members: Michael K. Plambeck, Michael A. Capobianco

(12) N. Carrier Chiropractic Clinic, Inc.
Articles of Incorporation filed September 29, 2004
Initial Directors: Michael K. Plambeck, Jennifer D. Giessner

(13) Buckner 30 Chiropractic Clinic, Inc.
Articles of Incorporation filed October 3, 2005
Initial Directors: Michael K. Plambeck, Jennifer D. Giessner

(14) Hampton Chiropractic Clinic, Inc.
Articles of Incorporation filed October 31, 2005
Initial Directors: Michael K. Plambeck, Jennifer D. Giessner

(15) Haltom City Chiropractic Clinic, Inc.
Articles of Incorporation filed November 23, 2005
Initial Directors: Michael K. Plambeck, Jennifer D. Giessner

(16) Walnut Hill Chiropractic, Inc.
Articles of Incorporation filed October 20, 2005
Initial Directors: Michael K. Plambeck, Jennifer D. Giessner

(17) Brownsville Chiropractic & Wellness Center, Inc.
Articles of Incorporation filed October 24, 2006
Initial Directors: Michael K. Plambeck, Jennifer D. Giessner

(18) High Five Spine & Rehab, Inc.
Certificate of Formation filed September 11, 2007
Initial Director: Michael Plambeck

(19) Arlington Spine & Rehab, Inc.
Certificate of Formation filed November 12, 2007
Initial Director: Michael Plambeck

(20) Hillside Spine & Rehab, Inc.
Certificate of Formation filed January 4, 2008
Initial Director: Michael Plambeck

127. Plambeck has been president, and Giessner the secretary, of these entities. In addition, they have been the directors of the corporations. On information and belief, Plambeck is the sole person with an ownership interest in these corporations. Plambeck and Capobianco have remained the members (owners) of the limited liability companies.

128. The corporations and limited liability companies correspond to Chiropractic Strategies clinics, and often file assumed name certificates with the Texas Secretary of State to do business as the clinics. For example, El Paso Chiropractic Clinic, LLC filed assumed name certificates to conduct business as both Eastwood Chiropractic and Central Chiropractic. In further example, Walnut Hill Chiropractic Clinic, Inc. filed an assumed name certificate to conduct business as Webb Chapel Chiropractic. The corporations and limited liability companies therefore purport to operate as, or own, the clinics. These corporations and limited liability companies (along with similar entities in Ohio, Indiana, and Alabama) shall be referred to collectively as the "Clinic Entities."

129. Clinic registrations have been filed with the Texas Board of Chiropractic Examiners in regard to some of these Chiropractic Strategies clinics. Plambeck, individually, is listed as sole owner of the clinics in these clinic registrations.

130. These corporations and limited liability companies do not maintain their own employees. The staff at the clinics are employed and paid by Chiropractic Strategies.

131. On January 8, 2008, Media Placement Services, Inc., filed an Application for Registration of a Foreign For-Profit Corporation with the Texas Secretary of State. Giessner filed the application, and is designated as Media Placement's registered agent at 1184 W. Pioneer Parkway.

132. On or before January 25, 2002, Robert Ekin, D.C., became the clinic chiropractor at Dove Point Chiropractic. Ekin had previously been the chiropractor at Chiropractic Strategies clinics in Ohio and Indiana in 2000-2001, and subsequently returned to Indiana in or about July 2002.

133. Paul Grindstaff, D.C. graduated from Parker College of Chiropractic in 1998. He was licensed to practice chiropractic in Texas in 1998. In March 2002, Grindstaff became the clinic chiropractor at Dove Point Chiropractic. Since that time, Grindstaff has been the primary trainer of new chiropractors during their second phase of initial training.

134. As set forth in paragraph 107, Kim Grindstaff (then known as Kim Estrada) was the billing and collections manager at Chiropractic Strategies' corporate office in Kenner, Louisiana. She continued to be a billing and collections manager in Kenner until about 2001 or 2002. At that time, Kim Grindstaff relocated to Dove Point Chiropractic. Subsequently, Kim Grindstaff has acted as a regional manager and supervisor of Chiropractic Strategies clinics in South Texas and in other parts of Texas, and has assisted in the opening of new Chiropractic Strategies clinics.

**2. Law Office Involvement in Texas**

135. As the new Texas clinics opened in the 2000s, Professional Management Group ("PMG") entered into relationships with licensed Texas attorneys to manage their law offices. As part of these relationships, PMG satellite law offices were opened in various Texas cities.

136. The above referenced satellite law offices were opened by Randy Toca and PMG in locations convenient to Chiropractic Strategies clinics. On information and belief, Randy Toca leases the space for these satellite law offices in PMG's name, and applies for certificates of occupancy for those properties in PMG's name.

137. There are no associate attorneys assigned to the satellite law offices by the licensed Texas attorney in whose name the office is opened, with the recent exception of the Rodney Sipes law office in Arlington, Texas. The lay persons working at these law offices are PMG employees.

138. Virtually all of the clients of these satellite law offices are patients referred from the Chiropractic Strategies clinics, and obtained by telemarketing.

139. Settlement negotiations are conducted by PMG/Law Office Network employees at the satellite law offices and from Kenner, Louisiana. PMG/Law Office Network employees represent themselves to be legal assistants at the satellite law offices.

140. In addition to the PMG/Law Office Network associated law offices, Plambeck established a referral relationship with Corpus Christi Attorney Eugene Mercier.

141. In the period at issue, Chiropractic Strategies clinics have referred patients obtained by telemarketing to Attorney Mercier's law offices and to the PMG associated law offices. Involved attorneys during the period at issue include:

**a. Initial Involved Law Offices**

142. On information and belief, in the period 2001-2002, Defendants entered into agreements with three Texas attorneys, in which law offices in these attorneys' names would receive referrals of telemarketed patients from the Chiropractic Strategies clinics. Various satellite law offices in the names of two of these attorneys were opened in Texas cities where Chiropractic Strategies clinics were located.

143. The third attorney, Stephen Leas, had his existing office in McAllen, Texas, in convenient proximity to several Chiropractic Strategies clinics. Around the beginning of 2002, the Leas law office location moved to the same shopping center as Dove Point Chiropractic.

144. The patients at issue in this lawsuit, and the law office representing same, are identified in Exhibit A to the Appendix to Plaintiffs' *RICO Case Statement*, previously filed under seal pursuant to court order and provided to Defendants.

145. The law offices presented injury claims for these patients, and received payments on those claims. As more fully described in paragraphs 248 through 313, these telemarketed patients were purportedly treated at the clinics. The billings presented in regard to these patients were for unnecessary and unreasonable treatment and other services, and for treatment not rendered. The law offices also assisted in concealing that the patients were not personally responsible for the billings in regard to the purported treatment. As such, these law offices perpetuated the Defendants' fraud scheme.

146. On information and belief, the relationship between PMG and these attorneys ceased by the beginning of 2003. In regard to the Leas law office, Attorney Leas had received a fully probated suspension of his law license in 2000. On July 9, 2002, Leas probation was revoked, he was actively suspended from the practice of law from July 15, 2002 through September 15, 2002, and placed on sixty-month probation thereafter.

**b. Law Offices of Rodney Sipes**

147. Attorney Rodney Sipes was licensed to practice law in Texas in 1988. He subsequently opened a law office in Edinburg, Texas.

148. In late 2002, Sipes entered into an agreement with Plambeck, Randy Toca, and other Defendants, whereby Chiropractic Strategies clinics began referring telemarketed patients to satellite law offices.

149. Pursuant to this agreement, satellite Sipes law offices would be opened in areas near Chiropractic Strategies clinics, to which telemarketed patients would be referred for legal

representation. A satellite law office was opened adjacent to Dove Point Chiropractic, in McAllen, in late 2002. Several persons who had worked at the Leas law office were transferred to this Sipes satellite office, which also had the same telephone number as the Leas law office. The new Sipes office assumed representation of a number of Chiropractic Strategies patients previously represented by the Leas law office. From 2002 through 2005, PMG and Randy Toca opened Sipes law offices in El Paso, San Antonio, Amarillo, Beaumont, Texas City, and Arlington.

150. On information and belief, PMG leased the office space for these satellite law offices. Randy Toca signed the December 2005 application for certificate of occupancy for the Sipes law office in Arlington, Texas. PMG was named as the company doing business from the property. In subsequent Arlington Fire Department inspection reports, PMG is also listed as the business occupying the address, with R.C. Castillo or Ric Toca listed as the primary persons to contact in an emergency (and Randy Toca as a secondary).

151. In February 2003, Sipes organized a Texas professional limited liability company, Sipes & Boudreaux, PLLC. Alan Boudreaux is a Louisiana attorney who, at the time, was not licensed to practice law in Texas. In December 2003, the name of this entity was changed to Sipes & Associates, PLLC. (This entity, along with similar entities in Ohio and Indiana, shall be referred to collectively as the "Law Office Entities.")

152. The Sipes satellite offices came to be operated in conjunction with Plambeck, Randy Toca, Ric Toca, Angel Junio, and other Defendants.

153. The Sipes Arlington office was supervised by R.C. Castillo in 2006 and part of 2007. Castillo personally conducted settlement negotiations from the Arlington office. In June 2008, Castillo was arrested and accused of paying a Dallas public employee in exchange for

information from accident reports prior to the public release of the information. On information and belief, Castillo was involved in such activity while supervising the Sipes law office, and transmitted the information to Defendants' telemarketers.

154. Ric Toca and Angel Junio have traveled to Texas and personally supervised operations of law offices in Texas.

155. Ric Toca and Angel Junio have personally conducted settlement negotiations from Louisiana and from law offices in Texas, as purported legal assistants of the law offices.

156. Ric Toca assumed his role of supervision of law offices and claims settlement shortly after his release from the federal penitentiary in 2005, where he had been incarcerated for the offense of conspiracy to commit embezzlement.

157. Around the same time Ric Toca assumed his role with PMG, Tim Thomas became a PMG claims manager, and personally conducted settlement negotiations from Louisiana on behalf of the Sipes law offices. Thomas had also recently been released from the federal penitentiary.

158. As documented in a December 5, 2005 Judgment of Public Reprimand entered by the Hidalgo County District Court, Attorney Sipes was found to have committed professional misconduct by violating Rule 5.03(a) of the Texas Disciplinary Rules of Professional Conduct. The disciplinary petition reveals the reprimand concerned a solicitation for Sipes' services by San Antonio Sipes law office employee Christina Velez, made to a patient while the patient was on the premises of Defendants' Leon Valley Chiropractic clinic in San Antonio on June 21, 2004. The patient had not requested the clinic to recommend an attorney and had not sought legal services through the clinic.

159. The patients at issue in this lawsuit, who were represented by the Sipes law offices, are identified in Exhibit A to the Appendix to Plaintiffs' *RICO Case Statement*, previously filed under seal pursuant to court order and provided to Defendants.

160. As more fully described in paragraphs 248 through 313, these telemarketed patients are purportedly treated at the clinics. The billings presented in regard to these patients are for unnecessary and unreasonable treatment and other services, and for treatment not rendered. The law offices also assist in concealing that the patients were not personally responsible for the billings in regard to the purported treatment. As such, the Sipes law offices are an integral part of the Defendants' fraud scheme.

**c. Law Office of Phyllis McCune**

161. Attorney Phyllis McCune was licensed to practice law in Oklahoma in 1989. She subsequently opened a law office in Tulsa, Oklahoma.

162. In 2005, Attorney McCune obtained a Texas law license. Subsequently, a McCune satellite law office was opened in McAllen, Texas. The McAllen law office does not have an associate attorney.

163. Attorney McCune's chief legal assistant is Annette Ozuna. Ozuna was previously a legal assistant at the Leas law office in McAllen, Texas, and then the Rodney Sipes satellite McAllen law office. Ozuna is the sister of Defendant Charlie Mora.

164. On information and belief, Attorney McCune reached agreement with other Defendants in regard to representing Chiropractic Strategies clinic patients, and the opening of the McAllen law office in her name. Once it opened, the McAllen McCune law office began receiving referrals from Chiropractic Strategies clinics.

165. The patients at issue in this lawsuit, who were represented by the McCune McAllen law office, are identified in Exhibit A to the Appendix to Plaintiffs' *RICO Case Statement*, previously filed under seal pursuant to court order and provided to Defendants

166. As more fully described in paragraphs 248 through 313, these telemarketed patients are purportedly treated at the clinics. The billings presented in regard to these patients are for unnecessary and unreasonable treatment and other services, and for treatment not rendered. The law office also assists in concealing that the patients were not personally responsible for the billings in regard to the purported treatment. As such, the law office perpetuates the Defendants' fraud scheme.

**d. Law Offices of Eugene Mercier/Megan Ingle**

167. Attorney Eugene Mercier was licensed to practice law in Texas in 1987. In 1994, Mercier formed a Texas corporation, Eugene X. Mercier, P.C. The charter for this entity was forfeited in 2002. In 2003, Mercier formed a Texas professional limited liability company, Law Offices of Eugene X. Mercier, PLLC. (These entities, along with similar entities in Ohio and Indiana, shall be referred to collectively as the "Law Office Entities.")

168. Attorney Eugene Mercier had a referral relationship with Plambeck in the 1990s, in regard to Plambeck's previous (now closed) clinics in the lower Rio Grande Valley. As a part of that relationship, Plambeck and Mercier paid Charlie Mora to illegally solicit clients for the Mercier law office. Mora, and persons he employed, operated out of an automobile repair facility. While soliciting persons in regard to automobile repair estimates, Mora and his employees would also solicit the person to go to the Mercier law office. The pattern of activity, therefore, differs from the present case, where Mora solicits persons to go to chiropractic clinics, who in turn refer new patients to law offices such as Sipes or Mercier. Mercier and Plambeck were later indicted for

barratry and conspiracy to commit barratry in Hidalgo County, Texas, in regard to this 1990s activity.

169. As documented in a November 3, 2006 *En Banc* Opinion and Order of the Texas Board of Disciplinary Appeals, Attorney Mercier had an extraordinary history of disciplinary sanctions by 2000. These included an agreed judgment of public reprimand by the Nueces County District Court in 1999, an agreed judgment of public reprimand imposed by a State Bar of Texas grievance committee in 1999, an agreed judgment of fully probated six-month suspension imposed by the Nueces County District Court in 1995, an agreed judgment of partially probated suspension based on a theft conviction imposed by the Nueces County District Court in 1991, and a judgment of private reprimand imposed by a State Bar grievance committee in 1988. The 2006 Order noted:

> "Mercier's first discipline occurred only eight months after he was licensed, and Mercier has continued to violate the ethical standards throughout his legal career. He is the only attorney ever to have come before this Board with felony convictions for both theft and barratry, two crimes expressly identified by the disciplinary system as serious offenses."

170. When the new Texas clinics began to open in 2000, Mercier entered into an agreement with Plambeck and other Defendants, whereby the new Chiropractic Strategies clinics began referring telemarketed patients to Mercier's law offices. Mercier's main office remained in Corpus Christi, Texas, with a satellite office in McAllen, Texas. Satellite Mercier law offices opened in Harlingen, Austin, Brownsville, and Laredo.

171. The patients at issue in this lawsuit, who were represented by the Mercier law offices, are identified in Exhibit A to the Appendix to Plaintiffs' *RICO Case Statement*, previously filed under seal pursuant to court order and provided to Defendants.

172. As more fully described in paragraphs 248 through 313, these telemarketed patients are purportedly treated at the clinics. The billings presented in regard to these patients are for

unnecessary and unreasonable treatment and other services, and for treatment not rendered. The law offices also assist in concealing that the patients were not personally responsible for the billings in regard to the purported treatment. As such, the Mercier/Ingle law offices are an integral part of the Defendants' fraud scheme.

173. The clinics refer telemarketed patients to the Mercier law offices based upon Mercier's past relationship with Plambeck and Mora, forged through illegal and criminal activity.

174. Mercier was tried and convicted of conspiracy to commit barratry in 2002. The Texas District Court granted a new trial and acquitted Mercier, and the State of Texas appealed. On May 19, 2005, the Texas Court of Appeals reversed the judgment of acquittal and remanded the case for sentencing. Mercier was subsequently (May 26, 2006) convicted and sentenced to six months confinement. The sentence was suspended, and Mercier placed on community supervision for two years. Mercier was also ordered to surrender his law license. On November 3, 2006, the Board of Disciplinary Appeals suspended Mercier's law license.

175. As a result of the Texas Court of Appeals' remand of his criminal case and his subsequent license suspension, Mercier allegedly ceased representing Chiropractic Strategies clinic patients. In fact, Mercier placed a newly licensed attorney, Megan Ingle, as a figurehead in his law offices.

176. Attorney Megan Ingle was licensed to practice law in Texas in November 2005, and subsequently opened a law office in Austin, Texas.

177. In Spring 2006, Ingle assumed representation of Chiropractic Strategies clinic patients who had been represented by Mercier. Mercier's Corpus Christi, McAllen, and Harlingen law offices became "Ingle" law offices, retaining the same addresses and telephone numbers. In September 2006, Ingle formed a Texas limited liability company, The Ingle Law Firm, LLC,

listing the Corpus Christi law office address as the entity home address. (This entity, along with similar entities in Ohio and Indiana, shall be referred to collectively as the "Law Office Entities.").

178. Chiropractic Strategies clinics continue to refer telemarketed patients to the "Ingle" law offices. The patients at issue in this lawsuit, who were represented by the Ingle law offices, are identified in Exhibit A to the Appendix to Plaintiffs' *RICO Case Statement*, previously filed under seal pursuant to court order and provided to Defendants.

**E. <u>Ohio</u>**

179. In the late 1980s and early 1990s, Plambeck opened several clinics in Ohio. These clinics closed by about 1995.

180. In late 1996, Plambeck opened Old Town Chiropractic in Columbus, and Vernon Place Chiropractic in Cincinnati.

**1. Opening of the Ohio Clinics at Issue**

181. Thereafter, Plambeck began opening other new clinics in Ohio. Although the clinics have operated under various names at different times, the following clinics have been opened in Ohio since late 1996:

| | | |
|---|---|---|
| (1) | Vernon Place Chiropractic | 3033 Vernon Place, Cincinnati |
| (2) | Old Town Chiropractic | 3431G Cleveland Avenue, Columbus |
| (3) | East Broad Chiropractic | 3354 East Broad Street, Columbus |
| (4) | Westgate Family Health | 2977 W. Broad Street, Columbus |
| (5) | Dorr Street Chiropractic | 3407 Dorr Street, Toledo |
| (6) | Akron Square Chiropractic | 1419 S. Arlington Street, Akron |
| (7) | Shaker Square Chiropractic | 11811 Shaker Blvd., Ste. 415, Cleveland |
| (8) | Northfield Chiropractic | 619 Northfield Drive, Bedford Heights |
| (9) | Pearl Road Chiropractic | 6508 Detroit Avenue, Cleveland |
| (10) | West Tusc Chiropractic | 3410 W. Tuscarawas, First Floor, Canton |
| (11) | Northside Chiropractic | 6023 N. Dixie Drive, Dayton |
| (12) | Youngstown Chiropractic | 4495 Market Street, Boardman |

Examples of changes in clinic name include: (1) Pearl Road Chiropractic has also been known as Shoreway Chiropractic and Detroit Shoreway Chiropractic, (2) Dorr Street Chiropractic has also been known as American Chiropractic, (3) Westgate Family Health has also been known as West Broad Chiropractic.

182. Corporations and limited liability companies were formed under Ohio law, coinciding to the opening of these clinics.

183. From 1996, Plambeck, Giessner (previously known as Jennifer Bland and Jennifer Makarwich), or other Chiropractic Strategies representatives organized or incorporated the following entities, from Chiropractic Strategies corporate home office in Arlington, Texas:

(1) Congressional Chiropractic Health Center, Inc.
Articles of Incorporation filed June 17, 1996

(2) Vernon Place Chiropractic Health Center, Inc.
Articles of Incorporation filed August 30, 1996

(3) West Tusc Chiropractic, Inc.
Articles of Incorporation filed May 20, 1997

(4) Youngstown Chiropractic, Inc.
Articles of Incorporation filed May 20, 1997

(5) Arlington Chiropractic, Inc.
Articles of Incorporation filed May 20, 1997

(6) East Broad Chiropractic, Inc.
Articles of Incorporation filed April 24, 1998

(7) American Chiropractic, Inc.
Articles of Incorporation filed July 17, 1998

(8) West Broad Chiropractic, Inc.
Articles of Incorporation filed October 20, 1998

(9) Shaker Square Chiropractic, Inc.
Articles of Incorporation filed June 1, 1999

(10) Dayton Chiropractic, Inc.
Articles of Incorporation filed March 6, 2000

(11) West Tusc Chiropractic, LLC
Articles of Incorporation filed April 17, 2000

(12) Pearl Road Chiropractic, Inc.
Articles of Incorporation filed January 2, 2004

(13) Shoreway Chiropractic, LLC
Articles of Organization filed February 25, 2005

184. On August 2, 1996, Congressional Chiropractic Health Center, Inc. filed a trade name registration for the name "Old Town Chiropractic Inc." On July 7, 1997, Arlington Chiropractic, Inc. filed a trade name registration for the name Akron Square Chiropractic, Inc.

185. Ohio Secretary of State records list the address for some of these entities as the Chiropractic Strategies' home corporate Arlington, Texas, address.

186. Plambeck has been president of these entities and is a director of the corporations. Giessner is currently the secretary of these entities and is also a director of the corporations. On information and belief, Plambeck is the sole person with an ownership interest in these corporations and is a member of the limited liability companies.

187. The corporations and limited liability companies correspond to Chiropractic Strategies clinics, and often file name registrations for fictitious names with the Ohio Secretary of State to do business as the clinics. The name registrations are signed and forwarded to the Ohio Secretary of State by Giessner, from the Chiropractic Strategies corporate home office in Arlington, Texas. For example,

- On October 4, 2004, West Broad Chiropractic, Inc. filed a name registration for the fictitious name "Westgate Family Health."

- On October 18, 2004, American Chiropractic, Inc. filed a name registration for the fictitious name "Dorr Street Chiropractic."
- On February 22, 2005, Pearl Road Chiropractic, Inc. filed a trade name registration for the fictitious name Detroit Shoreway Chiropractic.
- On July 5, 2005, Dayton Chiropractic, Inc. filed a name registration for the fictitious name "Northside Chiropractic."

The corporations and limited liability companies therefore purport to operate as, or own, the clinics. These corporations and limited liability companies (along with similar entities in Texas, Indiana, and Alabama) shall be referred to collectively as the "Clinic Entities."

188. These corporations and limited liability companies do not maintain their own employees. The staff at the clinics are employed and paid by Chiropractic Strategies.

189. On February 11, 1997, Media Placement Services, Inc., filed a Foreign Corporation Application for License with the Ohio Secretary of State. Plambeck signed the attestation to the application in Tarrant County, Texas, and the application was forwarded from Chiropractic Strategies corporate home office in Arlington, Texas.

190. On May 14, 2002, Media Placement Services, Inc. filed a Name Registration with the Ohio Secretary of State, to do business in Ohio under the fictitious name "Clinic Scheduling." The Name Registration was filed from the Chiropractic Strategies Arlington, Texas home office, by James P. White.

**2. Law Office Involvement in Ohio**

191. On information and belief, around the time of the expansion of the Ohio clinics in the late 1990s, PMG entered into a relationship with a Texas attorney to manage a satellite law office in

the attorney's name in Columbus, Ohio. Subsequently, PMG entered into a relationship with an Ohio attorney, Julie Pope, to manage the Columbus law office.

192. Randy Toca leased the space for this office. The lay persons working at this law office were PMG employees.

193. Attorney Thomas Magelaner was licensed to practice law in Ohio in 1990. Attorney Magelaner subsequently practiced law in Ohio. Around September 1998, Magelaner became a partner with Attorney Pope. Attorneys Pope and Magelaner entered into a "Management Agreement" with PMG on September 30, 1998 (an unsigned "Management Agreement" between PMG and "Pope, Magelaner & Associates, PLLC," with an effective date of September 30, 1998, was produced in jurisdictional discovery in the present lawsuit in June 2008). On October 13, 1998, articles of organization for "Pope, Magelaner & Associates, Ltd." were filed with the Ohio Secretary of State.

194. In 1999, Attorney Magelaner purportedly assumed sole ownership of the Columbus law office referenced above. Magelaner & Associates, Ltd. was formed in December 1999. (This entity, along with similar entities in Texas and Indiana, shall be referred to collectively as the "Law Office Entities.")

195. Magelaner entered into an agreement with Plambeck, Randy Toca, and other Defendants whereby PMG continued to manage that office and satellite Magelaner law offices. Chiropractic Strategies clinics continued to refer telemarketed patients to the Columbus office, and began to refer patients to satellite "Magelaner & Associates" law offices subsequently opened in Cincinnati and Akron for legal representation. Another satellite law office was later opened in Indianapolis, Indiana (see below). PMG (and/or Law Office Network) continued to manage these law offices until around April 28, 2008, approximately fifty-three days after the filing of this lawsuit.

196. By 2000, Randal Toca and PMG were authorized to sign and issue checks for the trust and operating accounts of the Magelaner law offices. They had this authority until around April 28, 2008, approximately fifty-three days after the filing of this lawsuit. By 2000, the operating account of the Magelaner law offices was held in a Kenner, Louisiana bank. That account was closed and replaced by an account in an Ohio bank subsequent to the filing of the present lawsuit.

197. These Ohio law offices came to be operated in conjunction with Plambeck, Randy Toca, and other Defendants.

198. The lay persons working at these law offices were employed by PMG (and/or Law Office Network).

199. The patients at issue in this lawsuit, who were represented by the Magelaner Ohio law offices, are identified in Exhibit A to the Appendix to Plaintiffs' *RICO Case Statement*, previously filed under seal pursuant to court order and provided to Defendants.

200. As more fully described in paragraphs 248 through 313, these telemarketed patients are purportedly treated at the clinics. The billings presented in regard to these patients are for unnecessary and unreasonable treatment and other services, and for treatment not rendered. The law offices also assist in concealing that the patients were not personally responsible for the billings in regard to the purported treatment. As such, the Magelaner law offices are an integral part of the Defendants' fraud scheme.

**F. <u>Indiana</u>**

201. In the early 1990s, Plambeck owned several clinics in Indiana. These clinics closed by about 1995. During the period 1996 through 2000, Defendants had no clinics in Indiana.

202. However, in 1997, Media Placement Services filed an Application for Certificate of Authority with the Indiana Secretary of State.

**1. Opening of the Indiana Clinics at Issue**

203. In 2000, Plambeck, assisted by Ekin, opened the Midtown Chiropractic clinic in Indianapolis.

204. Ekin had previously been clinic chiropractor at several Chiropractic Strategies clinics in Ohio.

205. Ekin was the first clinic chiropractor at Midtown Chiropractic. At times during the period 2001-2002, Ekin was outside Indiana opening and/or acting as clinic chiropractor at Chiropractic Strategies clinics in other states, including the Dove Point Chiropractic clinic in McAllen, Texas.

206. Beginning in 2003, Plambeck began opening other new clinics in Indiana. Ekin assisted in the opening of some of these clinics. The following clinics have been opened in Indiana since 2000:

| | | |
|---|---|---|
| (1) | Midtown Chiropractic | 1835 N. Meridian Street, Indianapolis |
| (2) | Kennedy Avenue Chiropractic | 6959 Kennedy Ave., Ste. B, Hammond |
| (3) | Main Street Chiropractic | 1116 N. Main St., #1, South Bend |
| (4) | Monon Trail Chiropractic | 6378 N. College Ave., Indianapolis |

Around 2007, the Midtown Chiropractic clinic was renamed Hands First Chiropractic.

207. Corporations and limited liability companies were formed under Indiana law, coinciding to the opening of these clinics. Generally, the officers, directors, and/or members of these entities consisted of or included Plambeck and Giessner. The address listed for all these individuals is Chiropractic Strategies' corporate office in Arlington, Texas (1028 W. Pioneer Parkway, Suite 100, and subsequently 1184 W. Pioneer Parkway).

208. From 2000, Giessner organized or incorporated the following entities from Chiropractic Strategies' corporate home office in Arlington, Texas:

(1) Indianapolis Chiropractic, LLC
Articles of Organization filed July 7, 2000

(2) Main Street Chiropractic, Inc.
Articles of Incorporation filed October 30, 2003

(3) Monon Trail Chiropractic, Inc.
Articles of Incorporation filed May 21, 2004

(4) Kennedy Avenue Chiropractic, LLC
Articles of Organization filed June 16, 2003

209. Indianapolis Secretary of State records list the address for each of the four entities as 1184 W. Pioneer Parkway, Arlington, Texas.

210. Subsequently, Plambeck has been president, and Giessner the secretary, of the corporations. On information and belief, Plambeck is the sole person with an ownership interest in these corporations. On information and belief, Plambeck and Ekin have been the members of the limited liability companies.

211. The four corporations and limited liability companies correspond to the four Indiana Chiropractic Strategies clinics. The corporations and limited liability companies therefore purport to operate as, or own, the clinics. These corporations and limited liability companies (along with similar entities in Texas, Ohio, and Alabama) shall be referred to collectively as the "Clinic Entities."

212. These corporations and limited liability companies do not maintain their own employees. The staff at the clinics are employed and paid by Chiropractic Strategies.

**2. Law Office Involvement in Indiana**

213. As the number of Indiana clinics expanded, PMG entered into relationships with attorneys to open Indiana satellite law offices in the attorney's name and manage those offices.

### a. LoCicero & Labourdette

214. Attorneys Andrew LoCicero and Scot Labourdette graduated from law school in 2001 and were both licensed to practice law in Louisiana in October 2001. In Summer, 2003, they opened a law firm, "LoCicero & Labourdette," in New Orleans, Louisiana.

215. Around the summer of 2003, Randy Toca initiated contact with LoCicero and Labourdette. Toca advised LoCicero and Labourdette that PMG managed law offices in several states, and he had contacts with many chiropractors, who would refer patients to law offices he managed. Toca proposed to LoCicero and Labourdette that they start a satellite office in Indianapolis, Indiana, which would be managed by PMG.

216. LoCicero and Labourdette accepted the offer, and entered into an oral agreement with Toca/PMG. Plambeck also met with LoCicero and Labourdette in New Orleans and approved the referral of patients to the future law office.

217. LoCicero and Labourdette were not licensed to practice law in Indiana, so they hired a recently licensed Indiana attorney as an associate for the office.

218. LoCicero and Labourdette organized an Indiana limited liability company, Locicero, Labourdette & Associates, LLC, in November 2003. (This entity, along with similar entities in Texas and Ohio, shall be referred to collectively as the "Law Office Entities."). A "LoCicero & Labourdette" law office, also known as "LoCicero Labourdette & Associates," was opened with Randy Toca's assistance in Indianapolis. PMG provided funding for the Indianapolis law office. This law office was in close proximity to the Midtown Chiropractic clinic.

219. Virtually all the clients of the Indianapolis law office were patients referred from Midtown Chiropractic or other Chiropractic Strategies clinics, and obtained by telemarketing.

220. Under the oral management agreement, PMG paid the law office's expenses, and was reimbursed from the office's operating account. When the Indianapolis law office settled a case, PMG drafted the disbursement checks from the law office's trust account.

221. Labourdette left the LoCicero & Labourdette firms around November 2004, and LoCicero closed the Indianapolis law office in early 2005.

222. The patients at issue in this lawsuit, who were represented by the LoCicero & Labourdette Indianapolis law office, are identified in Exhibit A to the Appendix to Plaintiffs' *RICO Case Statement*, previously filed under seal pursuant to court order and provided to Defendants.

223. As more fully described in paragraphs 248 through 313, these telemarketed patients are purportedly treated at the clinics. The billings presented in regard to these patients are for unnecessary and unreasonable treatment and other services, and for treatment not rendered. The law offices also assist in concealing that the patients were not personally responsible for the billings in regard to the purported treatment. As such, the Indianapolis LoCicero & Labourdette law office was an integral part of the Defendants' fraud scheme.

**b. Magelaner & Associates**

224. Around 2006, Magelaner entered into an agreement with Plambeck, Randy Toca, and other Defendants, whereby Chiropractic Strategies clinics began referring telemarketed patients to a satellite law office ostensibly operated by Magelaner in Indianapolis.

225. The "Magelaner & Associates" law office was opened in Indianapolis, in the same building as the prior "LoCicero & Labourdette" office. This office is in close proximity to the Midtown Chiropractic clinic. Once it opened, the Indianapolis law office began receiving referrals from Chiropractic Strategies clinics.

226. The Magelaner Indiana law office has the same operating and trust accounts as the Ohio Magelaner law offices. As set forth herein above, Randal Toca and PMG were authorized to sign and issue checks for the trust and operating accounts of the Magelaner law offices, until after the filing of the present action. The operating account of the Magelaner law offices was held at a bank in Kenner, Louisiana.

227. The patients at issue in this lawsuit, who were represented by the Magelaner Indiana law office, are identified in Exhibit A to the Appendix to Plaintiffs' *RICO Case Statement*, previously filed under seal pursuant to court order and provided to Defendants.

228. As more fully described in paragraphs 248 through 313, these telemarketed patients are purportedly treated at the clinics. The billings presented in regard to these patients are for unnecessary and unreasonable treatment and other services, and for treatment not rendered. The law office also assists in concealing that the patients were not personally responsible for the billings in regard to the purported treatment. As such, the law office perpetuates the Defendants' fraud scheme.

**G. <u>Alabama</u>**

229. In the late 1980s and early 1990s, Plambeck opened several "Behrman" clinics in Alabama. On information and belief, the Behrman clinics closed by 1995.

**1. Opening of the Alabama Clinics at Issue**

230. In Fall 2006, Plambeck opened the Five Points Chiropractic Clinic, 1318 20th St. South, #100, Birmingham, Alabama. On or about July 27, 2007, Plambeck opened the Bayside Spine and Rehab clinic, aka Mobile Spine and Rehab, 2480 Government Street, Mobile, Alabama. In January 2008, Plambeck opened Landmark Chiropractic in Huntsville, Alabama.

231. Since 2006, Giessner organized or incorporated the following entities from Chiropractic Strategies' corporate home office in Arlington, Texas:

(1) Five Points Chiropractic, Inc.
Articles of Incorporation filed September 6, 2006.

(2) Mobile Spine & Rehab Center on the Loop, Inc.
Articles of Incorporation filed June 20, 2007.

(3) Landmark Chiropractic, Inc.
Articles of Incorporation filed December 31, 2007.

232. The three corporations correspond to the three Alabama Chiropractic Strategies clinics. The corporations therefore purport to operate as, or own, the clinics. These corporations (along with similar entities in Texas, Ohio, and Indiana) shall be referred to collectively as the "Clinic Entities."

233. These corporations and limited liability companies do not maintain their own employees. The staff at the clinics are employed and paid by Chiropractic Strategies.

**2. Medical Clinic Involvement**

234. The Alabama Board of Chiropractic Examiners prohibits chiropractors from direct, uninvited solicitation of potential patients, including telephone solicitation. However, there is no similar prohibition in regard to medical doctors soliciting patients.

235. New Beginnings Medical Group was started by Dr. Glen Wilcoxson, M.D. in 1996, shortly after Wilcoxson was released from the federal penitentiary, where he had been incarcerated for multiple counts of mail fraud, wire fraud, and tax evasion. New Beginnings Medical Group's actual office/clinic is located in Daphne, Alabama. At the Daphne location, Dr. Wilcoxson is an advocate of alternative forms of medicine.

236. In about August or September 2006, Dr. Wilcoxson also saw patients on weekends in Birmingham, Alabama. Around that time, he was introduced to the chiropractor of Five Points

Chiropractic, Lowell Bragg, D.C. Chiropractor Bragg advised Dr. Wilcoxson that the clinic needed a medical doctor to perform consultations for its patients. Dr. Wilcoxson expressed interest in the proposal, and he was subsequently contacted by telephone by Plambeck. Dr. Wilcoxson accepted Plambeck's offer to conduct medical consultations of patients at Five Points Chiropractic.

237. Around July 2007, Plambeck contacted Dr. Wilcoxson by telephone. Plambeck advised Dr. Wilcoxson that he and his associates were starting a new clinic in Mobile, Bayside Spine & Rehab (aka Mobile Spine & Rehab). Plambeck requested Dr. Wilcoxson to also conduct telephone consultations with patients at the Mobile clinic. Dr. Wilcoxson accepted that offer.

238. Dr. Wilcoxson requested, but never received, a written contract. All of Dr. Wilcoxson's consultations of patients at Five Points Chiropractic, and subsequently Bayside Spine & Rehab, were done pursuant to his oral agreement with Plambeck, as follows:

a. The clinic chiropractor first examined the patient.

b. The clinic faxed Dr. Wilcoxson a consultation sheet containing the patient's purported information, such as when the accident occurred and the patient's pain scale. Virtually all these patients were persons who had been involved in automobile accidents.

c. Dr. Wilcoxson would then confer with the patient by telephone from his "New Beginnings" clinic in Daphne, Alabama. Wilcoxson would then confer with the clinic staff by telephone.

d. Dr. Wilcoxson forwarded the consultation sheet back to the clinic.

239. Initially, the consultation sheets reflected that Dr. Wilcoxson was referring the patient to Five Points Chiropractic. Dr. Wilcoxson noted this representation was incorrect, since the

patient was already examined by the chiropractor and a treatment plan instituted by the clinic prior to his telephone consultation with the patient. He insisted the clinic change the sheets to show he was acting as a consultant and not referring patients to the clinic.

240. Under the oral agreement with Plambeck, Dr. Wilcoxson was paid a monthly retainer of $1,000. Additionally, he received a consultation fee of $25 per patient. When he also started to conduct telephone consultations with patients at Bayside Spine & Rehab, the monthly retainer fee was increased to $2,000 ($1,000 per clinic).

241. Dr. Wilcoxson was paid by checks from the personal account of Pedro Romaguera. Romaguera is a Louisiana medical doctor, who has officed in the same Kenner, Louisiana building in which Defendants Chiropractic Strategies, PMG, Law Office Network, Media Placement Services, Plambeck, Randy Toca, Ric Toca, and Friedman office.

242. In dealing with Plambeck and Chiropractic Strategies, Dr. Wilcoxson would call both the Arlington, Texas, and Kenner, Louisiana corporate offices. In regard to payment matters, Dr. Wilcoxson's primary contact person was Jennifer Giessner, at Chiropractic Strategies corporate home office in Arlington, Texas. Dr. Wilcoxson never met or spoke with Dr. Pedro Romaguera.

243. Unknown to Dr. Wilcoxson, Plambeck had his name and the name of his "New Beginnings Medical Group" prominently displayed at the chiropractic clinics:

a. At Five Points Chiropractic clinic, New Beginnings' and Wilcoxson's names were used in a large sign on one of the clinics windows, along with a telephone number. The telephone number was actually a number belonging to Chiropractic Strategies.

b. At Bayside Spine & Rehab, New Beginnings' and Wilcoxson's names were used on a sign on the entrance to the clinic, above Bayside Spine & Rehab's own sign.

244. Also unknown to Dr. Wilcoxson, Defendants' telemarketers solicited Alabama residents by stating they were calling on behalf of Dr. Wilcoxson. The purported satellite New Beginnings offices were, therefore, used as a sham to circumvent Alabama law prohibiting solicitation by chiropractors.

245. No employees of Dr. Wilcoxson ever worked at the purported satellite offices. Chiropractic Strategies employees at the chiropractic clinics represented to the solicited persons that they were employees or representatives of Dr. Wilcoxson/New Beginnings.

246. Around November 2007, Dr. Wilcoxson was watching a Mobile television news broadcast. The broadcast included an investigative report concerning Bayside Spine & Rehab, and showed film of the clinic including the "New Beginnings" sign with Wilcoxson's name on the clinic door. The report also described how patients were solicited to the "New Beginnings" clinic, then "referred" by Dr. Wilcoxson to the chiropractic clinic. This was Dr. Wilcoxson's first advisement that his name and New Beginnings' name were being used by the chiropractic clinic.

247. Subsequently, Dr. Wilcoxson contacted Plambeck and terminated the telephone consultation arrangement.

## VI.
## DEFENDANTS' OPERATIONS

**(Relevant to All Causes of Action)**

### A. Identification of Prospective Patients

248. During the period at issue, patients are obtained by telemarketing, not advertising. Media Placement, Rainbow Marketing, Charles Mora, Irma Escandon, and possibly other Defendants, direct runners in various municipalities to obtain accident report information from police departments and other law enforcement agencies, including agencies in Texas, Ohio, Indiana,

and Alabama. On information and belief, Mora and Escandon[1] personally obtain such information from police departments.

249. On information and belief, payments are sometimes made to public employees in exchange for police report information, prior to the reports' public release. For example, R.C. Castillo, who worked as a claims manager at the Sipes Arlington law office, has been arrested in regard to allegations he paid a Dallas city employee for such information. Mora has previously been indicted for bribery by the State of Texas in regard to such activity, and pled guilty to the offense.

250. Such payments are made in violation of state law, punishable by more than one year imprisonment (for example, Texas Penal Code 36.02).

251. The dates of such payments, the payor and payee, the source of the money used, and how the money was transmitted for use in the payment, is in the peculiar knowledge of Defendants.

252. The information obtained from the police reports is transmitted to telemarketers, including Media Placement telemarketers in Kenner, Louisiana and Rainbow Marketing telemarketers in Marietta, Georgia. As these interstate wire communications are made in furtherance of Defendants' fraud scheme, they constitute violations of 18 U.S.C. §1343.

253. The identification of the runners obtaining the accident report information, when they obtained the information, and when they transmitted the information to the telemarketers, is peculiarly within the knowledge of the Defendants.

254. The reports are reviewed to ascertain the identity of drivers who are not listed as being liable for the accident by the responding law enforcement officer, and the identities of

---

[1] A 2005 Texas Appellate Court opinion concerning the barratry conviction of an El Paso attorney relates that Escandon personally visited police departments to obtain such information, which was used for the solicitation of clients for a law office. *Crook v. State,* 2005 WL 1539187 (Tex. App. – El Paso 2005).

passengers. These drivers and passengers are contacted by the telemarketer, even if the report states they were not injured, declined emergency assistance, etc.

**B. Telephone Solicitation of Prospective Patients**

255. There are violations of 18 U.S.C. §1343 in regard to interstate telephone solicitations of patients at issue, as these communications are made in furtherance of the Defendants' fraud scheme. Additionally, although the misrepresentations set forth herein below are made to the solicited prospective patients, the misrepresentations relied upon by the solicited persons cause Plaintiffs injury in their business, in regard to the claims that are created or grossly exaggerated due to the misrepresentations.

256. Telemarketers, including Media Placement, Rainbow Marketing, Charles Mora, and Irma Escandon, contact the persons identified from the police reports. The persons are contacted by telephone to convince them to come to a Chiropractic Strategies clinic.

257. Telemarketers employed by Media Placement are trained by Douglas Friedman, at Media Placement's office in Kenner, Louisiana. They operate under Friedman's direction.

258. These telemarketers are based at Media Placement's corporate office in Kenner, Louisiana, and solicit persons in Texas, Ohio, Indiana, Alabama, and other states from Kenner, by interstate telephone calls.

259. Rainbow Marketing's corporate office is located in Marietta, Georgia. Rainbow Marketing telemarketers based in its Marietta office solicit persons in Ohio and other states, by interstate telephone calls.

260. The telemarketers make misrepresentations to the solicited persons to persuade them to come to a Chiropractic Strategies clinic. The telemarketers misrepresent to patients that they will obtain free consultations, free "10 point" spinal examinations, and in some cases free x-rays.

The telemarketers represent that no one will be billed for these services. The representations are false, and in most cases there are billings for an initial examination the first or second day of treatment.

261. The telemarketers urge the solicited persons to come to a clinic for the "free" services, and persist even if the person advises they have no pain or symptoms, and believe themselves to have no injury, or have minimal discomfort for which they would not otherwise have sought treatment. The telemarketers advise the solicited person they may have "hidden injuries" and that even a minor accident can cause injuries that do not manifest themselves for days or weeks. The promise of a "free" examination is presented as a 'You have nothing to lose' offer.

262. At times, the telemarketer offers the solicited person a gift card or other monetary incentive if they will go to the clinic for examination.

263. Solicited persons are told that, if they require treatment beyond the initial "free" services, the other driver's insurance will be billed for the treatment.

264. The telemarketers also warn prospective patients not to speak to insurance representatives before undergoing the "free" examination, and that talking with an insurance representative will adversely affect their rights to health care compensation. As the clinics will immediately refer the newly "converted" patient to an associated attorney (see below), the patient is thereby prevented from ever relating their true condition (lack of pain and symptoms, etc.) to an insurer or to an attorney who is not associated with the Enterprise.

265. At times, the telemarketer misleads the solicited person to believe the clinic is a medical clinic, rather than a chiropractic clinic, or fails to identify the clinic as a chiropractic clinic. Persons who would not have considered chiropractic treatment are thereby enticed to the clinics.

266. At other times, the telemarketers misrepresent to the solicited person that they are from "the insurance company" or a named automobile insurer, such as "Allstate." The telemarketer advises the person that the insurer is directing them to the Chiropractic Strategies clinic to be 'checked out,' even if they do not believe themselves to be injured.

267. At other times, the telemarketer misrepresents themselves as being affiliated with a hospital, and advises the person that the hospital is directing them to the Chiropractic Strategies clinic.

268. Due to the regulatory prohibition relating to direct telephone solicitation by chiropractors in Alabama, Defendants modify their telephone solicitations in Alabama as follows:

a. The telemarketers advise solicited persons that they are calling on behalf of the "New Beginnings Medical Group" offices of Dr. Glen Wilcoxson, M.D., and direct the solicited persons to the purported "New Beginnings" offices adjacent to Chiropractic Strategies clinics.

b. Dr. Wilcoxson has denied knowledge that his or his business' name were used in telephone solicitations.

c. "New Beginnings" signs, with Dr. Wilcoxson's name, were placed adjacent to or above the signs of Bayside Spine & Rehab and Five Points Chiropractic, to continue the deception for solicited persons who came to the clinic.

d. While Dr. Wilcoxson did conduct telephone consultations with the patients, the patients were led to believe by the Chiropractic Strategies clinic staff that Dr. Wilcoxson was referring them to the chiropractic clinic.

269. But for these fraudulent representations, the Alabama patients at issue would never have treated at Defendants' clinics. The Alabama patients at issue are identified in Exhibit A to the

Appendix to Plaintiffs' *RICO Case Statement*, previously filed under seal pursuant to court order and provided to Defendants.

270. Defendants encourage the telemarketers to make misrepresentations, such as those set forth above. Media Placement telemarketers are paid hourly, but receive a bonus for each solicited person who makes their scheduled appointment, with a further bonus for each of these persons who then becomes a treating patient.

271. Chiropractic Strategies or Media Placement pay local telemarketers 'per head,' for each solicited person who completes three visits to the clinic (i.e., for each solicited person converted).

272. The identity of the telemarketer calling each particular person, and the date when the calls were made, in regard to the patients at issue, is peculiarly in the Defendants' knowledge.

## C. <u>Scheduling of Prospective Patients</u>

273. If the solicitation is successful, the telemarketer schedules the solicited individual with an appointment date and time, and instructs them as to the location of a Chiropractic Strategies clinic.

274. The telemarketer documents the appointment by a fax appointment sheet sent to the Chiropractic Strategies clinic, listing the solicited person's name and the appointment time scheduled by the telemarketer. The appointment sheet also identifies the telemarketer.

275. There are further violations of 18 U.S.C. §1343 in regard to interstate faxing of appointment sheets by the telemarketers to Chiropractic Strategies clinics, made for the purpose of executing the scheme. Using interstate means of communication, Media Placement, Rainbow Marketing, and other telemarketers forward appointment sheets to Chiropractic Strategies clinics in Texas, Ohio,

Indiana, and Alabama. The appointment sheets are not placed in the patient's file. The clinic subsequently forwards the appointment sheets it receives to Chiropractic Strategies' home office.

276. The identity of the telemarketer or person faxing the appointment sheet to the clinic, the date the appointment sheet is faxed, and the date the clinic subsequently forwards the appointment sheet to Chiropractic Strategies are peculiarly in the Defendants' knowledge.

277. The Chiropractic Strategies clinics are instructed to make confirmation calls to the solicited persons, prior to the first visit to the clinic scheduled by the telemarketer. The chiropractor or other clinic employee use scripts in these calls. The calls are designed to cause the solicited person to be concerned over their health, even if they are asymptomatic. For example, one script advises the potential patient that "even in low impact (low speed) accidents (collisions) your body could experience a significant amount of trauma or damage" and that "you may feel little or no pain or discomfort for several days or possibly several weeks." The script also advises the potential patients, "It is crucial (important) to document any changes that occurred to your body in order to promote your rights to heath care and protect your rights to compensation."

278. Chiropractic Strategies training materials instruct the chiropractors to, "Keep repeating confirmation until you feel sure they are going to show."

**D. <u>"Conversion" of Patients</u>**

279. The "Free 10 Point Examination" is cursory. These "examinations" are sometimes conducted by unlicensed chiropractic assistants.

280. While this examination is characterized as "free," and billings generally represent no charge for the "10 point" procedure, a charged examination (generally billed under CPT code 99203), is generally billed once the solicited person is coerced or enticed into becoming a

treating patient, and shown on the bills to have been performed either the same day as the "free" examination, or the following day.

281. While the telemarketers offer "free" consultations and, in some cases free x-rays, to entice solicited persons to the clinics, these services are generally charged in bills later forwarded by U.S. Mail to Plaintiffs in demand packages (see herein below).

282. "Conversion" is Defendants' terminology for persuading the solicited individuals to become treating patients. The solicited individuals are coerced, deceived, and/or enticed into treatment through misrepresentations. This "conversion" is performed, regardless of whether the person does not complain of pain, is asymptopmatic, or shows no sign of injury.

283. Following the "Free 10 Point Examination," the prospective patients are told the results of the examination show indications of injuries, and the need for x-rays. Patients receive unnecessary x-rays. Extensive motion study x-rays are often taken.

284. The x-rays are at times conducted by clinic assistants who are not certified or qualified to take the x-rays. Often, charges are billed for x-rays, even when the x-ray films do not exist or are not of diagnostic quality. Defendants bill for such x-rays, without disclosing that the films are useless for diagnostic purposes or do not exist.

285. The Chiropractic Strategies clinic chiropractors are trained and instructed to misrepresent results of the 10 Point examinations and x-rays to coerce, deceive, and/or entice the solicited individuals into becoming patients. The potential patients are told they have substantial injury, such as spinal "misalignments," an "abnormal spine," etc., caused by the recent automobile collision, which requires an immediate course of treatment.

286. As a part of the "conversion" process, the Chiropractic Strategies clinic chiropractors are trained and instructed to advise the potential patients that they will never personally have to pay

any of the clinic charges for their prospective treatment, regardless of the outcome of their claim, and the clinic will only look to insurance proceeds for payment. This release from obligation to pay is made prior to the prospective patient commencing treatment, as an enticement for the individual to become a treating patient. This conduct is a standard business practice of the Chiropractic Strategies clinics.

287. Contrary to the release of obligation conveyed to the solicited persons as a part of the "conversion" process, the new patients are required to sign various documents, including an assignment document. This document contains various authorizations and assignments, and a portion of the document contains a provision where the new patient purports to acknowledge that they remain personally liable for payment of all clinic bills.

288. The document is designed in this manner so that the patient will not realize that they are purporting to acknowledge financial obligation, when the clinic has already released them from such financial obligation prior to treatment, as an incentive to treat at the clinic.

289. These documents are then forwarded by Defendants to automobile insurers, including Plaintiffs, as representations that the patient is financially liable for clinic bills. Defendants do not advise Plaintiffs that Defendants gave the solicited persons a waiver of such liability, as an enticement for the persons to become treating patients.

290. The assignment documents at issue are set forth in the matrix designated Exhibit A to the Appendix to Plaintiffs' *RICO Case Statement*, previously filed under seal pursuant to order of the Court and provided to the Parties. The Matrix lists the identity of the patients at issue, the dates of accident, the identity of the involved law offices and clinics, and the dates of the mailing or fax of these documents. Copies of the actual assignment documents in regard to the patients at issue are also provided in Exhibit B to the Appendix to Plaintiffs' *RICO Case Statement*, also

filed under seal and previously provided to the Parties. These documents identify the employee purporting to send the document, the Plaintiff's representative to whom the document was forwarded, and the date the document was sent, as well as setting forth the representations made.

**E. <u>"Retention" of Patients</u>**

291. Following "conversion," Defendants mandate "retention" (Defendants' term) of the new patients. "Retention" means convincing the new patient to continue through a predetermined course of treatment.

292. Misrepresentations, scare tactics, and enticements are again employed to 'retain' or keep the newly "converted" patients in the treatment program. The chiropractors are trained and instructed to advise patients that they must complete the course of treatment, or supposed spinal injuries and misalignments sustained due to the automobile accident will not properly heal, or will become symptomatic in the future. Patients are told the supposed condition will manifest itself in a few weeks, months, or even years, and when it does it will be more severe and permanent in nature. Patients are also warned that they must continue treatment, even if they have no pain. The patients are told that, if they cease treatment, the value of their claim against the at-fault driver will be diminished or destroyed.

293. The "converted" patients are put through an unnecessary 'cookie-cutter' pattern of treatment, consisting of chiropractic manipulations, and non-labor intensive chiropractic modalities conducted by a chiropractic assistant.

294. Defendants keep the duration and total cost of treatment within particular bounds, which Defendants conclude will not be questioned by automobile insurance carriers. Aside from x-rays, which are used in the "conversion" process described herein above, no diagnostic tests are performed by Defendants at the clinics.

295. However, there is billing for services that are not actually performed. There is also billing for services inadequately rendered, namely x-rays that are not of diagnostic quality.

## F. Referral to Law Offices

296. Defendants instruct the clinic Chiropractors and other clinic staff to refer newly converted patients to a law office associated with the Enterprise. The referrals are to be made during the patient's initial visit to the clinic. No disclosure is made to the patient of the fact that the law office is associated with the clinic.

297. Referral of the patients at issue to these associated law offices is an essential part of the scheme. If patients, believing themselves injured due to the conversion process, selected their own independent counsel, such attorneys would become suspicious when advised by their clients that they were referred to the clinic by an insurance company, that the clinic told them they would never personally be liable for the bills as an incentive to treat, etc.

298. The associated law offices send runners to the clinic to 'sign up' the newly converted patients as clients. Often, the individuals working at the law offices are actually employees of PMG or Law Office Network.

299. The law office or PMG/Law Office Network forwards a retention letter to insurers such as Plaintiffs, advising that the law office represents the patient. This action prevents the insurer from independently communicating with the patient/claimant, to ascertain their true condition. Correspondence from PMG/Law Office Network is on the letterhead of the law office.

300. Violations of 18 U.S.C. §1341 and 18 U.S.C. 1343 include the forwarding of retention letters and other correspondence under the name of these law offices by U.S. Mail, or by interstate fax transmission from Louisiana to Plaintiffs' representatives in Texas, Ohio, Indiana, Alabama, and other states for the purpose of executing the scheme. These retention letters and

correspondence also misrepresent that the client/patient has in fact been injured in an automobile accident and requires the chiropractic treatment they are receiving or have received at the Chiropractic Strategies clinics.

301. The retention letters at issue are set forth in the matrix designated Exhibit A to the Appendix of Plaintiffs' *RICO Case Statement*, previously filed under seal pursuant to Court order and provided to the Parties. The Matrix lists the identity of the patients at issue, the dates of accident, the identity of the involved law offices and clinics, and the dates of the mailing or faxing of these letters. Copies of the actual retention letters from the law offices (or management company in the law office's name) to Plaintiffs are also provided in Exhibit B to the same Appendix. These letters identify the attorney or law office employee purporting to send the letter, the Plaintiff's representative to whom the letter was forwarded, and the date the letter was sent, as well as setting forth the representations made therein.

### G. Enforcement of "Conversion," "Retention," and Referral Procedures

302. Chiropractors who do not "convert" asymptomatic persons into patients, or who have low "retention" rates are censured. If the chiropractor's "conversion" and "retention" rates do not improve, they are terminated. Likewise, chiropractors who do not conduct the x-rays mandated by the Enterprise, or fail to refer patients to the associated attorneys, are censured. Plambeck and Capobianco personally contact chiropractors by telephone to chastise them in this regard.

303. Also, there are weekly or bi-weekly telephone conferences, conducted by Plambeck with the chiropractors in the various states. In these telephone conferences, Plambeck stresses compliance with the Enterprise's procedures.

304. The multi-state conference calls, as well as the calls to individual chiropractors chastising them for failure to follow Enterprise directives, are made in furtherance of the scheme, and

violate 18 U.S.C. §1343. However, the dates of the calls, and exact content, are in the peculiar knowledge of the Defendants.

**H. Presentation and Settlement of Claims**

305. The clinics forward records to Chiropractic Strategies corporate offices in Louisiana and Texas.

306. After the patient completes the course of treatment, clinic chiropractors and/or assistants forward templates to Chiropractic Strategies' Arlington corporate home office.

307. Final narrative reports are generally prepared by laypersons at Chiropractic Strategies' Arlington corporate home office. Standard paragraphs entered by lay report writers include 'findings' of reasonableness and necessity of the treatment and services, and that the supposed injuries which were treated were the result of the automobile collision at issue in the claim. The reports are not provided to the clinic chiropractor for review.

308. HCFA 1500 billing forms or itemized billings are prepared by lay persons at Chiropractic Strategies' Kenner, Louisiana, office. These lay persons select the CPT codes to include in the billing forms. The billings are not provided to the clinic chiropractor for review.

309. The clinic records, including the narrative reports generated in Arlington, Texas, and the bills generated in Kenner, Louisiana, are forwarded to the associated law offices or to PMG/Law Office Network. The law offices or PMG/Law Office Network then prepare demand letters, and enclose the demand letters, clinic records, narrative reports, and bills into demand packages, and forward these to Plaintiffs by U.S. Mail or interstate fax transmissions, for the purpose of executing the scheme, in violation of 18 U.S.C. §1841 and 18 U.S.C.1843.

310. The clinic records, including the reports and bills, and the demand letters make misrepresentations concerning the patients, including:

a. The patient was injured in the accident at issue:

b. The patient required care;

c. The chiropractic care was reasonable and necessary; and

d. The patient is personally liable for payment of the clinic bills.

The documents and letters do not disclose material facts, such as:

*a.* *The patients were telemarketed to the clinic, and at times told that one of the* Plaintiffs was directing them to the clinic.

*b.* Patients at times are given financial incentives to treat.

*c.* The patients were advised they will never be personally liable for payment of the bills, as an incentive for them to treat.

*d.* Charged x-rays were taken by unqualified persons, not of diagnostic quality, lost, or never in fact taken.

*e.* There is a relationship between the clinic and law office.

*f.* That, at times, the demand letter is actually being sent by PMG or Law Office Network.

311. The demand letters at issue are set forth in the matrix designated Exhibit A to the Appendix to Plaintiffs' *RICO Case Statement*, previously filed under seal pursuant to order of the Court and provided to the Parties. The Matrix lists the identity of the patients at issue, the dates of accident, the identity of the involved law offices and clinics, and the dates of the mailing or faxing of the demand letters. Copies of the actual demand letters are also provided in Exhibit B to the same Appendix. These letters identify the attorney or law office employee purporting to send the letter, the Plaintiff's representative to whom the letter was forwarded, and the date the letter was sent, as well as setting forth the representations made in the letter.

312. When a claim is settled, the settlement proceeds are deposited into a trust account in the associated law office's name. in Texas, Ohio, etc. The distribution checks for these proceeds, in

regard to PMG/Law Office Network managed law offices, are drafted by Randy Toca or a PMG/Law Office Network employee. In some cases, Randy Toca or PMG/Law Office Network employees have authority to sign these trust account checks. The disbursement checks are then forwarded from Louisiana to the law offices in other states.

313. The mailing of these checks is in violation of 18 U.S.C. 1341, as it is done in furtherance of the scheme. These interstate transfers of money in excess of the statutory amount violate 18 USC §2314. The specific information concerning these predicate violations of 18 U.S.C. §1341 and 18 U.S.C. §2314, such as the dates of the interstate transportation of the funds and the dates of the mailing of the disbursement checks, are in the peculiar knowledge of the Defendants.

## VII.
## CAUSES OF ACTION

### COUNT ONE

(Against All Defendants for Violation of Title 18,
United States Code, Section 1962 (c))

### A. THE ENTERPRISE

314. Plaintiffs adopt and incorporate as though fully set forth herein, each and every allegation contained in paragraphs 1 through 313 above.

315. Michael Kent Plambeck, Douglas Friedman, Randy Toca, Chiropractic Strategies, Media Placement, PMG, and Law Office Network are an association in fact Enterprise, as that term is defined in Title 18, United State Code, Section 1961(4). Law Office Network replaced PMG, in whole or part, performing the same role as PMG.

316. The Enterprise exists separate and apart from the pattern of racketeering activity alleged herein. As referenced in paragraphs 83 to 120, Plambeck, Friedman, Randy Toca, Chiropractic Strategies, Media Placement, and PMG associated prior to the period at issue in this lawsuit, in

regard to chiropractic clinic management, advertising, lobbying, solicitation, providing services to law offices, etc. The business entities that are members of the Enterprise formed at different dates over five years (with the exception of Law Office Network, which was formed as a replacement for PMG).[2] In other words, the entities were not contemporaneously formed with the intent that they combine to engage in a pattern of racketeering activity. The formation of the association-in-fact Enterprise itself (i.e, the coordination of efforts between six members existing in the late 1990s) predates the pattern of racketeering activity alleged.

317. The Enterprise has an identifiable structure, with each member fulfilling a specific role to carry out and facilitate its purpose as follows (A detailed listing of each Defendant's role in the Enterprise is set forth in Section 2 of Plaintiffs' previously filed *RICO Case Statement*, on pages 3-31 of the *RICO Case Statement*, which is adopted and incorporated by reference, as if copied and set forth at length herein, pursuant to Federal Rule of Civil Procedure 10(c)):

318. Defendants Chiropractic Strategies, Michael Kent Plambeck, Michael Capobianco, Paul Grindstaff, Robert Ekin, Jennifer Giessner, Douglas Friedman, Kim Grindstaff, and the Clinic Entities have established, financed, owned, operated, and/or participated in the management of the Chiropractic Strategies clinics. This includes:

a. Recruitment and training of chiropractors and clinic staff for the clinics by Plambeck, Capobianco, Paul Grindstaff, Ekin and Friedman. This includes training in "conversion" and "retention" of prospective patients who are not injured and do not require or would have sought treatment, through misrepresentations.

[2] Media Placement was incorporated in June 1992, CSG was incorporated in January 1996, and PMG was organized in September 1997. Law Office Network, a replacement for PMG, was organized in June 2006.

b. Coercion, chastisement, or termination of chiropractors who are unwilling to comply with the Enterprise's directives concerning "conversion," x-rays, referrals to associated law offices, "retention," etc., by Plambeck and Capobianco.

c. Establishment of new Chiropractic Strategies clinics by Plambeck, Capobianco, Robert Ekin, Kim Grindstaff, and the clinic entities.

319. Defendants Michael Kent Plambeck, Michael Capobianco, Douglas Friedman, Media Placement, Charles Mora, Irma Escandon, and Rainbow Marketing establish, finance, own, operate, and/or participate in the management of telemarketing operations. This includes training and encouraging telemarketers to make misrepresentations, or personally making misrepresentations to prospective patients who are not injured or would not have otherwise sought treatment.

320. Defendants Michael Kent Plambeck, Michael Capobianco, Randy Toca, Ric Toca, Angel Junio, PMG, Law Office Network, Eugene Mercier, Rodney Sipes, Megan Ingle, Thomas Magelaner, and the law office entities establish, finance, own, operate, and/or participate in the management of law offices presenting the fraudulent claims at issue.

321. The Enterprise engages in, and its activities affect, interstate commerce. The acts affecting interstate commerce include, but are not limited to:

a. Chiropractors are recruited, trained in Louisiana and/or Texas, and assigned to clinics in various states;

b. Interstate telephone communications made from Louisiana or Georgia to persons involved in automobile accidents, soliciting them to go to the Enterprise's clinics. Residents in these other states are thereby coerced, enticed, or deceived to go to local clinics which they otherwise would not have visited;

c. Interstate fax transmissions from telemarketers in Louisiana or Georgia to clinics in other states, including Texas, Ohio, Indiana, and Alabama, scheduling the solicited persons for appointments;

d. Interstate fax transmissions and e-mails from clinics in various states to CSG corporate offices in Texas and Louisiana, in regard to the creation of bills and narrative reports;

e. Retention letters, on the letterhead of law offices associated with the enterprise, sent through the U.S. Mail or interstate fax transmission from Louisiana to Plaintiffs' representatives in other states;

f. Demand packages, including letters on the letterhead of law offices associated with the enterprise, with clinic reports, records, and bills, sent through the U.S. Mail from Louisiana to Plaintiffs' representatives in other states; and

g. Settlement checks forwarded by Plaintiffs to law offices associated with the enterprise. Payments are subsequently issued from the settlement proceeds, from Louisiana, to various clinics and law offices in other states.

322. The Defendants have been employed by and/or associated with the Enterprise, have participated in the management and operation of the Enterprise, and deliberately caused a fraud to be perpetrated upon Plaintiffs and other automobile insurers. (A detailed listing of each Defendant's role in the Enterprise is set forth in Section 2 of Plaintiffs' previously filed *RICO Case Statement*, on pages 3-31 of the *RICO Case Statement*, which is adopted and incorporated by reference, as if copied and set forth at length herein, pursuant to Federal Rule of Civil Procedure 10(c)).

**B. <u>THE PURPOSE OF THE SCHEME</u>**

323. The purpose of the scheme is to illicitly and illegally enrich the Defendants at the expense of Plaintiffs and their policyholders.

324. As set forth at length in paragraphs 248 through 313 and adopted and incorporated herein, the scheme is to create and pursue fraudulent bodily injury claims:

a. Potential patients are identified from police accident report information. On information and belief, public employees are sometimes paid at the direction of

the Enterprise, in order to obtain information before its public release. 'Not at fault' persons, i.e. persons for whom personal injury claims may be made under automobile policies, are targeted for solicitation.

b. Potential patients are contacted by telemarketers, who deceive and/or entice the solicited persons to go to a Chiropractic Strategies clinic to receive a "free" examination. At times, other incentives such as gift cards are offered to persons who are not injured to entice them to go to the clinic. At other times, the telemarketer will misrepresent that they are a representative of an insurer and that the insurer is directing the solicited person to go to the clinic.

c. The clinics "convert" solicited persons, who are not injured and do not need treatment, by misrepresenting to the patient that they have sustained significant injury. As a part of the "conversion" process, the potential patients are also enticed into treatment by the promise that they will never be personally liable for payment of any portion of the future treatment, and the clinic will look only to insurance proceeds.

d. Contrary to the release of liability for billings made to the patient, a document misrepresenting that the patient has actually incurred treatment charges and is personally obligated to pay the charges is forwarded to Plaintiffs.

e. The clinic immediately refers the patient to an associated law office.

f. A law office representation letter is generated and forwarded to Plaintiffs, either by the law office or by PMG/Law Office Network in Kenner, Louisiana.

g. The patient is put through an unnecessary course of chiropractic adjustments, modalities, and x-rays.

h. Demand packages containing attorney letters, treatment records, reports billings, etc. are forwarded to Plaintiffs.

i. Plaintiffs, based on the Enterprise's activities and in reliance on the documentation submitted, proceed in the settlement of these claims.

**C. <u>THE PATTERN OF RACKETERING ACTIVITIES</u>**

325. Defendants have knowingly conducted and/or participated, directly and indirectly, in the conduct of the affairs of the above described Enterprise through a "pattern of racketeering activity" as defined by Title 18, United States Code, Section 1961(5).

326. Such racketeering activity consists of repeated violations of the Federal mail fraud statute, Title 18, United States Code, section 1341, and the Federal wire fraud statute, Title 18, United States Code, section 1343, based upon the fraudulent claims made regarding the supposed treatment at Chiropractic Strategies clinics in Texas, Ohio, Indiana, and Alabama. These acts include the use of the U.S. Mail or Interstate fax transmissions:

a. By Chiropractic Strategies, Plambeck, and other Defendants to forward assignment documents to Plaintiffs. The assignment documents represent to Plaintiffs that the patient/claimants at issue remain personally liable for payment of clinic bills, when in fact the clinics, as part of Chiropractic Strategies policy, training, and standard business practice to advise the patients that they will never be personally liable for payment, as an incentive for the patient to begin treatment.

b. By Law Office Defendants, Attorney Defendants, Randy Toca, Ric Toca, Angel Junio, or PMG/Law Office Network, to forward representation letters to Plaintiffs. These letters represent that the patient/claimant at issue was injured in an accident, and that treatment at the Chiropractic Strategies treatment is reasonable and necessary. These letters

also serve to prevent Plaintiffs from directly contacting the patient/claimant, and act to conceal the individuals actual condition and circumstances (i.e., lack of symptoms, direction to the clinic by a purported "insurance company" representative, etc.).

c. By Law Office Defendants, Attorney Defendants, Randy Toca, Ric Toca, Angel Junio, or PMG/Law Office Network, to forward demand letters and packages to Plaintiffs. These letters and accompanying records, reports, and bills, represent that the patient/claimants at issue were injured in accidents, and the treatment provided at Chiropractic Strategies clinics was reasonable and necessary.

327. The "assignment" documents, representation letters, and demand letters referenced in the preceding paragraph are identified in Exhibit A to the Appendix to the *Plaintiffs' RICO Case Statement*, previously filed under seal pursuant to Court order and provided to the Parties. Exhibit A is a matrix listing the patient/claimants at issue in this lawsuit, as well as other information. This includes the date of the accident, the Chiropractic Strategies clinic at which treatment was purportedly rendered, the associated law office which presented the claim, and the dates of the mailing/faxing of documents referenced above. Attached as Exhibit B to the same Appendix are copies of the letters and "assignment" documents described above. These documents are also filed under seal, and were previously provided to the Parties. These documents show purported authors of the documents, the Plaintiffs' representative to whom the document was addressed, and the representations made in the document (i.e., that the treatment was reasonable and necessary, that the patient/claimant was personally liable for treatment, etc.).

328. The particulars in regard to other uses of the U.S. Mail to further the fraud scheme, such as forwarding of documents between the Clinic Entities or Chiropractic Strategies and the Law Office Defendants, etc., are peculiarly in the knowledge of Defendants.

329. The racketeering activity also consists of other repeated violations of the Federal wire fraud statute, Title 18, United States Code, section 1343, based upon:

a. Interstate telephone or fax communications from persons who obtain police reports or information from the reports to telemarketers in Kenner, Louisiana and Marietta, Georgia.

b. Interstate telephone communications made by telemarketers in Kenner, Louisiana, or Marietta, Georgia, to Texas, Ohio, and Indiana residents, soliciting, deceiving, and/or enticing persons in automobile collisions to go to a Chiropractic Strategies clinic in the solicited person's State.

c. Interstate telephone communications made by telemarketers in Kenner, Louisiana, to Alabama residents, soliciting, deceiving, and/or enticing persons in automobile collisions to go to a purported New Beginnings medical clinic.

d. Interstate telephone fax communications made by telemarketers in Kenner, Louisiana, and Marietta, Georgia to Texas, Ohio, Indiana, and Alabama Chiropractic Strategies clinics, transmitting appointment sheets in furtherance of the Enterprise.

e. Interstate telephone fax communications made by PMG and Law Office Network employees/agents in Kenner, Louisiana, to Plaintiffs' representatives in Texas, Ohio, Indiana, and Alabama.

330. The specifics concerning these violations, such as when communications were made, and the persons making and receiving the communications, are peculiarly in the knowledge of Defendants.

331. The racketeering activity also consists of repeated violations of Title 18 U.S.C. §2314 (interstate transportation of stolen property), based upon:

a. Transfers of funds in excess of the statutory amount from law office trust accounts in Texas, Ohio, and other states to Kenner, Louisiana. Defendants were aware that these sums were obtained by fraud.

b. Transfers of funds from PMG/Law Office Network, in Kenner, Louisiana, in excess of the statutory amount, to Texas, Ohio, and other states. Defendants were aware that these sums were obtained by fraud.

c. Interstate transfers of funds from the Clinic Entities' accounts to Chiropractic Strategies accounts, in excess of the statutory amount. Defendants were aware that these sums were obtained by fraud.

332. The specifics concerning these violations, such as the date of the interstate transportation of the funds, is peculiarly in the knowledge of Defendants.

333. On information and belief, the racketeering activity also consists of repeated violations of state bribery laws, in regard to the payment of money to public employees in exchange for accident report information, prior to its release to the general public.

334. The specifics concerning these violations, such as when and to whom payments were made, the person making the payments, and the source of the money used in the payments and when it was transferred to the person making the payment, is peculiarly in the knowledge of Defendants.

335. These predicate acts are part of a scheme, and are not isolated events. Furthermore, the Defendants' pattern of racketeering activity is ongoing, and amounts to or poses a threat of continued criminal activity.

## D. INJURY TO PLAINTIFFS

336. As a direct and proximate result of the Defendants' conduct, Plaintiffs were injured by paying sums in payment of fraudulent bodily injury claims, arising from the pattern of racketeering activity. This injury is set forth more fully in paragraphs 385 through 389.

337. By reason of their injury, Plaintiffs are entitled to treble damages, costs, and reasonable attorneys' fees pursuant to Title 18, United States Code, section 1964(c).

## VIII.
## COUNT TWO

(Against All Defendants for Violation of Title 18,
United States Code, Section 1962 (d))

338. Plaintiffs adopt and incorporate, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 337 above.

339. Since at least 2002, Defendants willfully combined, conspired, and agreed with one another and with others to violate Title 18, United States Code, Section 1962(c), that is, to conduct and/or to participate, directly or indirectly, in the affairs of the Enterprise, the activities of which were conducted through a pattern of racketeering activities, in violation of U.S.C. section 1962(d).

340. The object of this conspiracy is to defraud Plaintiffs.

341. Two or more Defendants agree to commit substantive RICO offenses, and each Defendant knew of and agreed to the overall objective of the RICO offense.

342. As a direct and proximate result of the Defendants' conduct as set forth herein, Plaintiffs were injured by paying sums in payment of fraudulent bodily injury claims, arising from the pattern of racketeering activity. This injury is set forth more fully in paragraphs 385 through 389.

343. By reason of this injury, Plaintiffs are entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. section 1964 (c).

## IX.
## COUNT THREE

(Against All Defendants for Common Law Fraud)

344. Plaintiffs adopt and incorporate, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 343 above.

345. Since at least 2002, Defendants, personally or through agents (telemarketers, law office workers, etc.) acting at their direction, have made or caused to be made false and fraudulent material misrepresentations of fact to Plaintiffs; specifically, false and misleading statements and representations concerning the reasonableness and necessity of treatment, manner of treatment, whether treatment was actually performed, and whether patients actually incurred any obligation to pay for clinic charges, in regard to the events described in this Complaint.

346. The misrepresentations are conveyed to Plaintiffs through (1) assignment documents issued under the name of the clinic, (2) representation letters issued under the name of licensed Texas, Ohio, Indiana, or Alabama attorney, (3) attorney demand letters issued under the name of a licensed Texas, Ohio, Indiana, or Alabama attorney, and (4) chiropractic records, reports, and billings included in demand packages. The misrepresentations made to Plaintiffs in these documents include:

a. The patient was actually injured in an automobile accident collision and required treatment;

b. The need for extensive x-ray series, if x-rays are in fact actually conducted;

c. Supposed results of x-rays when the x-ray films are not of diagnostic quality, or x-rays were not in fact conducted;

d. Initial examinations are "free;"

e. The need for office visits that are in fact not necessary;

f. Billings for treatments that are not documented as having occurred.

g. Billings for treatments that did not occur;

h. Misrepresentations in billings by improper use of CPT codes;

i. Representations of reasonableness and necessity of service, etc. in narrative reports;

j. Representations that the patient has actually incurred healthcare charges, when in fact the patients were told they would never be liable for payment as an incentive to obtain the patient's consent to treat;

k. Concealing that some patients were tricked into coming to the clinic by the misrepresentation that the telemarketer was a representative of a Plaintiff, another insurer, or hospital;

l. Concealing that uninjured persons were enticed into coming to the clinic by being offered gift cards or other monetary enticements;

m. Concealing that law offices to which claimants were referred are associated in the scheme.

347. At the time the statements and representations were made, Defendants were aware of the falsity of the representations.

348. Defendants made the misrepresentations with the intent to deceive Plaintiffs, and with the intent that Plaintiffs would act on the misrepresentations by paying Defendants sums of money in settlement of claims.

349. Plaintiffs relied on the misrepresentations, and thereby suffered injury by paying sums of money in settlement of the claims. This injury is set forth more fully in paragraphs 385 through 389.

## X.
## COUNT FOUR

(Against All Defendants for Common Law Conspiracy)

350. Plaintiffs adopt and incorporate, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 349 above.

351. Beginning about 2002 and continuing through the present time, Defendants willfully combined, conspired, and agreed with each other and others to defraud Plaintiffs. Defendants, in combination with themselves and others, knowingly made false and misleading statements in regard to the existence, nature, and severity of the supposed soft tissue injuries allegedly attributable to automobile collisions, and the rendition and reasonableness and necessity of examinations, treatments, and x-ray procedures purportedly provided to automobile accident claimants who went to Chiropractic Strategies clinics, and in regard to whether claimant/patients have actually incurred charges for treatment and are personally liable for payment.

352. The object of the conspiracy was to defraud Plaintiffs. There was a meeting of the minds and agreement on this course of action by each Defendant, and each Defendant played a specific role in the overall scheme to defraud Plaintiffs and other insurers. The Defendants, separately or in concert with other Defendants and/or other parties, committed overt, unlawful acts in furtherance of this course of action.

353. The false and fraudulent misrepresentations and omissions alleged above were made by Defendants and others with the purpose and intent to deceive Plaintiffs and to induce Plaintiffs to pay Defendants sums of money to which they were not legally entitled.

354. As a direct and proximate result of Defendants' conduct, Plaintiffs have paid sums in regard to the fraudulent treatment, billing, and referral practices arising from automobile collisions in which the claimant went to a Chiropractic Strategies Group clinic. This injury is set forth more fully in paragraphs 385 through 389.

355. Plaintiffs are also entitled to consequential damages and exemplary damages in an amount to be determined at trial.

## XI.
## COUNT FIVE

(Against All Defendants for Unjust Enrichment)

356. Plaintiffs adopt and incorporate, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 355 above.

357. As described above, Defendants have made false and fraudulent representations of fact to Plaintiffs, in regard to the existence, nature, and severity of supposed soft tissue injuries allegedly attributable to automobile collisions, and willfully combined, conspired, and agreed with each other and others to defraud Plaintiffs.

358. As described above, Defendants also have made false and fraudulent misrepresentations of fact to Plaintiffs, in regard to whether claimant/patients have actually incurred charges for treatment and are personally liable for treatment.

359. Defendants have unjustly obtained a benefit from Plaintiffs, namely the payment for healthcare expenses that were unreasonable and unnecessary, and designed to enrich Defendants to Plaintiffs' detriment.

360. In addition, Defendants have unjustly obtained a benefit from Plaintiffs by fraud, namely the payment for healthcare expenses that were not actually incurred by claimant/patients, and designed to enrich Defendants at Plaintiffs' detriment.

361. As a direct and proximate result of Defendants' conduct, Plaintiffs have paid sums, and Defendants have been benefited from those payments, in connection with the treatment, billing, and referral practices arising from automobile collisions in which the claimant went to a Chiropractic Strategies Group clinic. This injury is set forth more fully in paragraphs 385 through 389.

## XII.
## COUNT SIX

(Against All Defendants, for Declaratory Relief)

362. Plaintiffs adopt and incorporate, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 361 above.

363. As a part of the inducement to gain patients' agreement to initiate treatment during the "conversion" process, Defendants advise the patients they will not be personally liable for billings arising from the treatment.

364. This release of obligation as an incentive to treat is a standard business practice of Defendants. However, Defendants also require new patients to sign various documents. These include an Assignment document, a part of which includes a purported acknowledgement by the new patient that they remain personally liable for payment of their future bills.

365. These Assignment documents are then forwarded by Defendants to Plaintiffs. Defendants never reveal, either when forwarding these Assignment documents to Plaintiffs, or at any time during the claim presentation and negotiation, that they previously released the patient/claimant of any obligation to pay.

366. Forwarding such documents to Plaintiffs, and concealing the fact of the release of liability, is a material misrepresentation. Plaintiffs settled claims based upon the representation that patient/claimants remained liable for the purported charges for treatment.

367. However, if the patients have no financial obligation in regard to the bills, they would not have standing to recover any such damages in suit. For example, Texas law explicitly recognizes that recovery of health care expenses is limited to the amount for which the claimant is legally obligated to pay.

368. Plaintiffs request a declaration from this Court that Plaintiffs, and their insureds, are not obligated to pay any sums for treatment at Chiropractic Strategies clinics during the period at issue.

## XIII.
## COUNT SEVEN

(Against Defendants Plambeck, Capobianco, Ekin, Grindstaff, Randy Toca, Friedman, Giessner, Magelaner, Chiropractic Strategies Group, Media Placement Services, Professional Management Group, Law Office Network, Congressional Chiropractic Health Center, Akron Square Chiropractic, East Broad Chiropractic, Dayton Chiropractic, Old Town Chiropractic, Shaker Square Chiropractic, Shoreway Chiropractic, Vernon Place Chiropractic Health Center, West Broad Chiropractic, West Tusc Chiropractic, Inc., West Tusc Chiropractic, LLC, Youngstown Chiropractic, Arlington Chiropractic, American Chiropractic, and Pearl Road Chiropractic, Inc. for Violations of Ohio Revised Code §2923.32 – Engaging in a Pattern of Corrupt Activity)

369. Plaintiffs adopt and incorporate, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 368 above.

370. Michael Plambeck, Randy Toca, Douglas Friedman, Chiropractic Strategies Group, Media Placement Services, Professional Management Group, and Law Office Network comprise an associated in fact enterprise as defined by Ohio Revised Code §2923.31(C). As set forth at length hereon above, this enterprise exists separate and apart from the alleged pattern of racketeering activity.

371. Defendants Plambeck, Capobianco, Ekin, Grindstaff, Randy Toca, Friedman, Giessner, Magelaner, Chiropractic Strategies Group, Media Placement Services, Professional Management

Group, Law Office Network, Congressional Chiropractic Health Center, Akron Square Chiropractic, East Broad Chiropractic, Dayton Chiropractic, Old Town Chiropractic, Shaker Square Chiropractic, Shoreway Chiropractic, Vernon Place Chiropractic Health Center, West Broad Chiropractic, West Tusc Chiropractic, Inc., West Tusc Chiropractic, LLC, Youngstown Chiropractic, Arlington Chiropractic, American Chiropractic, and Pearl Road Chiropractic, Inc. are associated with, and have participated in the affairs of, the Enterprise, as set forth herein above, and have conducted the affairs of the Enterprise through a pattern of corrupt activity resulting in the acquisition of proceeds through the creation and submission of false insurance claims.

372. Specifically, these Defendants have participated in a pattern of corrupt activity as defined by Ohio Revised Code §2923.31(I)(1), to wit, multiple acts defined as racketeering activity pursuant to 18 U.S.C. 1961(1)(B). These acts include violations of 18 U.S.C. §1341 (mail fraud), 18 U.S.C. §1343 (wire fraud), and 18 U.S.C. §2314 (interstate transportation of stolen property).

a. The particulars in regard to the commission of these predicate acts is set forth herein above.

b. Specific information concerning the known violations of 18 U.S.C. §1341 and 18 U.S.C. §1343 are set forth in Exhibits A and B, to the Appendix to Plaintiffs' *RICO Case Statement*. These documents have been filed under sealed pursuant to this Court's order, and have been provided to Defendants.

As set forth herein above, specific information concerning other violations of 18 U.S.C. §1341 and 18 U.S.C. §1343, and violations of 18 U.S.C. §2314, are peculiarly within the knowledge of Defendants.

373. The conduct of Defendants set forth herein above is also in violation of Ohio Revised Code §2913.05 ("Telecommunications Fraud"), §2913.47 ("Insurance Fraud"), and §4719.08

(misrepresentations by telephone solicitors). Violations of these sections also constitute predicate acts of corrupt activity pursuant to Ohio Revised Code §2923.31(I)(2)(a)

374. These predicate acts of corrupt activity are related to the affairs of the Enterprise.

375. As a direct and proximate result of the Defendants' intentional, willful, and wanton actions in the State of Ohio, Plaintiffs have suffered pecuniary injury and damages. Therefore, Plaintiffs are entitled to relief under § 2923.32 and § 2923.34 of the Ohio Revised Code, including all actual, compensatory and other damages, including treble damages and punitive damages.

## XIV.
## COUNT EIGHT

(Against Defendants Plambeck, Capobianco, Ekin, Grindstaff, Randy Toca, Friedman, Giessner, Magelaner, Chiropractic Strategies Group, Media Placement Services, Professional Management Group, Law Office Network, Indianapolis Chiropractic, Main Street Chiropractic, Monon Trail Chiropractic, and Kennedy Avenue Chiropractic for Violations of Indiana Code §35-45-6-2 and 34-24-2-6 – Racketeer Influence and Corrupt Organizations Act)

376. Plaintiffs adopt and incorporate, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 375 above.

377. Michael Plambeck, Randy Toca, Douglas Friedman, Chiropractic Strategies Group, Media Placement Services, Professional Management Group, and Law Office Network comprise an associated in fact enterprise as defined by Indiana Code § 35-45-6-1(c). As set forth at length hereon above, this enterprise exists separate and apart from the alleged pattern of racketeering activity.

378. As demonstrated hereon above, Defendants Plambeck, Capobianco, Ekin, Grindstaff, Randy Toca, Friedman, Giessner, Magelaner, Chiropractic Strategies Group, Media Placement Services, Professional Management Group, Law Office Network, Indianapolis Chiropractic,

Main Street Chiropractic, Monon Trail Chiropractic, and Kennedy Avenue Chiropractic are associated with the above-described Enterprise, and have knowingly or intentionally conducted or otherwise participated in the activities of that Enterprise through a pattern of racketeering activity.

379. Specifically, the activity outlined herein above constitutes a pattern of racketeering activity as defined by Indiana Code § 35-45-6-1(d) and (e), to wit:

a. The activity violates Indiana Code § 35-43-5-4 (fraud) and § 35-43-5-4.5 (insurance fraud).

b. The activity violates Indiana Code § 35-45-15-5 (money laundering) as Defendants transfer or transport the proceeds of criminal activity, specifically proceeds obtained by fraud.

c. The activity violates Indiana Code § 35-45-9-1, as a group of at least three members exists which, promotes, sponsors, assists, or participates in the commission of a felony.

380. In regard to violations of Indiana Code § 35-43-5-4.5, as set forth herein above in this Complaint, Defendants present, or cause to be presented, claim statements that contain false, incomplete, or misleading information concerning the claim.

381. Defendants present, cause to be presented, or prepare with knowledge or belief that it will be presented, to Plaintiffs oral, written, and/or electronic statements that Defendants know to contain materially false information as part of, in support of, or concerning a fact that is material to a claim for payment or benefit under an insurance policy, and payments made in accordance with the terms of an insurance policy. Defendants additionally make statements that conceal information concerning these subjects.

382. The particulars of these statements are set forth in are set forth in Exhibits A and B, to the Appendix to Plaintiffs' *RICO Case Statement*. These documents have been filed under sealed pursuant to this Court's order, and have been provided to Defendants.

383. In regard to violations of Indiana Code § 35-45-15-5, the specifics of the predicate acts, such as the date money obtained from the fraudulent claims was transported, etc., is peculiarly in the knowledge of Defendants.

384. As a direct and proximate result of the Defendants' intentional, willful, and wanton actions, the Plaintiffs have suffered pecuniary injury and damages. Therefore, Plaintiffs are entitled to relief under Indiana Code § 34-24-2-6, including all actual, compensatory, and other damages, including treble damages and punitive damages.

## XV.
## DAMAGES

385. Plaintiffs adopt and incorporate, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 384 above.

386. Plaintiffs have been damaged by Defendants' practices outlined in this Complaint. These include, but are not limited to, the use of enticement and deception in obtaining patients, misrepresentations to the patients in regard to the necessity for treatment, and nondisclosure that the law offices to which the patients are referred are associated with the Enterprise. Bodily injury claims, which otherwise would not have existed, were thereby manufactured by Defendants. In addition, claims that otherwise would have been *de minimis* and complete, without further necessity of examination or treatment, were unnecessarily and grossly inflated by the conduct outlined herein.

387. As a result of these fraudulent claims, Plaintiffs were damaged in that they paid sums in regard to these bodily injury claims.

388. Each Defendant is jointly and severally liable for the damages Plaintiffs incurred, from the period the Defendant participated in the operation of the Enterprise. The known damages, due to the violation of § 1962, are $6,246,895.10, including trebling pursuant to § 1964(c). This does not include costs and attorney's fees. This does also not include other damages that will be identified in the discovery process.

389. In addition to the damages referenced in the preceding paragraph, Plaintiffs were also damaged, in an amount to be determined, in regard to other claims wherein the patient/claimants were released from obligation to pay clinic bills. Plaintiffs have been damaged in that they paid amounts for chiropractic treatment in claims, in which the Defendants falsely represented that the patients retained personal liability for the bills. In addition to the damages referenced in the preceding paragraph, Plaintiffs were also damaged, in an amount to be determined, in regard to other claims where there were charges for x-rays when the x-rays were (1) not performed, (2) not of diagnostic quality, and/or (3) conducted by a person not qualified or certified to do so.

## XVI.
## JURY DEMAND

390. Trial by jury is requested on all issues triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs **Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company,** and **Allstate**

**County Mutual Insurance Company** respectfully request that upon final trial of this cause, the Court enter a judgment against Defendants, each of them jointly and severally:

(1) Upon the First Claim for Relief, all damages resulting from Defendants' violation of Title 18, United States Code, Section 1962(c), including prejudgment interest, the sum trebled pursuant to Title 18, United States Code, Section 1964(c);

(2) Upon the Second Claim for Relief, all damages resulting from Defendants' violation of Title 18, United States Code, Section 1962(d) by conspiracy to violate Title 18, United States Code, Section 1962(c), including prejudgment interest, the sum trebled pursuant to Title 18, United States Code, Section 1964 (c);

(3) Upon the Third Claim for Relief, all damages resulting from Defendants' fraudulent conduct;

(4) Upon the Fourth Claim for Relief, all damages resulting from Defendants' conspiracy;

(5) Upon the Fifth Claim for Relief, all sums to which Defendants were unjustly enriched to Plaintiffs' detriment;

(6) Upon the Sixth Claim for Relief, a declaration that:

a. The Defendants, as a part of their regular business practice, release patients from any personal obligation to pay for clinic treatment and services, as a part of the process to persuade these persons to become patients;

b. Plaintiffs are not obligated to pay any amount charged by Defendants in regard to billings concerning the clinics since January 1, 2002, as the patients in these cases never actually incurred any charge for the services, and that Plaintiffs are entitled to reimbursement for any such payments previously made by them;

(7) Upon the Seventh Claim for Relief, all damages resulting from the applicable Defendants' violation of Ohio Revised Code §2923.32, including trebled damages pursuant to §§2923.32 and 2923.34;

(8) Upon the Eighth Claim for Relief, all damages resulting from the applicable Defendants' violation of Indiana Code §35-45-6-2 and 34-24-2-6, including trebled damages pursuant to §34-24-2-6;

(9) For the costs of suit including reasonable attorneys fees in accordance with Title 18, United States Code, Section 1964 (c);

(10) Prejudgment interest at the maximum rate allowed by law;

(11) Post-judgment interest at the maximum rate allowed by law;

(12) Exemplary damages in such amount as the finder of fact may award at its discretion;

(13) All such other and further relief, legal and equitable, special or general, to which Plaintiffs may be justly entitled.

Respectfully submitted:

__/s/_David Kassabian____________

**DAVID KASSABIAN**
**TEXAS STATE BAR NO. 11105600**
**BRET WEATHERFORD**
**TEXAS STATE BAR NO. 20998800**

**KASSABIAN, DOYLE**
**& WEATHERFORD, P.C.**

2261 Brookhollow Plaza Drive
Suite 300
Arlington, Texas 76006
817/460-5099 (Local)
817/461-8855 (Metro)
817/274-9863 (Facsimile)
dkassabian@kdwlawtx.com

__/s/ Matthew J. Smith____________

**MATTHEW J. SMITH**
**OHIO STATE BAR NO. 0006788**
**J. PATRICK SCHOMAKER**
**OHIO STATE BAR NO. 0076488**
**INDIANA STATE BAR NO. 25086-15**

**SMITH, ROLFES &**
**SKAVDAHL CO., L.P.A.**

600 Vine Street
Suite 2600
Cincinnati, Ohio 45202
513/579-0080
513/579-0222 (Facsimile)
msmith@smithrolfes.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiffs' First Amended Original Complaint was served on the following attorneys via electronic transmission:

Mr. Kenneth R. Stein
Matthews, Stein, Shiels, Pearce,
Knott, Eden & Davis, L.L.P.
8131 LBJ Freeway, Suite 700
Dallas, TX 75251

Mr. Kenton Hutcherson
The Hutcherson Law Firm
3102 Oak Lawn Ave., Suite 700
Dallas, TX 75219

Mr. Robert H. Renneker
Attorney at Law
1412 Main Street, Suite 210
Dallas, TX 75202

Mr. Rodney Sipes
Sipes & Associates, PLLC
3007 West Alberta Road
Edinburg, TX 78539

Mr. Thomas Magelaner
Attorney at Law
1557 Vernon Odom Blvd., Suite 201
Akron, Ohio 44320

And on the following attorneys and pro se parties, via certified mail, return receipt requested, this the 7th day of July, 2008:

Mr. Robert Ekin, D.C.
6326 West Wellington Way, Apt. D
McCordsville, IN 46055
**CM/RRR 7006 3450 0000 1514 5036**

Mr. Roland Toca, II
1919 Veterans Blvd., Suite 303
Kenner, LA 70062
**CM/RRR 7006 3450 0000 1514 0048**

Mr. Randall Toca
1919 Veterans Blvd., Suite 303
Kenner, LA 70062
**CM/RRR 7006 3450 0000 1514 0031**

Mr. Angel Junio
610 Baronne Street
New Orleans, LA 70113-1004
**CM/RRR 7006 3450 0000 1514 5029**

Mr. Eugene X. Mercier
P. O. Box 864
Corpus Christi, TX 78401
**CM/RRR 7006 3450 0000 1514 0062**

/s/David Kassabian