IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ALLSTATE INSURANCE COMPANY, §
ET AL. §
§
Plaintiffs, §
§
VS. § NO. 3-08-CV-0388-M
§
MICHAEL KENT PLAMBECK, D.C., §
ET AL. §
§
Defendants. §

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

In this civil RICO action, Defendants Thomas Magelaner and Magelaner & Associates, Ltd. ("the Magelaner Defendants") have filed a combined Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction and Rule 12(b)(3) motion to dismiss for improper venue. Defendant Rainbow Marketing Consultants, Inc. ("RMC") and a group of defendants consisting of chiropractors, chiropractic clinics, office staff, and some outside telemarketers ("the Chiropractic Defendants") have filed separate Rule 12(b)(7) motions to dismiss for failure to join indispensable parties. For the reasons stated herein, the motions should be denied.[1]

I.

This is an action brought by Allstate Insurance Company and three of its affiliates to recover more than $2 million paid to chiropractors in Texas, Ohio, Indiana, and Alabama as a result of

---

[1] RMC and the Chiropractic Defendants also sought dismissal of plaintiffs' original complaint under Rule 9(b) and Rule 12(b)(6), while all defendants requested alternative relief under Rule 12(e) in the form of a more definite statement. Instead of addressing the pleading defects raised by these motions, the court ordered plaintiffs to file a RICO case statement and an amended complaint, and denied the motions without prejudice. (*See* Doc. #97). Defendants did not renew their Rule 9(b), Rule 12(b)(6), or Rule 12(e) motions after plaintiffs amended their pleadings.

allegedly fraudulent billings for unreasonable and unnecessary chiropractic services. (*See* Plf. First Am. Compl. at 6, ¶ 1; RICO Case Stmt. at 1, § 1(1)). The defendants can be grouped into three broad categories: (1) licensed chiropractors, chiropractic clinics, and their employees; (2) outside telemarketers and marketing firms; and (3) attorneys and law firms who represent accident victims treated by the chiropractors. In their most recent complaint, plaintiffs describe a scheme whereby telemarketers review police reports to obtain the names of persons involved in automobile accidents. Persons who are identified in the police reports as "not at fault" are then solicited by the telemarketers to visit a chiropractic clinic. (*See* Plf. First Am. Compl. at 6, ¶ 2 & 58, ¶ 256; RICO Case Stmt. at 2, § 1(1), 14, § 2(8), & 16-18, § 2(10)-(12)). According to plaintiffs, the accident victims are lured to the clinics with offers of free services. (*See* Plf. First Am. Compl. at 58-59, ¶¶ 260-61; RICO Case Stmt. at 2, § 1(1), 14, § 2(8), & 16-17, § 2(10)). During their initial visit, the accident victims submit to a "10-Point Examination" and, in some cases, x-rays. (*See* Plf. First Am. Compl. at 6, ¶ 3; RICO Case Stmt. at 2, § 1(1)). Plaintiffs allege that these examinations are cursory and sometimes performed by unlicensed chiropractic assistants, and that x-ray films either do not exist or are of such inferior quality as to be useless for diagnostic purposes. (*See* Plf. First Am. Compl. at 62-63, ¶¶ 279, 283). Regardless of the actual clinical findings, the accident victims are told that they have serious injuries that require immediate treatment. (*See id.* at 6, ¶ 3, 7, ¶ 5, & 63, ¶ 285; RICO Case Stmt. at 2, § 1(1)). The chiropractors "convert" the accident victims into treating patients by promising that they never will be personally liable for any treatment costs. (*See* Plf. First Am. Compl. at 63-64, ¶ 282, 286). Instead, the chiropractors agree to look only to insurance proceeds for payment. (*See id.* at 64, ¶ 286). Once the accident victims become patients, they are referred to lawyers associated with the clinics. (*See id.* at 66, ¶ 296). The lawyers send

retention letters to automobile insurers – like plaintiffs – advising that they represent the patients. That effectively precludes the insurers from independently communicating with the patients to verify their condition. (*See id.* at 66, ¶ 299). At the clinics, the patients submit to a set course of treatment designed to maximize insurance billings. (*See id.* at 7, ¶ 6 & 65, ¶ 293; RICO Case Stmt. at 3, § 1(1)). The lawyers participate in the scheme by filing insurance claims on behalf of the patients, which include expenses for allegedly unnecessary chiropractic treatment. (*See* Plf. First Am. Compl. at 7, ¶¶ 7 & 68, ¶ 309; RICO Case Stmt. at 3, § 1(1)). When the claims are settled, the proceeds are deposited into trust accounts held in the name of one of the associated lawyers or law firms. (*See* Plf. First Am. Compl. at 69, ¶ 312).

Plaintiffs allege that the ringleader of this insurance scam is Defendant Michael Kent Plambeck ("Plambeck"), a chiropractor in Arlington, Texas. (*See id.* at 9, ¶ 18 & 23, ¶ 81; RICO Case Stmt. at 5, § 2(1)). According to plaintiffs, Plambeck recruits newly licensed chiropractors to work in clinics managed and controlled by Chiropractic Strategies Group, Inc. ("CSG"), a Texas corporation. (*See* Plf. First Am. Compl. at 12, ¶ 34; RICO Case Stmt. at 5, § 2(1)). Seventeen of the CSG clinics are located in the Arlington area. (*See* Plf. First Am. Compl. at 13-17, ¶¶ 38-54). Plambeck allegedly trains CSG chiropractors in the processes of "conversion" and "retention" by providing scripts that emphasize the importance of convincing patients that they have spinal injuries that require immediate care regardless of any diagnostic findings. (*See* RICO Stmt. at 5, § 2(1)). Any chiropractor who fails to comply with these "conversion" and "retention" policies is terminated by CSG. (*See id.* at 6, § 2(1)). Plambeck and his CSG clinics also participate in the referral of patients to lawyers and law firms. (*See* Plf. First Am. Compl at 23, ¶ 84; RICO Stmt. at 6, § 2(1) & 13, § 2(7)).

On March 6, 2008, plaintiffs sued defendants in Dallas federal court for: (1) violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961, *et seq.*; (2) violations of the Ohio and Indiana racketeering statutes; and (3) fraud, conspiracy, and unjust enrichment under Texas law. Three groups of defendants have filed preliminary Rule 12 motions. The Magelaner Defendants have filed a combined Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction and Rule 12(b)(3) motion to dismiss for improper venue. RMC and the Chiropractic Defendants have filed separate Rule 12(b)(7) motions to dismiss for failure to join as indispensable parties more than 700 patients who received chiropractic treatment. The motions have been fully briefed and are ripe for determination.

II.

The court first considers the issues of personal jurisdiction and venue. In their motion, the Magelaner Defendants maintain that the court lacks personal jurisdiction over Thomas Magelaner, an Ohio personal injury lawyer, and his law firm, Magelaner & Associates, Ltd., because neither defendant conducts business in the State of Texas. The Magelaner Defendants further contend that venue is not proper in the Northern District of Texas because plaintiffs have failed to show that a substantial part of the events or omissions giving rise to their claims occurred in this district.

A.

The exercise of personal jurisdiction over a defendant must always comport with the requirements of due process. When a federal court sitting in diversity attempts to exercise extraterritorial jurisdiction over a nonresident defendant, these requirements are met where the defendant has minimum contacts with the forum state. *See Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994) (citing cases); *see also Quilling v. Stark*, No. 3-05-

CV-1976-L, 2006 WL 1683442 at *2 (N.D. Tex. Jun. 19, 2006). However, the due process analysis is different when personal jurisdiction is predicated on a federal statute that allows for nationwide service of process. In such cases, Congress has effectively provided for the national exercise of personal jurisdiction over a defendant based on his contacts with the United States. *Stark*, 2006 WL 1683442 at *2. Thus, "while the Due Process Clause must be satisfied if a forum is to acquire personal jurisdiction over a defendant, sovereignty defines the scope of the due process test." *Busch*, 11 F.3d at 1258.

Where, as here, the court decides the issue of personal jurisdiction without conducting an evidentiary hearing, the plaintiff has the burden of establishing a prima facie case of jurisdiction over the nonresident defendant. *See Kevlin Services, Inc. v. Lexington State Bank*, 46 F.3d 13, 14 (5th Cir. 1995). The court must accept as true all uncontroverted allegations in the complaint, and any factual conflicts must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). Similar standards govern motions to dismiss for improper venue. *See TransFirst Holdings, Inc. v. Phillips*, No. 3-06-CV-2303-P, 2007 WL 631276 at *3 (N.D. Tex. Mar. 1, 2007).

B.

The federal RICO statute provides, in pertinent part:

> (a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.
>
> (b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

18 U.S.C. §1965. Most courts have interpreted section 1965(b) to confer nationwide jurisdiction in a RICO action over nonresident defendants if the plaintiff can establish personal jurisdiction over at least one defendant under section 1965(a).[2] *See Rolls-Royce Corp. v. Heros, Inc.*, 576 F.Supp.2d 765, 778-79 (N.D. Tex. 2008) (citing cases); *Oblio Telecom, Inc. v. Patel*, No. 3-08-CV-0279-L, 2008 WL 4936488 at *4 (N.D. Tex. Nov. 18, 2008) (citing cases). Stated differently, if a RICO plaintiff can show that at least one defendant "resides, is found, has an agent, or transacts his affairs" in the forum, then jurisdiction is proper as to all other defendants if "the ends of justice require." *Rolls-Royce*, 576 F.Supp.2d at 779; *Paolino v. Argyll Equities, L.L.C.*, 401 F.Supp.2d 712, 718 (W.D. Tex. 2005). Due process in such cases is satisfied if the nonresident defendant has sufficient minimum contacts with the United States. *See Busch*, 11 F.3d at 1258; *Rolls-Royce*, 576 F.Supp.2d at 782.

C.

It is undisputed that Michael Kent Plambeck, the alleged mastermind of the RICO conspiracy, resides in the Northern District of Texas, and that 17 of his CSG clinics are located in this district. Nor is there any dispute that the Magelaner Defendants, who represent accident victims in Ohio and occasionally in Indiana, have minimum contacts with the United States. Therefore, the

---

[2] A circuit split has developed on the issue of which subsection of the RICO statute grants nationwide jurisdiction. The Second, Seventh, Ninth, and Tenth Circuits have determined that subsection 1965(b) confers nationwide service of process in RICO cases. *See PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998); *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671 (7th Cir. 1987), *cert. denied*, 108 S.Ct. 1472 (1988); *Butcher's Union Local No. 498 v. SDC Investments, Inc.*, 788 F.2d 535, 539-39 (9th Cir. 1986); *Cory v. Aztec Steel Building, Inc.*, 468 F.3d 1226, 1230 (10th Cir. 2006), *cert. denied*, 127 S.Ct. 2134 (2007). The Fourth and Eleventh Circuits have held that section 1965(d) is the relevant subsection. *See ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626-27 (4th Cir. 1997), *cert. denied*, 118 S.Ct. 1364 (1998); *Republic of Panama v. BCCI Holdings*, 119 F.3d 935, 942 (11th Cir. 1997). Although the Fifth Circuit has not yet decided the issue, most federal courts in Texas, including two judges in this district, have followed the majority rule. *See Rolls-Royce Corp. v. Heros, Inc.*, 576 F.Supp.2d 765, 779 (N.D. Tex. 2008); *Oblio Telecom, Inc. v. Patel*, No. 3-08-CV-0279-L, 2008 WL 4936488 at *4 (N.D. Tex. Nov. 18, 2008); *Hawkins v. The Upjohn Co.*, 890 F.Supp. 601, 605-06 (E.D.Tex. 1994).

court may exercise personal jurisdiction over the Magelaner Defendants under section 1965(b) if "the ends of justice require."

"[T]he 'ends of justice' is a flexible concept uniquely tailored to the facts of each case." *Cory v. Aztec Steel Building, Inc.*, 468 F.3d 1226, 1232 (10th Cir. 2006), *cert. denied*, 127 S.Ct. 2134 (2007). In a RICO action, the "ends of justice" require nationwide service of process to further the Congressional intent of allowing "plaintiffs to bring all members of a nationwide [ ] conspiracy before a court in a single trial." *Butcher's Union Local No. 498 v. SDC Investments, Inc.*, 788 F.2d 535, 539 (9th Cir. 1986), *citing Sanders v. United States*, 373 U.S. 1, 17, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963); *accord Johnson v. Investacorp, Inc.*, No. 3-89-CV-2607-H, 1990 WL 25034 at *1 (N.D. Tex. Jan. 31, 1990). Nationwide service of process also promotes the "ends of justice" where, as here, numerous defendants reside in different states, and there likely is no alternative forum in which jurisdiction would be proper as to all defendants. *See Johnson*, 1990 WL 25034 at *2 (exercise of nationwide jurisdiction under section 1965 was appropriate where at least three defendants were Texas residents and other defendants resided in such diverse locales as Florida, California, Illinois, Missouri, and Colorado); *see also Hewlett-Packard Co. v. Byd:Sign, Inc.*, No. 6-05-CV-456, 2006 WL 2822151 at *10 (E.D. Tex. Sept. 28, 2006).

While recognizing that the RICO statute authorizes nationwide service of process, the Magelaner Defendants argue that the "ends of justice" do not require that they be brought before the court because plaintiffs have failed to "plead with particularity overt acts within the forum taken in furtherance of the conspiracy." (*See* Magel. Def. Reply at 5). This argument misses the mark. There is no requirement that a plaintiff plead or prove that a nonresident defendant committed an overt act within the forum in furtherance of a RICO conspiracy. All that is required is for the plaintiff to show

that at least one defendant "resides, is found, has an agent, or transacts his affairs" in the district, that the nonresident defendant has minimum contacts with the United States, and that "the ends of justice" require the exercise of personal jurisdiction over the nonresident. Plaintiffs have easily met that burden. To the extent the Magelaner Defendants attempt to challenge the sufficiency of plaintiffs' RICO allegations, a Rule 12(b)(2) motion is not a proper vehicle for such an attack.

The Magelaner Defendants also suggest that the exercise of personal jurisdiction does not comport with the constitutional requirement of due process. (*See* Magel. Def. Reply at 5). "While the expansive minimum contacts test under a nationwide service of process provision does not obviate due process concerns, the Fifth Circuit has [ ] held that, in the context of a nationwide service of process provision, 'it does not offend traditional notions of fair play and substantial justice to exercise personal jurisdiction over a defendant residing within the United States.'" *Rolls-Royce*, 576 F.Supp.2d at 782, *quoting Busch*, 11 F.3d at 1258.[3] This argument is foreclosed by Fifth Circuit precedent.

In sum, the court determines that it has personal jurisdiction over the Magelaner Defendants because: (1) Michael Plambeck, the alleged ringleader of the RICO conspiracy, resides in this district; (2) the Magelaner Defendants have sufficient minimum contacts with the United States; (3) allowing plaintiffs to bring all members of the alleged conspiracy before the court in a single trial furthers the "ends of justice;" and (4) there is no alternative forum in which jurisdiction would be proper as to all defendants. The same analysis controls the resolution of the venue issue. Dismissal of the Magelaner Defendants is not warranted under either Rule 12(b)(2) or Rule 12(b)(3).

---

[3] Although another Fifth Circuit panel has criticized the *Busch* test for exercising personal jurisdiction over a nonresident defendant in a nationwide service of process case, *see Bellaire General Hospital v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822, 826 (5th Cir. 1996), *Busch* has never been overruled and has been consistently followed by district courts within the circuit. *See Rolls-Royce*, 576 F.Supp.2d at 782.

III.

The court next considers whether the failure to join more than 700 patients who were treated by the Chiropractic Defendants requires the dismissal of this case. Under the federal rules, a court may dismiss a case for "failure to join a party under Rule 19." FED. R. CIV. P. 12(b)(7). Rule 19 provides, in pertinent part:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1). If a necessary party cannot be joined without destroying jurisdiction, the court must determine whether, "in equity and good conscience," the action should proceed among the existing parties or be dismissed. FED. R. CIV. P. 19(b). In making that determination, the court must consider:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:

      (A)    protective provisions in the judgment;

      (B)    shaping the relief; or

      (C)    other measures;

(3)    whether a judgment rendered in the person's absence would be adequate; and

(4)    whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.*; *see also HS Resources, Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003). The party seeking dismissal must prove that an absent party is both necessary under Rule 19(a) and indispensable under Rule 19(b). *See Payan v. Continental Tire North America, Inc.*, 232 F.R.D. 587, 589 (S.D. Tex. 2005).

In their motions, RMC and the Chiropractic Defendants maintain that the clinic patients are necessary parties to this suit because: (1) the patients have an interest in whether their chiropractic treatments were fraudulent; (2) the patients should be given an opportunity to "speak for themselves" as to the reasonableness and necessity of their treatments; and (3) a judgment in favor of plaintiffs would entitle the patients to relief, thereby subjecting defendants to a risk of incurring multiple obligations. (*See* RMC Mot. at 17; Chiro. Def. Mot. at 30).[4] RMC further argues that the clinic patients should be joined as parties because they contracted with the chiropractors for a course of

---

[4] In their reply, the Chiropractic Defendants offer an additional reason why the clinic patients should be joined as parties to this suit--they participated in the alleged fraudulent activity and should be required to share the risk of any adverse judgment. (*See* Chiro. Def. Reply at 4-6). Even if the court considers this untimely argument, Rule 19 does not require the joinder of co-conspirators, joint tortfeasors, or persons against whom a defendant may have a claim for contribution. *See Nottingham v. General American Communications Corp.*, 811 F.2d 873, 880 (5th Cir.), *cert. denied*, 108 S.Ct. 158 (1987) ("[I]t is well-established that Rule 19 does not require the joinder of joint tortfeasors."); *Payan*, 232 F.R.D. at 589 ("Joint tortfeasors are not typically indispensable parties, and the general rule is that a plaintiff cannot be forced to sue a joint tortfeasor on the theory that an absent joint tortfeasor automatically subjects the other defendants to a risk of multiple or inconsistent obligations."); *Walker v. Inter-Americas Insurance Corp.*, No. 7-03-CV-222-R, 2004 WL 1620790 at *3 (N.D. Tex. Jul. 19, 2004) (same).

treatment. (*See* RMC Mot. at 16-17). Assuming these conclusory assertions are sufficient to satisfy the necessity element of the Rule 19 analysis, defendants have failed to show that the clinic patients could not be joined without destroying subject matter jurisdiction. "A prerequisite to a proper dismissal for failure to join an indispensable party is that the absent party, if added, would divest the court of subject-matter jurisdiction." *August v. Boyd Gaming Corp.*, 135 Fed. Appx., 731, 732, 2005 WL 1475640 at *1 (5th Cir. Jun. 22, 2005). *See also Power Equities, Inc. v. Atlas Telecom Services-USA, Inc.*, No. 3-06-CV-1892-G, 2007 WL 43843 at *4 (N.D. Tex. Jan. 5, 2007) (court cannot conduct Rule 19(b) analysis without evidence that the absent parties could not be joined in the suit). In this case, federal subject matter jurisdiction is predicated on the RICO statute. There is no argument, much less evidence, that joining any of the 700 clinic patients would divest the court of subject matter jurisdiction. Federal courts are reluctant to grant motions to dismiss based on nonjoinder, and the court should declines to do so here. *See Inclusive Communities Project, Inc. v. Texas Dept. of Housing and Community Affairs*, No. 3-08-CV-0546-D, 2008 WL 5191935 at *9 (N.D. Tex. Dec. 11, 2008).

## RECOMMENDATION

The Rule 12(b)(2) and Rule 12(b)(3) motion to dismiss filed by the Magelaner Defendants [Doc. #56], and the Rule 12(b)(7) motions to dismiss filed by the Chiropractic Defendants and RMC [Docs. #51, 79] should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal

conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 30, 2009.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE