UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

APR – 4 2013

CLERK, U.S. DISTRICT COURT
By _____
Deputy

ALLSTATE INSURANCE COMPANY et al., §
§
§
§
Plaintiffs, §
§
v. § Civil Action No. 3:08-cv-0388-M
§
MICHAEL KENT PLAMBECK, D.C., §
et al., §
§
§
§
§
Defendants. §
§

## COURT'S CHARGE TO THE JURY

MEMBERS OF THE JURY:

### GENERAL INSTRUCTIONS

You have now heard the evidence in this case. At this time, I will instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you, the jury, are the judges of the facts. Do not consider any question I have asked or any statement that I have made in the course of trial or in these instructions as an indication that I have any opinion about the facts of this case. The facts are for you to determine.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Throughout these instructions, I will refer to the "Plaintiffs" and the "Defendants." The Plaintiffs in this case are Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate County Mutual Insurance Company. They will be jointly called the "Plaintiffs." The Defendants in this case are Kent Plambeck, D.C. (whose full name is Michael Kent Plambeck), Michael Capobianco, D.C., Paul Grindstaff, D.C., Randall ("Randy") Toca, Douglas Friedman, Jennifer Giessner, Kim Von Readen (formerly Kim Grindstaff), Charles ("Charlie") Mora, Irma Escandon, Chiropractic Strategies Group, Inc. ("CSG"), Media Placement Services, Inc. ("MPS"), Dove Point Chiropractic Clinic, Inc., Brownsville Chiropractic Clinic, Inc., El Paso Chiropractic Clinic, LLC, WTC Chiropractic Clinic, LLC, Harlingen Chiropractic Clinic, Inc., Wolfin Chiropractic Clinic, LLC, 11th Street Chiropractic Clinic, LLC, Mainland Chiropractic Clinic, LLC, Bergstrom Chiropractic Clinic, Inc., Laredo Chiropractic Clinic, LLC, SA Chiropractic Clinic, LLC, N. Carrier Chiropractic Clinic, Inc., Buckner 30 Chiropractic Clinic, Inc., Hampton Chiropractic Clinic, Inc., Haltom City Chiropractic Clinic, Inc., Congressional Chiropractic Health Center, Inc., Akron Square Chiropractic, Inc., East Broad Chiropractic, Inc., Dayton Chiropractic, Inc., Shaker Square Chiropractic, Inc., Shoreway Chiropractic, LLC, Vernon Place Chiropractic Health Center, Inc., West Broad Chiropractic, Inc., West Tusc Chiropractic, LLC, Youngstown Chiropractic, Inc., Arlington Chiropractic, Inc., American Chiropractic, Inc., Pearl Road Chiropractic, Inc., Mobile Spine & Rehab Center on the Loop, Inc., and Five Points Chiropractic, Inc. They will be jointly called the "Defendants," only when I am referring to all of these entities and individuals collectively.

You must answer all of the questions asked of you from the facts as you find them based upon a preponderance of the evidence. By this is meant the greater weight and degree of credible

credible evidence before you.   In other words, a preponderance of the evidence means the amount of evidence that persuades you that a claim is more likely so than not so.  In determining whether any fact has been proven by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them. The Plaintiffs have the burden of proof by a preponderance of the evidence, except where stated otherwise.   If the proof fails to establish any essential part of the Plaintiffs' claim by a preponderance of the evidence, you should find for the Defendants as to that claim.

Answer each question from the facts as you find them.  Do not decide who you think should win and then answer the questions accordingly.  Your answers and your verdict must be unanimous.

You will recall that during the course of this trial I instructed you that certain testimony and certain exhibits were admitted into evidence for a limited purpose.  You may consider such evidence only for the specific limited purposes for which it was admitted.

You are the sole judges of the credibility or believability of each witness and the weight to be given to his or her testimony.  In weighing the testimony of a witness, you should consider his or her relationship to the Plaintiffs or the Defendants; his or her interest, if any, in the outcome of the case; his or her manner of testifying; his or her candor, fairness and intelligence; his or her opportunity to observe or acquire knowledge concerning the facts; and whether his or her testimony has been supported or contradicted by other credible evidence.  You may accept or reject the testimony of any witness in whole or in part.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some

important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.  You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory.   The significance of the misstatement may depend on whether it has to do with an important fact, or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and the evidence in this case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case.  One is direct evidence–such as testimony of an eyewitness.  The other is indirect or circumstantial evidence–the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the credible evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—he is called an expert witness—is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it. In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

Demonstrative exhibits are illustrations, not evidence that will go back to the jury room. They are a party's description of something involved in this trial. If your recollection of the evidence differs from a demonstrative exhibit, rely on your recollection.

Evidence that an act was done at one time or on one occasion is not any evidence or proof that the act was done in this case. You cannot use it to reflect on any person's character. Nor may you consider it as evidence of any person's propensity to act in a certain way or to commit a specific, similar act. You may not consider any evidence of any alleged wrongful act, other than the alleged wrongful act that Plaintiffs contend is a specific violation, as in any way bearing on

the character of any Defendant or as an indication that any Defendant may have a propensity to commit any of the offenses charged. You may consider evidence of similar acts for the limited purpose of showing a Defendant's motive, intent, or plan that is at issue in this case.

Plaintiffs contend that, at Dr. Plambeck's direction, emails and other information of Chateau Marketing relating to telemarketing to some or all of the chiropractic patients at issue were destroyed after this lawsuit was filed. Defendants dispute that. If you find that a Defendant intentionally destroyed or directed the destruction of such emails or information, you may—but are not required to—presume that the missing evidence would have been unfavorable to that/those Defendant(s) involved in the destruction.

Much testimony has been presented to you through depositions. Depositions are sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented in the form of a deposition, where attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers were read or shown to you. Such deposition testimony is entitled to the same consideration, and is to be judged by you as to credibility and weighed and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand in court.

In deciding the facts of this case, you must not be swayed by bias, prejudice, or favor as to any party. Our system of law does not permit jurors to be governed by prejudice or sympathy or public opinion. The parties and the public expect that you will carefully and impartially consider all of the evidence in the case, follow the law as stated by the Court, and reach a just verdict, regardless of the consequences. A corporation and all other persons stand equal before

the law and are to be dealt with as equals in a court of justice.

## GENERAL STATEMENT OF THE CASE

Plaintiffs contend that Defendants provided unnecessary and unreasonable chiropractic care to 555 patients involved in motor vehicle accidents who were either insured by Plaintiffs or more frequently, the other driver was insured by Plaintiffs. Plaintiffs contend that Defendants made fraudulent misrepresentations to Plaintiffs concerning the reasonableness and necessity of chiropractic care provided to the 555 patients, as reflected in billings submitted to Plaintiffs. This allegation forms the basis of Plaintiffs' fraud and unjust enrichment claims. Plaintiffs also allege that Defendants violated the federal and Ohio RICO statutes. I should note that you have heard me and counsel talk about 562 patients during the trial. The actual number of claims in issue is 555.

Defendants dispute Plaintiffs' allegations. They contend that the 555 patients were injured in car accidents and that chiropractic care was reasonable and necessary. They dispute that intentional misrepresentations were made and argue that Plaintiffs did not rely on any representations by the Defendants, but that instead they made their own decisions about the settlement value of a claim when they investigated and adjusted it. As to the RICO claims, Defendants also assert that the enterprise claimed did not exist, that there was no pattern of racketeering or corrupt activity, and that Plaintiffs did not suffer any direct injury as a result of the alleged conduct.

Those of the Defendants who did not treat patients involved in the 555 cases contend that patient care was ultimately up to the treating chiropractors of each individual patient and that those chiropractors provided reasonable and necessary treatment to the patients. Alternatively, if the billing for all or any part of the treatment was unreasonable and/or unnecessary, those

Defendants claim they had no knowledge of that because any such treatment would have been subject to the exclusive judgment of the treating chiropractor and they did not know the details of billing.

Among the Defendants, only Drs. Grindstaff and Dr. Capobianco rendered care to any of the 555 patients. They contend that the services they rendered to the patients were reasonable and necessary and that any inaccuracies in billings, such as charging for unreadable x-rays, were unintentional and not material, and were not relied upon by the Plaintiffs in making their calculations as to the amounts to pay in settlements.

This is not a medical malpractice case regarding the quality of chiropractic care provided, nor is it a legal malpractice case about the ethical conduct of lawyers. It is also not about the quality of management of the Defendant chiropractic clinics. This case is *exclusively* about billings sent to Plaintiffs for chiropractic services performed at the subject chiropractic clinics and about what sums the Plaintiffs prove they paid for unnecessary and unreasonable chiropractic services. You have heard testimony about whether patients of the clinics were "shielded" during x-rays. If you find that an x-ray was needed, taken, and reasonably used by the Defendants and billed to the Plaintiffs, you are not to consider in answering any question the fact that a body part of the patient was not shielded.

Similarly, you have heard evidence that many of the patients went to one of the Defendant clinics as a result of a telephone call from a representative of the clinic who obtained the patient's name from an accident report. Telemarketing is not illegal and it cannot be considered as the basis of any of the Plaintiffs' claims against the Defendants. I allowed you to hear evidence of it solely to provide you with the background and the circumstances under which those patients came to the clinic.

As I have told you, 126 of the 688 claims originally sought by the Plaintiffs are no longer before you.  These claims are listed on Attachment 4 to this Charge.  During trial, Plaintiffs showed numerous documents to you from these 126 patient files, including photographs, pain charts, x-rays, SOAP notes, 10-Point Exam forms and other clinic and patient records.  Since I had earlier ruled that the only evidence I would allow to come before you were files as to which the Plaintiffs are seeking damages, it is now improper for you to consider any testimony or exhibits about these 126 claims.  It will be difficult, but you must be scrupulous to not consider such evidence for any purpose. This includes all of the testimony concerning the files, notes, charts and x-rays of these patients. Specifically, you must disregard all testimony about these patients and the related documents which was presented:

-in the testimony of Dr. Timberlake, Dr. Baer, Dr. Jenkins, and Plaintiffs' adjuster, Elaine Sepulveda; and

-in the cross examination of Dr. Plambeck, Dr. Capobianco, and Dr. Grindstaff.

Nor shall you consider the testimony of Doris N. as it relates to the 126 files.

No Indiana claims are being submitted to you.  Therefore, you are not to consider claim files 659-664 nor the testimony of Linda Sweatt or Terri Coles nor that part of Dr. Ekin's testimony regarding patients in claim files 659-664.

## SPECIAL INSTRUCTIONS

### I.   FEDERAL RICO CLAIM

Plaintiffs have brought claims against Defendants for alleged violations of section 1962 of title 18 of the United States Code, which is entitled the "Racketeer Influenced and Corrupt Organizations Act," commonly referred to as "RICO."   Specifically, Plaintiffs claim that Defendants violated sections 1962(c) and (d) of RICO.

Plaintiffs must establish by a preponderance of the evidence every element of their RICO claims.   You should consider these elements of a RICO cause of action only in the precise way that I will define them in these instructions. You must avoid confusing any of the elements of a RICO claim with your prior conceptions of the meaning of the terms that are used to describe the elements of a RICO claim.  For example, the word "racketeering" has certain implications in our society.   Your prior understanding of that term in this statute has nothing to do with your decision as to whether Plaintiffs have proven the elements of their claims under the RICO statute against these Defendants.  The term must be used only in the way it was used and defined by Congress in the statute, and you will know what that is from my instructions to you.

A.  Section 1962(c) of RICO

Focusing now on subsection (c) of section 1962, the law states, in part, as follows:

It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity.

To establish that Defendants have violated section 1962(c), Plaintiffs must prove each of the following four elements for each Defendant by a preponderance of the evidence:

1.   That an "enterprise" existed;

2.   That the Defendant was employed by or associated with the alleged enterprise;

3.   That the Defendant knowingly and willfully conducted or participated, directly or indirectly, in the conduct of the affairs of the alleged enterprise; and

4.   That the Defendant did so knowingly and willfully through a pattern of racketeering activity.

In other words, to prove a claim under section 1962(c), a plaintiff must prove that a defendant engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering

activity (5) resulting in (6) injury to business or property. The requirements of section 1962(c) must be established as to each Defendant individually.

     1.   *"Enterprise"*

Plaintiffs have alleged that the enterprise in this case consists of all of the following: Kent Plambeck, Douglas Friedman, Randall Toca, Chiropractic Strategies Group, Inc., Media Placement Services, Inc., Professional Management Group, and Law Office Network, LLC. Plaintiffs allege that the members of the enterprise agreed to solicit people involved in automobile accidents to obtain chiropractic services, which were not reasonable or necessary, and to submit claims for such services to attorneys to induce Plaintiffs, who insured either those who obtained the chiropractic services, or more often, the other drivers in the accidents, to pay for unnecessary and unreasonable chiropractic services. This means more than an occasional submittal of an incorrect bill or an unreasonable x-ray. It means an overall plan or scheme to submit billings for unnecessary and unreasonable services.

A RICO enterprise can be any individual, partnership, corporation, association, or other legal entity, or any union or group of individuals associated in fact, though not a legal entity. An enterprise is a group of people associated together for the common purpose of engaging in a course of conduct. The enterprise must be distinct from each of the "persons" conducting it. Under the law, a "person" includes any legal entity, including a corporation that is capable of holding a legal or beneficial interest in property.

In this case, Plaintiffs allege the existence of an "association-in-fact enterprise." An "association-in-fact" enterprise consists of persons who share a common purpose and collectively form a decision-making structure. If the alleged enterprise is an association-in-fact, Plaintiffs must show evidence of an ongoing organization, formal or informal, that functions as a

continuing unit over time through a hierarchical or consensual decision-making structure.

Plaintiffs must also establish that all of the following—Kent Plambeck, Douglas Friedman, Randall Toca, Chiropractic Strategies Group, Inc., Media Placement Services, Inc., Professional Management Group, and Law Office Network, LLC—actually comprised the association-in-fact enterprise as alleged. This group may have been organized for a legitimate and lawful purpose, or it may have been organized for an unlawful purpose. In addition to having a common purpose, this group must have personnel who function as a continuing unit. Additionally, the enterprise must be an entity separate and apart from the pattern of racketeering acts (which I will define below) in which it engages. If the Plaintiffs have failed to prove that all members alleged to comprise the enterprise were in fact members, the essential element of an enterprise would be missing and you would be required to find no RICO violation.

If you find that this association-in-fact enterprise claimed by Plaintiffs existed, you must also determine whether this enterprise continued, in an essentially unchanged form, during substantially the entire period alleged by Plaintiffs.

2. *"Employed by or Associated with"*

The second element of a RICO claim is whether any Defendant was employed by or associated with the enterprise about which I have instructed you. "Employed by or associated with" means some minimal association with the alleged enterprise. To be liable under RICO, a Defendant must know something about the alleged enterprise's actions as they relate to the racketeering activity. A person cannot be employed by or associated with an "enterprise" if he does not know of the enterprise's existence or the nature of its activities. Thus, in order to prove this element, Plaintiffs must prove that a Defendant was connected to the enterprise in some meaningful way, and that Defendant knew of the existence of the enterprise and of the general

nature of its activities.

3. "*Racketeering Activity*"

"Racketeering activity" means an act in violation of (1) the federal mail fraud statute, (2) the federal wire fraud statute, or (3) the federal statute prohibiting the transport of stolen goods across state lines. These are called the "predicate acts." However, you may not consider just any racketeering act allegedly committed by a Defendant in violation of one of these statutes as bearing on the question of whether a Defendant has committed two or more predicate offenses as a pattern of racketeering activity.

In making this determination, you are to consider <u>only</u> those specific racketeering acts alleged by Plaintiffs against a particular Defendant. Plaintiffs have alleged that each of the Defendants has committed two or more predicate acts. It is your role to decide whether Plaintiffs have proven by a preponderance of the evidence as to each Defendant whether that Defendant violated the federal mail fraud, federal wire fraud, or federal statute prohibiting the transport of stolen goods across state lines, on two or more occasions, if at all.

4. "*Pattern of Racketeering Activity*"

A "pattern of racketeering activity" requires that Plaintiffs prove that a Defendant committed *at least* two predicate acts of "racketeering activity" within ten years of each other. The proof of two or more predicate acts does not in and of itself establish a "pattern" under RICO. The two predicate acts need not be of the same kind. For example, the acts may be one act of mail fraud and one act of wire fraud. However, you must find by a preponderance of the evidence that (1) the two acts occurred within the time specified and (2) that each was connected with the other by some common scheme, plan, or motive so as to constitute a "pattern." A series of wholly separate, isolated, or disconnected predicate acts do not constitute a "pattern" of

racketeering activity unless the acts all relate to a common scheme by a Defendant to continually conduct the affairs of the alleged enterprise for illicit personal benefit, whether monetary or otherwise, for himself or itself or for another, by committing the predicate offenses.

Furthermore, you cannot find that a Defendant has engaged in a "pattern of racketeering activity" unless you unanimously agree to which of the alleged predicate offenses, if any, make up the pattern.  Thus, it would not be sufficient if some of you should find that a Defendant committed a violation of two or more predicate offenses under one particular statute as a pattern and the rest of you should find that a Defendant committed a violation of two or more predicate acts under another statute as a pattern.  In other words, you may not find that a Defendant has engaged in a pattern of racketeering activity unless you unanimously, from a preponderance of the evidence, find (1) a "pattern" of predicate offenses and (2) that a Defendant committed each of the same two or more predicate offenses that you find make up the pattern.

   5.   *"Predicate" or "Racketeering" Act*s

      a.   Federal Mail and Wire Fraud Statutes

To establish that federal mail fraud has been committed, Plaintiffs must prove the following as to each Defendant so charged:

   1.   A Defendant willfully and knowingly devised a scheme or artifice to defraud, or a scheme for obtaining money or property by means of false pretenses, representations or promises,  and

   2.   A Defendant used the Postal Service or private or commercial carrier by mailing or delivering, or by causing to be mailed or delivered, some matter or thing for the purpose of executing the scheme to defraud.

In other words, to prove a violation of the federal mail fraud statute, Plaintiffs must prove that a Defendant knowingly and willfully devised or intended to devise a scheme to defraud which was substantially the same as the one alleged by Plaintiffs, and that the use of the United

States mail, or delivery to a private or commercial carrier, was closely related to the scheme, in that one or more of the Defendants either mailed or delivered something or caused something to be mailed or delivered, in an attempt to execute or carry out the scheme. One causes the mails or a private or commercial carrier to be "used" if he or it does an act with knowledge that the use of the mails or a private or commercial carrier will follow in the ordinary course of business, or if he or it can reasonably foresee such use.

The word "willfully," means that the action was committed voluntarily and purposely, with the specific intent to do something the law forbids. The action must be done with a bad purpose: either to disobey or disregard the law.

The word "knowingly," means that the action was done voluntarily and intentionally, and not because of mistake or accident.

The words "scheme" and "artifice" in the federal mail fraud statute include any plan or course of action intended to deceive others, and to obtain property from the persons so deceived by false or fraudulent pretenses, representations, or promises. To act with "intent to defraud" means to act knowingly and with the specific intent to deceive.

A statement or representation is "false" or "fraudulent" within the meaning of the federal mail fraud statute if it relates to a material fact and is known to be untrue or is made with reckless indifference as to its truth or falsity, and is made or caused to be made with intent to defraud. A statement or representation may also be "false" or "fraudulent" if it constitutes a half truth, or effectively conceals a material fact, with intent to defraud. A "material" fact is a fact that would be important to a reasonable person in deciding whether to engage in a particular transaction.

The elements of federal wire fraud are the same as for mail fraud, except that a wire,

radio, or television communication is substituted for mail or carrier use. To prove that federal wire fraud has been committed in this case, Plaintiffs must prove by a preponderance of the evidence that a Defendant used a telephone or fax machine for the purpose of executing the scheme to defraud. To establish federal wire fraud, it must be found that when the Defendant performed an act, he or it knew, or reasonably could foresee, that a telephone or fax machine would be used to further a scheme or artifice to defraud.

Good faith constitutes a complete defense to a federal mail or wire fraud violation. "Good faith" means the person committing the act had a genuine belief that the information sent or given was true. If you find that an act alleged to be fraudulent was committed by a Defendant in good faith, then Plaintiff has not proven that mail fraud or wire fraud occurred, and you must find for that Defendant on that issue.

b. Statute Prohibiting Interstate Transportation of Stolen Property

To establish a violation of the federal statute prohibiting the transport of stolen money across state lines, Plaintiffs must prove by a preponderance of the evidence as to a Defendant that:

1.  A Defendant transported, transmitted, or transferred money of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; or

2.  A Defendant, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transported or caused to be transported in the execution or concealment of the scheme or artifice to defraud, money of the value of $5,000 or more.

Knowledge or reasonable foreseeability of transport is not required to find liability. It is enough if a Defendant set in motion a series of events which in the normal course led to the transportation. The phrase "taken by fraud" means to deceive or cheat someone out of property

by means of false or fraudulent pretenses, representations, or promises.

When determining whether the value of any money transported in the execution of a scheme to defraud was $5,000 or more, you must view each incident in which Plaintiffs allege money was transported individually. You may not aggregate separate acts of transport to find that the value of the money transported was $5,000 or more.

6. *"Nexus Between Enterprise, Defendant, and Racketeering Activity"*

RICO's third and fourth elements require that Plaintiffs prove by a preponderance of the evidence that a Defendant knowingly and willfully conducted or participated in the conducting of the affairs of the alleged enterprise through a pattern of racketeering activity. Plaintiffs must prove, by a preponderance of the evidence, a sufficient connection between the enterprise, the Defendant, and the alleged pattern of racketeering activity. In order to establish a sufficient connection between the enterprise, the Defendant and the alleged pattern of racketeering activity, Plaintiffs must prove by a preponderance of the evidence:

1. That a Defendant participated, directly or indirectly, in the operation or management of the enterprise itself in such a way as to have played some part in directing the affairs of the enterprise;

2. That the Defendant in fact engaged in the pattern of racketeering activity as the Plaintiffs claim;

3. That the Defendant's association with or employment by the enterprise facilitated his commission of the racketeering acts; and

4. That the commission of these predicate acts had some direct or indirect effect on the alleged enterprise.

A person does not violate the law by merely associating with or being employed by an otherwise lawful enterprise, the affairs of which are being conducted by others through a pattern of racketeering activity in which he is not personally engaged.

B.    Section 1962(d) of RICO

Plaintiffs also claim that Defendants violated section 1962(d) of RICO because Defendants conspired to violate the RICO law.  This means that Plaintiffs allege that Defendants conspired to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity.

A "conspiracy" in this sense is a combination or agreement of two or more persons to join together to accomplish an offense which would be in violation of section 1962(c) under the law that I have given you above with respect to that section.

To establish a violation of section 1962(d), Plaintiffs must prove by a preponderance of the evidence:

> 1. That two or more persons in some way or manner came to a mutual understanding to attempt to accomplish a common and unlawful plan, that is, that while being employed by or associated with an enterprise, they engaged in activities or conducted the affairs of the alleged enterprise through a pattern of racketeering activity, in the manner charged;
>
> 2. That a defendant knowingly and willfully became a member of a conspiracy by objectively indicating, through his or its words or actions, his or its agreement to conduct or participate, directly or indirectly, in the conduct of the affairs of an enterprise through a pattern of racketeering activity; and
>
> 3. That at least one of the conspirators committed at least one overt act during the existence of a conspiracy in an effort to accomplish some object or purpose of the conspiracy.

The definitions and instructions that I gave to you earlier as to "enterprise," "racketeering activity," "pattern of racketeering activity," and "nexus between enterprise, defendant, and racketeering activity" apply here as well.

With regard to the first element of the claim of conspiracy, the evidence in the case need not show that the alleged members of the conspiracy entered into any express or formal

agreement, or that they directly stated between themselves the details of the scheme and its object or purpose or the precise means by which the object or purpose was to be accomplished. Similarly, the evidence in the case need not establish that all of the means or methods alleged were in fact agreed upon to carry out the alleged conspiracy, or that all of the means or methods which were agreed upon were actually used or put into operation. Plaintiffs are not required to prove that all of the persons charged with being members of the conspiracy were members or that the alleged conspirators actually succeeded in accomplishing their unlawful objectives.

On the other hand, it is not enough if the evidence shows only that the alleged conspirators agreed to commit the acts of racketeering alleged by Plaintiffs, without more, or that they agreed merely to participate in the affairs of the same alleged enterprise. Instead, Plaintiffs must prove by a preponderance of the evidence that the alleged conspirators agreed to conduct or participate in the conduct of the affairs of the alleged enterprise and that they further agreed that their individual participations would be through two or more racketeering acts in furtherance of the affairs of the alleged enterprise. It does not matter that the alleged conspirators participated in the conduct of the affairs of the alleged enterprise through different, dissimilar, or otherwise unrelated acts of racketeering activity, so long as the alleged racketeering acts would, if they were actually committed, create a "pattern of racketeering activity," as I defined that phrase above.

As to the second element of the alleged conspiracy violation—knowing and willful membership in the conspiracy—Plaintiffs must prove by a preponderance of the evidence:

1.    That a Defendant knew that the basic object of the alleged conspiracy was conducting the alleged enterprise through a pattern of racketeering activity;

2.    That a Defendant knowingly and willfully agreed to personally commit, or aid and abet the commission of, at least two acts of racketeering as a "pattern of racketeering activity" as I have defined it; and

3.     That a Defendant knowingly and willfully agreed to conduct or participate in the conduct of the affairs of the alleged enterprise through this pattern of racketeering activity.

"Aid and abet" means to assist or facilitate the commission of a crime or to promote its accomplishment. One may become a member of a conspiracy without full knowledge of all of the details of the unlawful scheme or without knowledge of the names and identities of all of the other alleged conspirators. If Plaintiffs prove by a preponderance of the evidence that a particular Defendant knowingly and willfully joined the alleged conspiracy under the three requirements I have just set forth, it does not matter that Defendant may not have participated in the earlier stages of the alleged conspiracy or scheme.

However, mere presence at the scene of some transaction or event, or mere similarity of conduct among various persons and the fact that they may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily prove the existence of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some object or purpose of a conspiracy, does not thereby become a conspirator.

Plaintiffs need not prove that a Defendant actually committed any of the acts that he may have agreed to commit in order to establish his membership in the conspiracy. You may consider only those racketeering acts alleged against a particular Defendant by the Plaintiffs in determining whether that Defendant has agreed to commit two acts of racketeering activity as a "pattern of racketeering activity."

To establish the third element, Plaintiffs must prove by a preponderance of the evidence that at least one of the alleged conspirators committed at least one "overt act" during the

existence of the alleged conspiracy. An "overt act" is a transaction or event, even one which may be entirely legal and innocent when considered alone, but which is knowingly committed by a conspirator in an effort to accomplish some object of the conspiracy.

In your consideration of this conspiracy claim, you should first determine whether the alleged conspiracy existed. If you conclude that a conspiracy did exist as alleged, you should next determine whether or not the Defendant under consideration willfully became a member of that conspiracy.

In determining whether there was a conspiracy you may consider all the evidence in the case. If you find that there was a conspiracy then you may attribute the statements or acts of the co-conspirators to a Defendant who you find was also a member of a conspiracy. If you find that there was no conspiracy then you may not attribute the statements or acts of a Defendant to another Defendant.

If you find that no such conspiracy existed, then you must find for the Defendants on section 1962(d). However, if you are satisfied that such a conspiracy existed, you must determine who were the members of that conspiracy.

If you find that a particular Defendant was a member of another conspiracy, but not the one charged by Plaintiffs, then you must find for that Defendant. In other words, you cannot find that a Defendant violated section 1962(d) unless you also find that the Defendant was a member of the conspiracy charged, and not some other separate conspiracy.

C. Causation under RICO

For Plaintiffs to prevail under RICO, they must prove by a preponderance of the evidence that a Defendant's RICO violations were the "proximate cause" of injury to the Plaintiffs' business or property. Therefore, you must find that Plaintiffs suffered an injury to their business

or property and that the injury was caused "by reason of" the Defendants' violation of RICO. A person is injured in his or its business when he or it suffers loss of money or profits or a reduction in the value or worth of his business.

Plaintiffs have alleged 555 instances in which they claim they were injured or damaged by Defendants' violations of the RICO Act. Each of these 555 claims must be proved independently. An injury or damage is proximately caused when the act played a substantial part in bringing about or actually causing the Plaintiffs' injury or damage, and that the injury or damage was either a direct result or a reasonably probable consequence of the act.

To find that injury to the Plaintiffs' business or property was caused "by reason of" a Defendant's violation of RICO, you must find that the injury to the Plaintiffs was caused by, and was a direct result of a Defendant's violation of either section 1962(c) or (d). Therefore, you must find that the commission of the acts of racketeering, or the pattern of racketeering activity, or the conduct of the affairs of the enterprise through the pattern of racketeering activity, if you find any, directly resulted in the injury or played a substantial role in producing the injury.

Plaintiffs allege that Defendants misrepresented to them, or caused to be misrepresented to them, that, with regard to the 555 individual claims in this case, reasonable and necessary chiropractic care was provided to the patients at issue when it was not. Therefore, to find that injury to the Plaintiffs' business or property was caused "by reason of" the Defendants' violation of RICO, you must find that Defendant made the misrepresentation that the chiropractic care was reasonable and necessary and that as a result of that misrepresentation, Plaintiffs were injured. In connection with their damage claims, Plaintiffs must prove that they made payments for specific chiropractic bills, in specific amounts as to each of the individual claims that comprise the 555 claims made the basis of this suit, because of a representation made by a Defendant that

the bills were reasonable and necessary when they were, in whole or in part, not reasonable or necessary and that the Plaintiffs' injury was a direct result of such representation.

## II.   OHIO RICO (OHIO CORRUPT PRACTICES ACT)

Plaintiffs have also alleged that with regard to patient numbers 478-490, 492–502, 504–509, 511–512, 514–515, 521–527, 531, 533–542, 544–546, 548–560, 562–575, 578–87, 589–595, 597–600, 602, 604–608, 610–615, 617–619, 621, 624–630, 635, 639–647, Defendants violated the Ohio Corrupt Practices Act.  The thrust of the Ohio Corrupt Practices Act is similar to the federal RICO Act discussed above.

In order for Plaintiffs to recover under the Ohio Corrupt Practices Act, you must find by a preponderance of the evidence the four elements of section 1962(c) of RICO that I have described for you beginning at page 10 of the Charge.  To prove the level of association necessary to support a violation of the Ohio Corrupt Practices Act, Plaintiffs also must prove by a preponderance of the evidence that a Defendant charged was voluntarily connected to the pattern of corrupt activity comprising  the enterprise, and performed two or more acts in furtherance of it, and the existence of a "pattern of corrupt activity" which requires proof of at least two incidents of corrupt activity within six years of one another, one of which must have occurred after January 1, 1986.

Under the Ohio Corrupt Practices Act, "corrupt activity" includes the predicate offenses described above for federal RICO (federal mail and wire fraud and the federal statute prohibiting the transport of stolen money), as well as specified violations of Ohio law.  The predicate offenses alleged in this case are the federal violations described above and violations of the Ohio telecommunications fraud statute and the Ohio insurance fraud statute.

*a. Ohio-Specific Predicate Offenses*

A person violates the Ohio telecommunications fraud statute when that person, having devised a scheme to defraud, knowingly disseminates, transmits, or causes to be disseminated or transmitted by means of a wire, radio, satellite, telecommunication, telecommunications device, or telecommunications service any writing, data, sign, signal, picture, sound, or image with the purpose to execute or otherwise further the scheme to defraud.

A person violates the Ohio insurance fraud statute when that person, with the purpose to defraud or knowing that he is facilitating a fraud,

1) presents, or causes to be presented to, an insurer any written or oral statement that is part of, or in support of, an application for insurance, a claim for payment pursuant to a policy, or a claim for any other benefit pursuant to a policy, knowing that the statement, or any part of the statement, is false or deceptive; or

2) assists, aids, abets, solicits, procures, or conspires with another to prepare or make any written or oral statement that is intended to be presented to an insurer as part of, or in support of, an application for insurance, a claim for payment pursuant to a policy, or a claim for any other benefit pursuant to a policy, knowing that the statement, or any part of the statement, is false or deceptive.

When you are determining whether a person violated the Ohio insurance fraud statute, consider the following:

> "statement" includes, but is not limited to, any notice, letter, or memorandum; proof of loss; bill of lading; receipt for payment; invoice, account, or other financial statement; estimate of property damage; bill for services; diagnosis or prognosis; prescription; hospital, medical, or dental chart or other record; x-ray, photograph, videotape, or movie film; test result; other evidence of loss, injury, or expense; computer-generated document; and data in any form;

> "deceptive" means that a statement, in whole or in part, would cause another to be deceived because it contains a misleading representation, withholds information, prevents the acquisition of information, or by any other conduct, act, or omission creates,

confirms, or perpetuates a false impression, including, but not limited to, a false impression as to law, value, state of mind, or other objective or subjective fact.

## III.   FRAUD CLAIM

Plaintiffs also have sued Defendants for fraud.  Plaintiffs contend that Defendants, personally or through agents, made or caused to be made false and fraudulent material misrepresentations of fact to Plaintiffs concerning the reasonableness and necessity of treatment. Fraud occurs when a party makes:

1)   a material misrepresentation;

2)   the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion;

3)   the misrepresentation is made with the intention that it should be acted on by the other party; and

4)   the other party relies on the misrepresentation and thereby suffers injury.

"Misrepresentation" means either

1)   a false statement of fact;

2)   a statement of opinion based on a false statement of fact;

3)   a statement of opinion that the maker knows to be false; or

4)   an expression of opinion that is false, made by one claiming or implying to have special knowledge of the subject matter of the opinion. "Special knowledge" means knowledge or information superior to that possessed by the other party and to which the other party did not have equal access.

To prove fraud, Plaintiffs must prove that they *actually* relied on Defendants' alleged misrepresentations; in other words, that Plaintiffs' adjusters paid money to resolve a claim of a patient treated by the Defendants because the adjuster in fact believed and relied on Defendant's representations reflected in documents that Defendants intended would be submitted to Plaintiffs as part of a claim for payment from Plaintiffs.   Plaintiffs can establish reliance on a

representation where the Plaintiffs actually relied upon a representation and where they did not have knowledge of facts which would put a reasonably prudent person on notice that a further investigation was necessary.  If the Plaintiffs made their own unhindered investigation of the facts, they cannot have relied upon the misrepresentations of others.

To act "knowingly" means that the act was done voluntarily and intentionally, not because of mistake or accident.  Plaintiffs allege that Defendants misrepresented to them, or caused to be misrepresented to them, that the chiropractic care and treatment provided by Defendants to the patients at issue in each of the 555 claims was reasonable and necessary.

You are instructed that if you find that care was given for legitimate injuries which were aggravated by negligent or mistaken treatment by the treating chiropractor, that does not constitute unreasonable or unnecessary care for which Plaintiffs may recover.

Plaintiffs are seeking to recover for 555 individual acts of fraud.  If Plaintiffs do not prove each of the elements of fraud for any individual claim(s), they cannot recover for that claim.  For each of the 555 acts of fraud alleged by Plaintiffs, you may not find that a Defendant has engaged in fraud unless you unanimously find that each of the elements of fraud for that specific file has been proven by a preponderance of the evidence.

## IV.   CONSPIRACY TO DEFRAUD

Plaintiffs have also sued Defendants alleging conspiracy to defraud them. A conspiracy is a combination by two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means.  To be part of a conspiracy, a Defendant and another person or persons must have had knowledge of, agreed to, and intended, a common objective or course of action, in this case fraud, which resulted in damages to Plaintiffs. One or more persons involved in the conspiracy must have performed some act or acts to further the conspiracy.  The

fraud alleged here is generating bills that were not reasonable or necessary intending that they would be paid by Plaintiffs.

## V.    UNJUST ENRICHMENT CLAIM

Plaintiffs have also sued certain Defendants for "unjust enrichment." Plaintiffs allege that certain Defendants have been unjustly enriched by payments made by Plaintiffs to them, directly or indirectly.

A plaintiff may recover money for "unjust enrichment" when a defendant has obtained a benefit from the plaintiff by fraud, duress, or the taking of an undue advantage. To establish such a claim, Plaintiffs must establish by a preponderance of the evidence:

> (1) a benefit, conferred because of fraud, duress, or the taking of an undue advantage;
>
> (2) upon a Defendant;
>
> (3) knowledge by the Defendant of the benefit; and
>
> (4) retention of the benefit by the Defendant under circumstances where it would be unjust to do so without payment.

## VI.    COMPENSATORY DAMAGES

If Plaintiffs have proven their claims against Defendants by a preponderance of the evidence, you must determine the damages to which Plaintiffs are entitled. You should not interpret the fact that I have given instructions about Plaintiffs' damages as an indication in any way that I believe that Plaintiffs should, or should not, win this case. It is your task first to decide whether Defendants are liable. I am instructing you on damages only so that you will have guidance in the event you decide that any Defendants are liable and that Plaintiffs are entitled to recover money from them.

If you find that Defendants are liable to Plaintiffs, then you must determine an amount

that is fair compensation for all of the Plaintiffs' damages, no more and no less. These damages are called compensatory damages.  The purpose of compensatory damages is to make Plaintiffs whole—that is, to compensate Plaintiffs for the damage that Plaintiffs have suffered.

You may award compensatory damages only for injuries that Plaintiffs prove were proximately caused by Defendants' allegedly wrongful conduct.  Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize a Defendant. You should not award compensatory damages for speculative injuries, but only for those injuries which the Plaintiffs have actually suffered.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that Plaintiffs prove the amount of their losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must answer each question separately and award damages, if appropriate, independently of damages which you may award under any other question.

## VII.    FEDERAL AND OHIO RICO DAMAGES

In considering damages, if any, with respect to the RICO claims, you must assess the amount you find justified by a preponderance of the evidence as full, just, and reasonable compensation for all of the damages to Plaintiffs in their business or property resulting from any RICO violations you have found.  Damages may not be based on speculation.

Under RICO, Plaintiffs may recover only for injury to their business or property.  You should consider the amount of damages, if any, as to the Defendant with respect to the federal and Ohio RICO claims separately and independently from the amount of damages, if any, with

respect to the other, non-RICO claims.

The damages alleged by Plaintiffs fall into one basic category; that is, amounts paid by Plaintiffs for 555 claims. Plaintiffs assert that as a result of actions by the Defendants, they were presented with bills for chiropractic services which were not reasonable or necessary. In order to recover damages, Plaintiffs must demonstrate what portion, if any, of the amounts paid for each of the 555 patients was the direct result of Defendants having bills generated for particular services that were not reasonable or necessary, by reason of violations of federal or Ohio RICO laws.

## VIII.    FRAUD DAMAGES

In considering the issue of damages, if any, with respect to Plaintiffs' fraud claims, you must assess the amount you find justified by a preponderance of the evidence as necessary to compensate Plaintiffs for a Defendant's fraud.

Plaintiffs assert that they were presented with bills for chiropractic services which were not reasonable or necessary when treating patients to whom Plaintiffs owed liability for medical care. While Plaintiffs settled these claims, they allege that these settlement expenses would have been less had Defendants not billed for services which were not reasonable or necessary. Defendants, on the other hand, assert that Plaintiffs settled these claims for many reasons unrelated to billings for chiropractic care and that Plaintiffs cannot prove that they suffered any specific, quantifiable actual harm as a result of Defendants' billings. Plaintiffs may only recover the difference, if any, which they have proven by a preponderance of the evidence, between the value of any reasonable and necessary chiropractic services received by the patients and the amount Plaintiffs proved was paid in settlement and attributable only to chiropractic services, if any.

## JURY QUESTIONS

### QUESTION 1 (Federal Rico Act: Section 1962(c))

Do you find from a preponderance of the evidence that (1) an enterprise comprised of all of Kent Plambeck, Douglas Friedman, Randall Toca, Chiropractic Strategies Group, Inc. ("CSG"), Media Placement Services, LLC ("MPS"), Professional Management Group, LLC, and Law Office Network, LLC, existed and that (2) the subject Defendant was employed by or associated with that enterprise and that (3) that Defendant knowingly and willfully conducted or participated, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity?

Answer this Question "yes" or "no" as to each Defendant on Question 1 of Attachment 1. If you answered "yes" as to any Defendant in Question 1, then continue to Question 2. If you answered "no" for every Defendant on Question 1, then go to Question 3.

### QUESTION 2 (Federal Rico Act: Section 1962(d))

Do you find from a preponderance of the evidence that the subject Defendant entered into a conspiracy with another person to conduct or participate, directly or indirectly, in the conduct of the affairs of an enterprise comprised of all of Kent Plambeck, Douglas Friedman, Randall Toca, Chiropractic Strategies Group, Inc. ("CSG"), Media Placement Services, LLC ("MPS"), Professional Management Group, LLC, and Law Office Network, LLC, through a pattern of racketeering activity, while employed by or associated with such enterprise?

Answer this Question "yes" or "no" as to each Defendant on Question 2 on Attachment 1. Then continue to Question 3.

### QUESTION 3  (Ohio RICO Act)

Do you find from a preponderance of the evidence that (1) an enterprise comprised of all of Kent Plambeck, Douglas Friedman, Randall Toca, Chiropractic Strategies Group, Inc. ("CSG"), Media Placement Services, LLC ("MPS"), Professional Management Group, LLC, and

## IX.    UNJUST ENRICHMENT DAMAGES

In considering the issue of damages, if any, with respect to Plaintiffs' unjust enrichment claims, you must assess the amount, if any, you find to be justified as necessary to compensate Plaintiffs for any unjust enrichment of a Defendant.

Office Network, LLC, existed and that (2) the subject Defendant was employed by or associated with that enterprise and that (3) that Defendant knowingly and willfully conducted or participated, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of corrupt activity?

Answer this Question "yes" or "no" as to each Defendant on Question 3 on Attachment 1. Only if you answered "yes" as to any Defendant on Questions 1, 2, or 3, continue to Question 4. Otherwise go to Question 5.

## QUESTION 4 (Federal and Ohio RICO Damages)

What sum of money, if any, do you find from a preponderance of the evidence would reasonably compensate Plaintiffs for actual damages, if any, to their business or property by reason of the federal or Ohio RICO Act violation found by you in your answers to Question 1-3?

For each claim file as to which you conclude Plaintiffs suffered RICO damages, answer in dollars and cents, or zero, as to each of the claim files on Question 4 on Attachment 1. Continue to Question 5.

## QUESTION 5 (Fraud)

Do you find from a preponderance of the evidence that the subject Defendant committed fraud by having bills generated for chiropractic services that were unnecessary or unreasonable, with the intent that such billings would be submitted to Plaintiffs for payment?

Answer "yes" or "no" for each Defendant on Question 5 on Attachment 2. If you answered "yes" as to any Defendant on Question 5, then continue to Question 6. If you answered "no" for every Defendant on Question 5, then go to Question 8.

## QUESTION 6 (Conspiracy to Commit Fraud)

Do you find from a preponderance of the evidence that the subject Defendant was part of a conspiracy to commit fraud by having bills generated for chiropractic services that were unnecessary or unreasonable, with the intent that those bills would be submitted to Plaintiffs for payment?

Answer "yes" or "no" for each Defendant on Question 6 on Attachment 2. If you answered "yes" as to any Defendant on Questions 5 or 6, continue to Question 7. If you answered "no" as to all Defendants in your answers to Questions 5 or 6, continue to Question 8.

## QUESTION 7 (Fraud Damages)

As to any claim for which you found a Defendant committed fraud or conspired to commit fraud, what sum of money, if any, if paid now in cash, would fairly and reasonably compensate Plaintiffs for their damages, if any, that were proximately caused by a Defendant's fraud or conspiracy to commit fraud?

For each Defendant for which you answered "yes" in answer to Questions 5 or 6, answer in dollars and cents, or zero, as to each claim on Attachment 2. Continue to Question 8.

## QUESTION 8 (Unjust Enrichment)

Was a Defendant unjustly enriched by receiving money paid by Plaintiffs in settlement of any of the claims in issue?

Answer "yes" or "no" for the listed Defendants on Question 8 on Attachment 3. As to any listed Defendant as to whom or which you answer "yes," answer Question 9 as to that Defendant. If you answer "no" as to all listed Defendants, you have completed your answers to the questions.

## QUESTION 9 (Unjust Enrichment)

As to each claim for which you found a Defendant was unjustly enriched in answer to Question 8, what sum of money, if paid now in cash, represents the amount by which that Defendant was unjustly enriched?

For each Defendant as to whom or which you answered "yes" in answer to Question 8, answer Question 9 in dollars and cents, or zero, on Attachment 3 as to that Defendant.

## GO TO THE LAST PAGE OF THE CHARGE WHERE THE VERDICT FORM IS TO BE SIGNED.

**JUROR'S DUTIES AND DELIBERATIONS, COMMUNICATION WITH THE COURT**

It is your sworn duty as jurors to discuss the case with one another in an effort to reach an agreement, if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to reexamine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up on your honest beliefs solely because the others think differently, or merely to finish the case. Remember that in a very real way you are the judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

During the trial, the court reporter made a verbatim record of the proceedings. The court rules do not provide for testimony to be produced for the jury in written form, or for testimony to be read back to the jury as a general aid in refreshing juror's memories. In limited circumstances, the Court may direct the court reporter to read testimony back to the jury in open court. This is done, however, only when the jury certifies that it disagrees as to the testimony of a particular witness, and identifies the specific testimony in dispute.

When you retire to the jury room to deliberate, you will be given this charge and the exhibits that the Court has admitted into evidence. Then select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that I have given you concerning your conduct during the trial. After you have reached a unanimous verdict, your Foreperson must fill in your answers to the written question and sign and date the verdict form. Unless I direct you otherwise, do not reveal your answers until such time as you are discharged. Unless instructed otherwise, you are not to disclose your numerical division on any question.

If you want to communicate with me at any time, please give a written message to the Court Security Officer, who will bring it to me.  I will then respond as promptly as possible either in writing or by meeting with you in the courtroom.  I will always first show the attorneys your question and my response before I answer your question.  After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.  You may now retire to the jury room to conduct your deliberations.

Dated: _____4/1_____, 2013.

U.S. District Judge Barbara M.G. Lynn

## VERDICT OF THE JURY

We, the jury, have answered the above questions as indicated, and return the same to the

Court as our verdict.


Date: ___4 April 2013___

REDACTED

___                                    ___

**Foreperson**

## ATTACHMENT 1

### Federal and Ohio RICO Claims

| | List of Defendants: | QUESTION 1 Answer "yes" or "no" | QUESTION 2 Answer "yes" or "no" | QUESTION 3 Answer "yes" or "no" |
|---|---|---|---|---|
| 1 | Kent Plambeck ("Plambeck") | Yes | Yes | Yes |
| 2 | Michael Capobianco ("Capobianco") | Yes | Yes | Yes |
| 3 | Paul Grindstaff ("Grindstaff") | Yes | Yes | Yes |
| 4 | Randall "Randy" Toca ("Toca") | Yes | Yes | Yes |
| 5 | Douglas Friedman ("Friedman") | Yes | Yes | Yes |
| 6 | Jennifer Giessner ("Giessner") | Yes | Yes | Yes |
| 7 | Kim Von Readen ("Von Readen") | Yes | Yes | No |
| 8 | Charles "Charlie" Mora ("Mora") | Yes | Yes | No |
| 9 | Irma Escandon ("Escandon") | Yes | Yes | No |
| 10 | Chiropractic Strategies Group, Inc. ("CSG") | Yes | Yes | Yes |
| 11 | Media Placement Services, Inc. ("MPS") | Yes | Yes | Yes |
| 12 | Dove Point Chiropractic Clinic, Inc. | Yes | Yes | No |
| 13 | Brownsville Chiropractic Clinic, Inc. ("Mesquite Chiropractic") | Yes | Yes | No |
| 14 | El Paso Chiropractic Clinic, LLC ("Eastwood Chiropractic and Central Chiropractic") | Yes | Yes | No |
| 15 | WTC Chiropractic Clinic, LLC ("Weslaco Chiropractic") | Yes | Yes | No |
| 16 | Harlingen Chiropractic Clinic, Inc. | Yes | Yes | No |
| 17 | Wolfin Chiropractic Clinic, LLC ("Washington Street Chiropractic") | Yes | Yes | No |
| 18 | 11th Street Chiropractic Clinic, LLC | Yes | Yes | No |
| 19 | Mainland Chiropractic Clinic, LLC | Yes | Yes | No |
| 20 | Bergstrom Chiropractic Clinic, Inc. ("Ben White Chiropractic") | Yes | Yes | No |

| # | Name | | | |
|---|------|---|---|---|
| 21 | Laredo Chiropractic Clinic, LLC ("Rio Grande Chiropractic") | Yes | | No |
| 22 | SA Chiropractic Clinic, LLC ("Leon Valley Chiropractic") | Yes | | No |
| 23 | N. Carrier Chiropractic Clinic, Inc. ("Grand Prairie Chiropractic") | Yes | | No |
| 24 | Buckner 30 Chiropractic Clinic, Inc. | Yes | Yes | No |
| 25 | Hampton Chiropractic Clinic, Inc. | Yes | Yes | No |
| 26 | Haltom City Chiropractic Clinic, Inc. | Yes | Yes | No |
| 27 | Congressional Chiropractic Health Center, Inc. ("Old Town Chiropractic") | Yes | Yes | Yes |
| 28 | Akron Square Chiropractic, Inc. (including "Arlington Chiropractic") | Yes | Yes | Yes |
| 29 | East Broad Chiropractic, Inc. | Yes | Yes | Yes |
| 30 | Dayton Chiropractic, Inc. ("Northside Chiropractic") | Yes | Yes | Yes |
| 31 | Shaker Square Chiropractic, Inc. | Yes | Yes | Yes |
| 32 | Shoreway Chiropractic, LLC | Yes | Yes | Yes |
| 33 | Vernon Place Chiropractic Health Center, Inc. | Yes | Yes | Yes |
| 34 | West Broad Chiropractic, Inc. (sometimes called "Westgate Family Health") | Yes | Yes | Yes |
| 35 | West Tusc Chiropractic, LLC | Yes | Yes | Yes |
| 36 | Youngstown Chiropractic, Inc. | Yes | Yes | Yes |
| 37 | American Chiropractic, Inc. | Yes | Yes | Yes |
| 38 | Pearl Road Chiropractic, Inc. | Yes | Yes | Yes |
| 39 | Mobile Spine & Rehab Center on the Loop, Inc. | Yes | Yes | No |
| 40 | Five Points Chiropractic, Inc. | Yes | Yes | No |

## Question No. 4: Federal and Ohio RICO Act Damages

| File No. | Answer in dollars and cents, or zero |
|---|---|
| 4 | $2006.00 |
| 5 | $2430.00 |
| 9 | $2410.00 |
| 10 | $3208.00 |
| 12 | $2616.00 |
| 14 | $2394.00 |
| 15 | $2300.00 $000 |
| 16 | $2160.00 |
| 17 | $1325.00 |
| 18 | $20850.00 |
| 19 | $3295.00 |
| 21 | $1968.00 |
| 22 | $2031.00 |
| 23 | $2302.00 |
| 24 | $4249.00 |
| 25 | $2825.00 |
| 26 | -0- $6.00 $0.00 |
| 27 | -0- $0.00 |
| 28 | $2305.00 |
| 29 | $3138.00 |
| 30 | -0- $0.00 |
| 31 | $2071.00 |
| 32 | $3374.00 |
| 33 | $3027.00 |
| 34 | $3007.00 |
| 35 | $3108.00 |
| 36 | $3121.00 |
| 38 | $2939.00 |

| File No. | Answer in dollars and cents, or zero |
|---|---|
| 39 | $3052.00 |
| 40 | $2574.00 |
| 41 | $2470.00 |
| 42 | $2607.00 |
| 43 | -0- $0.00 |
| 44 | $2607.00 |
| 45 | $3054.00 |
| 50 | $3094.00 |
| 51 | $2085.00 |
| 52 | $2899.00 |
| 53 | $2169.00 |
| 54 | $2942.00 |
| 55 | $2805.00 |
| 56 | $3084.00 |
| 57 | $3692.00 |
| 58 | -0- $0.00 |
| 59 | $2108.00 |
| 60 | $1818.00 |
| 61 | $3569.00 |
| 62 | $2632.00 |
| 63 | -0- $0.00 |
| 64 | $400.00 |
| 65 | $2486.00 |
| 66 | $2811.00 |
| 67 | $1705.00 |
| 68 | $2275.00 |
| 69 | $1795.00 |
| 70 | $3074.00 |
| 71 | $2287.00 |
| 72 | $2968.00 |

| File No. | Answer in dollars and cents, or zero |
|---|---|
| 73 | $3037.00 |
| 74 | $3368.00 |
| 75 | $2108.00 |
| 76 | $795.00 |
| 77 | -0- $0.00 |
| 78 | $2599.00 |
| 80 | $3410.00 |
| 81 | $1620.00 |
| 82 | $3326.00 |
| 83 | $3367.00 |
| 84 | $3668.00 |
| 85 | $2588.00 |
| 86 | $3483.00 |
| 87 | $1912.00 |
| 89 | $2470.00 |
| 90 | $1141.00 |
| 91 | $3456.00 |
| 92 | $2444.00 |
| 94 | $2245.00 |
| 95 | $2230.00 |
| 96 | $3206.00 |
| 97 | -0- $0.00 |
| 98 | -0- $0.00 |
| 99 | $3450.00 |
| 100 | $3441.00 |
| 102 | $2775.00 |
| 103 | $3506.00 |
| 104 | -0- |
| 105 | $3240.00 |

| File No. | Answer in dollars and cents, or zero |
|---|---|
| 106 | $0.00 |
| 107 | $0.00 |
| 108 | $0.00 |
| 109 | $0.00 |
| 110 | $0.00 |
| 111 | $3485.00 |
| 112 | $2733.00 |
| 113 | $2418.00 |
| 114 | $0.00 |
| 115 | $2558.00 |
| 116 | $3075.00 |
| 117 | $2866.00 |
| 118 | $1779.00 |
| 120 | $1144.00 |
| 121 | $0.00 |
| 123 | $2470.00 |
| 124 | $0.00 |
| 125 | $0.00 |
| 126 | $2760.00 |
| 128 | $1860.00 |
| 129 | $0.00 |
| 130 | $2418.00 |
| 131 | $1880.00 |
| 132 | $2103.00 |
| 133 | $2844.00 |
| 134 | $1760.00 |
| 135 | $1955.00 |
| 136 | $0.00 |
| 137 | $3287.00 |
| 138 | $2730.00 |

| File No. | Answer in dollars and cents, or zero |
|---|---|
| 139 | $1945²⁶ |
| 140 | $1018²⁶ |
| 141 | $0.00 |
| 142 | $2227²⁶ |
| 143 | $1602²⁶ |
| 144 | $3667²⁶ |
| 145 | $2960²⁶ |
| 146 | $3118²⁶ |
| 147 | $2445²⁶ |
| 148 | $2171²⁶ |
| 149 | $0.00 |
| 150 | $2530²⁶ |
| 151 | $1855²⁶ |
| 152 | $319²⁶ |
| 153 | $2163²⁶ |
| 154 | $3653²⁶ |
| 155 | $3042²⁶ |
| 156 | $0.00 |
| 157 | $0.00 |
| 158 | $2617²⁶ |
| 159 | $2158²⁶ |
| 160 | $0.00 |
| 163 | $0.00 |
| 164 | $0.00 |
| 167 | $0.00 |
| 168 | $0.00 |
| 169 | $1434²⁶ |
| 170 | $1104²⁶ |
| 171 | $0.00 |
| 172 | $5604²⁶ |

| File No. | Answer in dollars and cents, or zero |
|---|---|
| 173 | $0.00 |
| 174 | $2251.00 |
| 175 | $2717.00 |
| 179 | $2331.00 |
| 180 | $2100.00 |
| 181 | $0.00 |
| 182 | $0.00 |
| 185 | $0.00 |
| 189 | $1895.00 |
| 193 | $1615.00 |
| 194 | $181²⁶ |
| 195 | $0.00 |
| 202 | $2115²⁶ |
| 203 | $1985²⁶ |
| 204 | $1985²⁶ |
| 205 | $2135²⁶ |
| 206 | $0.00 |
| 207 | $1743.00 |
| 210 | $0.00 |
| 211 | $0.00 |
| 212 | $2188²⁶ |
| 213 | $1412²⁶ |
| 214 | $1457²⁶ |
| 216 | $425²⁶ |
| 217 | $2475²⁶ |
| 218 | $3058²⁶ |
| 219 | $1222²⁶ |
| 220 | $2310²⁶ |
| 221 | $0.00 |
| 223 | $2122²⁶ |

| File No. | Answer in dollars and cents, or zero |
|---|---|
| 224 | $0.00 |
| 225 | $65-$33600 (54) |
| 226 | $6.00 |
| 227 | $4000 $2260 354 |
| 228 | $1433.21 |
| 229 | $3185 ²² |
| 230 | $0.00 |
| 231 | $0.00 |
| 233 | $1870 ²² |
| 234 | $2478 ²² |
| 235 | $2148 ²² |
| 236 | $0.00 |
| 238 | $0.00 |
| 239 | $0.00 |
| 240 | $6.00 |
| 241 | $0.00 |
| 242 | $0.00 |
| 243 | $0.00 |
| 244 | $2042.00 |
| 245 | $1690.00 |
| 249 | $0.00 |
| 250 | $0.00 |
| 252 | $1668.00 |
| 253 | $1978.00 |
| 254 | $1962.00 |
| 255 | $1962.00 |
| 256 | $2667.00 |
| 257 | $1843.00 |
| 258 | $2146.00 |
| 259 | $0.00 |

| File No. | Answer in dollars and cents, or zero |
|---|---|
| 260 | $1325 ²² |
| 261 | $2608 ²² |
| 262 | $2781 ²² |
| 263 | $2572 ²² |
| 264 | $2245 ⁰⁰ |
| 265 | $2785 ²² |
| 266 | $3255 ²² |
| 267 | $2605 ⁰⁰ |
| 268 | $0.00 |
| 269 | $365 ²² |
| 270 | $2522 ²² |
| 271 | $2413 ²² |
| 272 | $1062 ²² |
| 273 | $1934 ²² |
| 274 | $0.00 |
| 275 | $1948.00 |
| 276 | $0.00 |
| 277 | $2245 ²² |
| 280 | $3805 ²² |
| 281 | $1467 ²² |
| 282 | $1349 ²² |
| 283 | $1487 ²² |
| 284 | $1487 ²² |
| 285 | $0.00 |
| 286 | $2183 ²² |
| 287 | $6.00 |
| 288 | $2178.00 |
| 289 | $1195.00 |
| 290 | $0.00 |
| 291 | $2169 ²² |

| File No. | Answer in dollars and cents, or zero |
|---|---|
| 292 | $2753.04 |
| 293 | $0.00 |
| 294 | $0.00 |
| 295 | $3438 $3038.44 4CF |
| 296 | $0.00 |
| 297 | $2065.04 |
| 298 | $2265.04 |
| 299 | $2050.04 |
| 300 | $1208.04 |
| 301 | $2335.04 |
| 302 | $2421.04 |
| 303 | $2427.04 |
| 304 | — |
| 305 | $1961.04 |
| 306 | $0.00 |
| 307 | $1960.00 |
| 308 | $2065.04 |
| 309 | $2520.04 |
| 310 | $0.00 |
| 311 | $0.00 |
| 312 | $2150.00 |
| 313 | $1338.00 |
| 314 | $3285.04 |
| 315 | $2086.04 |
| 316 | $2326.04 |
| 317 | $3810.04 |
| 318 | $3001.04 |
| 319 | $3406.04 |
| 320 | $0.00 |
| 321 | $0.00 |
| 322 | $0.00 |

| File No. | Answer in dollars and cents, or zero |
|---|---|
| 323 | $2440.04 |
| 324 | $0.00 |
| 325 | $0.00 |
| 326 | $2650.04 |
| 328 | $2485.04 |
| 329 | $1965.04 |
| 330 | $1774.04 |
| 331 | $1734.04 |
| 332 | $745.04 |
| 333 | $0.00 |
| 334 | $2772.04 |
| 335 | $3060.04 |
| 336 | $1820.04 |
| 337 | $1006.04 |
| 338 | $1341.04 |
| 339 | $1870.04 |
| 340 | $0.00 |
| 341 | $3493.04 |
| 342 | $4383.04 |
| 343 | $0.00 |
| 344 | $0.00 |
| 345 | $2317.04 |
| 346 | $1885.04 |
| 347 | $0.00 |
| 348 | $3560.04 |
| 349 | $1769.04 |
| 350 | $2658.04 |
| 353 | $2562.04 |
| 354 | $775.04 |
| 355 | $2480.04 |

| File No. | Answer in dollars and cents, or zero |
|---|---|
| 356 | $185 ² |
| 357 | $290 ² |
| 358 | $2845 ² |
| 359 | $2827 ² |
| 360 | $1349 ² |
| 361 | $0.00 |
| 362 | $1050 ² |
| 363 | $0.00 |
| 364 | $0.00 |
| 366 | $3002 ² |
| 368 | $0.00 |
| 369 | $42.43 ² |
| 370 | $0.00 |
| 372 | $0.00 |
| 373 | $8775.02 |
| 374 | $8527.00 |
| 375 | $0.00 |
| 376 | $0.00 |
| 377 | $2450 ⁰⁰ |
| 378 | $3375 ² |
| 379 | $0.00 |
| 380 | $0.00 |
| 381 | $0.00 |
| 382 | $0.02 |
| 383 | $3180 ² |
| 384 | $0.00 |
| 385 | $241 ² |
| 386 | $2042 ² |
| 387 | $0.00 |
| 388 | $2514 ² |

| File No. | Answer in dollars and cents, or zero |
|---|---|
| 389 | $6.00 |
| 390 | $2934 ² |
| 391 | $2591 ² |
| 392 | $0.00 |
| 395 | $0.00 |
| 396 | $0.00 |
| 397 | $0.00 |
| 399 | $0.00 |
| 400 | $0.00 |
| 401 | $0.00 |
| 402 | $0.00 |
| 403 | $0.00 |
| 404 | $0.00 |
| 405 | $0.00 |
| 406 | $2520 ² |
| 407 | $0.00 |
| 412 | $0.00 |
| 414 | $2674 ² |
| 415 | $3332 ² |
| 416 | $1024 ² |
| 419 | $6.00 |
| 420 | $30702 ² |
| 421 | $2358 ⁰⁰ |
| 422 | $2613 ² |
| 423 | $2798 ² |
| 424 | $6.00 |
| 426 | $0.00 |
| 427 | $2467 ² |
| 428 | $2116 ² |
| 430 | $0.00 |

| File No. | Answer in dollars and cents, or zero |
|---|---|
| 435 | $6.00 |
| 436 | $0.00 |
| 437 | $1294 |
| 438 | $0.00 |
| 439 | $0.00 |
| 440 | $0.00 |
| 443 | $2118 |
| 444 | $2433 |
| 445 | $1883 |
| 447 | $1658 |
| 448 | $0.00 |
| 449 | $0.00 |
| 450 | $1126 |
| 451 | $0.00 |
| 452 | $2553 |
| 453 | $0.00 |
| 454 | $0.00 |
| 455 | $0.00 |
| 456 | $0.00 |
| 457 | $1446 |
| 458 | $1935 |
| 459 | $1285 |
| 460 | $1220 |
| 461 | $1545 |
| 462 | $2161 |
| 463 | $1728 |
| 464 | $1628 |
| 465 | $2478 |
| 466 | $6.00 |
| 475 | $1713.02 |

| File No. | Answer in dollars and cents, or zero |
|---|---|
| 476 | $6.00 |
| 477 | $1217 |
| 478 | $2845 |
| 479 | $3240 |
| 480 | $2404 |
| 481 | $2974 |
| 482 | $3179 |
| 483 | $3169 |
| 484 | $1731 |
| 485 | $3385 |
| 486 | $6.00 |
| 487 | $4623 |
| 488 | $3504 |
| 489 | $3165 |
| 490 | $3725 |
| 492 | $3316 |
| 493 | $2510 |
| 494 | $3126 |
| 495 | $3150 |
| 496 | $3330 |
| 497 | $3370 |
| 498 | $3675 |
| 499 | $3312 |
| 500 | $0.00 |
| 501 | $0.00 |
| 502 | $2540 |
| 504 | $3525 |
| 505 | $0.00 |
| 506 | $3365 |
| 507 | $0.00 |

| File No. | Answer in dollars and cents, or zero |
|---|---|
| 508 | $3265.00 |
| 509 | $3306.00 |
| 511 | $0.00 |
| 512 | $3794.00 |
| 514 | $2121.00 |
| 515 | $3717.00 |
| 521 | $1273.00 |
| 522 | $0.00 |
| 523 | $0.00 |
| 524 | $815.00 |
| 525 | $786.00 |
| 526 | $1160.00 |
| 527 | $0.00 |
| 531 | $1893.00 |
| 533 | $1060.00 |
| 534 | $0.00 |
| 535 | $715.00 |
| 536 | $0.00 |
| 537 | $0.00 |
| 538 | $0.00 |
| 539 | $2417.00 |
| 540 | $2583.00 |
| 541 | $0.00 |
| 542 | $1891.00 |
| 544 | $3820.00 |
| 545 | $2600.00 |
| 546 | $1126.00 |
| 548 | $0.00 |
| 549 | $800.00 |
| 550 | $770.00 $8852 |

| File No. | Answer in dollars and cents, or zero |
|---|---|
| 551 | $1324.00 |
| 552 | $4435.00 |
| 553 | $2519.00 |
| 554 | $0.00 |
| 555 | $2356.00 |
| 556 | $0.00 |
| 557 | $1070.00 |
| 558 | $2750.00 |
| 559 | $3920.00 |
| 560 | $3581.00 |
| 562 | $2650.00 |
| 563 | $3170.00 |
| 564 | $3188.00 |
| 565 | $3474.00 |
| 566 | $1155.00 |
| 567 | $4006.00 |
| 568 | $3000.00 |
| 569 | $4390.00 |
| 570 | $452.00 |
| 571 | $2096.00 |
| 572 | $1766.00 |
| 573 | $2824.00 |
| 574 | $3156.00 |
| 575 | $3223.00 |
| 578 | $3494.00 |
| 579 | $0.00 |
| 580 | $445.00 |
| 581 | $2564.00 |
| 582 | $1598.00 |
| 583 | $1231.00 |

Page 10 of 51

| File No. | Answer in dollars and cents, or zero |
|---|---|
| 584 | $1,713²⁰ |
| 585 | $0.00 |
| 586 | $1134²⁰ |
| 587 | $2688²⁰ |
| 589 | $2483²⁰ |
| 590 | $0.00 |
| 591 | $3650²⁰ |
| 592 | $3290²⁰ |
| 593 | $3260²⁰ |
| 594 | $2778²⁰ |
| 595 | $2221²⁰ |
| 597 | $1785²⁰ |
| 598 | $0.00 |
| 599 | $3048²⁰ |
| 600 | $860²⁰ |
| 602 | $2459²⁰ |
| 604 | $1817²⁰ |
| 605 | $2245²⁰ |
| 606 | $4417²⁰ |
| 607 | $2860²⁰ |
| 608 | $2655²⁰ |
| 610 | $2045²⁰ |
| 611 | $1126²⁰ |
| 612 | $2260²⁰ |
| 613 | $2104²⁰ |
| 614 | $0.00 |
| 615 | $2088²⁰ |
| 617 | $2728²⁰ |
| 618 | $2458²⁰ |
| 619 | $1519²⁰ |

| File No. | Answer in dollars and cents, or zero |
|---|---|
| 621 | $2012²⁰ |
| 624 | $0.00 |
| 625 | $3334²⁰ |
| 626 | $1514²⁰ |
| 627 | $0.00 |
| 628 | $3640²⁰ |
| 629 | $2544²⁰ |
| 630 | $0.00 |
| 635 | $0.00 |
| 639 | $0.00 |
| 640 | $0.00 |
| 641 | $2383²⁰ |
| 642 | $3725²⁰ |
| 643 | $0.00 |
| 644 | $1284²⁰ |
| 645 | $3745²⁰ |
| 646 | $1565²⁰ |
| 647 | $0.00 |
| 670 | $0.00 |
| 671 | $0.00 |
| 672 | $0.00 |
| 673 | $0.00 |
| 674 | $3643²⁰ |
| 675 | $3312²⁰ |
| 676 | $0.00 |
| 677 | $3437²⁰ |
| 678 | $2600²⁰ |
| 679 | $0.00 |
| 680 | $0.00 |
| 681 | $0.00 |

| File No. | Answer in dollars and cents, or zero |
|---|---|
| 682 | $2101 |
| 683 | $2402 |
| 684 | $0.00 |
| 689 | $3286 |
| 690 | $3126 |
| 691 | $3783 |
| 692 | $1952 |
| 693 | $1863 |
| 694 | $3345 |
| 695 | $3356 |
| 696 | $3672 |

| File No. | Answer in dollars and cents, or zero |
|---|---|
| 697 | $2579 |
| 698 | $3344 |
| 699 | $3587 |
| 700 | $1000 |
| 701 | $3720 |
| 702 | $2959 |
| 703 | $0.00 |

## ATTACHMENT 2

### FRAUD

| List of Defendants: | QUESTION 5 Answer "yes" or "no" | QUESTION 6 Answer "yes" or "no" |
|---|---|---|
| 1  Kent Plambeck | Yes | Yes |
| 2  Michael Capobianco | Yes | Yes |
| 3  Paul Grindstaff | Yes | Yes |
| 4  Randall "Randy" Toca | Yes | Yes |
| 5  Douglas Friedman | Yes | Yes |
| 6  Jennifer Giessner | Yes | Yes |
| 7  Kim Von Readen | Yes | Yes |
| 8  Charles "Charlie" Mora | Yes | Yes |
| 9  Irma Escandon | No | Yes |
| 10  Chiropractic Strategies Group, Inc. | Yes | No Yes Jdd |
| 11  Media Placement Services, Inc. | Yes | Yes |
| 12  Dove Point Chiropractic Clinic, Inc. | Yes | Yes |
| 13  Brownsville Chiropractic Clinic, Inc. ("Mesquite Chiropractic") | Yes | Yes |
| 14  El Paso Chiropractic Clinic, LLC ("Eastwood Chiropractic and Central Chiropractic") | Yes | Yes |
| 15  WTC Chiropractic Clinic, LLC ("Weslaco Chiropractic") | Yes | Yes |
| 16  Harlingen Chiropractic Clinic, Inc. | Yes | Yes |
| 17  Wolfin Chiropractic Clinic, LLC ("Washington Street Chiropractic") | | |
| 18  11th Street Chiropractic Clinic, LLC | Yes | Yes |
| 19  Mainland Chiropractic Clinic, LLC | Yes | Yes |
| 20  Bergstrom Chiropractic Clinic, Inc. ("Ben White Chiropractic") | Yes | Yes |

| List of Defendants: | | QUESTION 5 Answer "yes" or "no" | QUESTION 6 Answer "yes" or "no" |
|---|---|---|---|
| 21 | Laredo Chiropractic Clinic, LLC ("Rio Grande Chiropractic") | Yes | Yes |
| 22 | SA Chiropractic Clinic, LLC ("Leon Valley Chiropractic") | Yes | Yes |
| 23 | N. Carrier Chiropractic Clinic, Inc. ("Grand Prairie Chiropractic") | Yes | Yes |
| 24 | Buckner 30 Chiropractic Clinic, Inc. | Yes | Yes |
| 25 | Hampton Chiropractic Clinic, Inc. | Yes | Yes |
| 26 | Haltom City Chiropractic Clinic, Inc. | Yes | Yes |
| 27 | Congressional Chiropractic Health Center, Inc. ("Old Town Chiropractic") | Yes | Yes |
| 28 | Akron Square Chiropractic, Inc. (including "Arlington Chiropractic") | Yes | Yes |
| 29 | East Broad Chiropractic, Inc. | Yes | Yes |
| 30 | Dayton Chiropractic, Inc. ("Northside Chiropractic") | Yes | Yes |
| 31 | Shaker Square Chiropractic, Inc. | Yes | Yes |
| 32 | Shoreway Chiropractic, LLC | Yes | Yes |
| 33 | Vernon Place Chiropractic Health Center, Inc. | Yes | Yes |
| 34 | West Broad Chiropractic, Inc. (sometimes called "Westgate Family Health") | Yes | Yes |
| 35 | West Tusc Chiropractic, LLC | Yes | Yes |
| 36 | Youngstown Chiropractic, Inc. | Yes | Yes |
| 37 | American Chiropractic, Inc. | Yes | Yes |
| 38 | Pearl Road Chiropractic, Inc. | Yes | Yes |
| 39 | Mobile Spine & Rehab Center on the Loop, Inc. | Yes | Yes |
| 40 | Five Points Chiropractic, Inc. | Yes | Yes |

# QUESTION 7: FRAUD DAMAGES

Answer as to each of the following Defendants.

The following patients had services performed in Texas.

| Claim File No. | Plambeck | Capobianco | Grindstaff | Toca | Friedman | Giessner | Readen | Mora | Escandon | CSG | MPS | Treating Clinic |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 | O | O | O | O | O | O | O | O | O | O | O | O |
| 5 | O | O | O | O | | | | | | | | |
| 9 | O | O | | | | | | | | | | |
| 10 | O | O | | | | | | | | | | |
| 12 | O | O | | | | | | | | | | |
| 14 | O | O | | | | | | | | | | |
| 15 | O | O | | | | | | | | | | |
| 16 | O | O | O | O | | | | | | | | |
| 17 | | | O | | | | | | | | | |
| 18 | | | | | | | | | | | | |
| 19 | | | | | | | | | | | | |
| 21 | | | | | | | | | | | | |
| 22 | | | | | | | | | | | | |
| 23 | | | | | | | | | | | | |
| 24 | | | | | | | | | | | | |
| 25 | | | | | | | | | | | | |
| 26 | | | | | | | | | | | | |
| 27 | | | | | | | | | | | | |
| 28 | | | | | | | | | | | | |
| 29 | | | | | | | | | | | | |
| 30 | | | | | | | | | | | | |
| 31 | | | | | | | | | | | | |
| 32 | | | | | | | | | | | | |
| 33 | | | | | | | | | | | | |



| Claim File No. | Plambeck | Capobianco | Grindstaff | Toca | Friedman | Giessner | Readen | Mora | Escandon | CSG | MPS | Treating Clinic |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 99 | | | | | | | | | | | | |
| 98 | | | | | | | | | | | | |
| 97 | | | | | | | | | | | | |
| 96 | | | | | | | | | | | | |
| 95 | | | | | | | | | | | | |
| 94 | | | | | | | | | | | | |
| 92 | | | | | | | | | | | | |
| 91 | | | | | | | | | | | | |
| 90 | | | | | | | | | | | | |
| 89 | | | | | | | | | | | | |
| 87 | | | | | | | | | | | | |
| 86 | | | | | | | | | | | | |
| 85 | | | | | | | | | | | | |
| 84 | | | | | | | | | | | | |
| 83 | | | | | | | | | | | | |
| 82 | | | | | | | | | | | | |
| 81 | | | | | | | | | | | | |
| 80 | | | | | | | | | | | | |
| 78 | | | | | | | | | | | | |
| 77 | | | | | | | | | | | | |
| 76 | | | | | | | | | | | | |
| 75 | | | | | | | | | | | | |
| 74 | | | | | | | | | | | | |
| 73 | | | | | | | | | | | | |
| 72 | | | | | | | | | | | | |
| 71 | | | | | | | | | | | | |
| 70 | | | | | | | | | | | | |
| 69 | | | | | | | | | | | | |
| 68 | | | | | | | | | | | | |















| Claim File No. | Plambeck | Capobianco | Grindstaff | Toca | Friedman | Giessner | Readen | Mora | Escandon | CSG | MPS | Treating Clinic |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 312 | | | | | | | | | | | | |
| 313 | | | | | | | | | | | | |
| 314 | | | | | | | | | | | | |
| 315 | | | | | | | | | | | | |
| 316 | | | | | | | | | | | | |
| 317 | | | | | | | | | | | | |
| 318 | | | | | | | | | | | | |
| 319 | | | | | | | | | | | | |
| 320 | | | | | | | | | | | | |
| 321 | | | | | | | | | | | | |
| 322 | | | | | | | | | | | | |
| 323 | | | | | | | | | | | | |
| 324 | | | | | | | | | | | | |
| 325 | | | | | | | | | | | | |
| 326 | | | | | | | | | | | | |
| 328 | | | | | | | | | | | | |
| 329 | | | | | | | | | | | | |
| 330 | | | | | | | | | | | | |
| 331 | | | | | | | | | | | | |
| 332 | | | | | | | | | | | | |
| 333 | | | | | | | | | | | | |
| 334 | | | | | | | | | | | | |
| 335 | | | | | | | | | | | | |
| 336 | | | | | | | | | | | | |
| 337 | | | | | | | | | | | | |
| 338 | | | | | | | | | | | | |
| 339 | | | | | | | | | | | | |
| 340 | | | | | | | | | | | | |
| 341 | | | | | | | | | | | | |







The following patients had services performed in Ohio.



| File No. | Plambeck | Capobianco | Toca | Friedman | Giessner | CSG | MPS | Treating Clinic |
|---|---|---|---|---|---|---|---|---|
| 484 | | | | | | | | |
| 485 | | | | | | | | |
| 486 | | | | | | | | |
| 487 | | | | | | | | |
| 488 | | | | | | | | |
| 489 | | | | | | | | |
| 490 | | | | | | | | |
| 492 | | | | | | | | |
| 493 | | | | | | | | |
| 494 | | | | | | | | |
| 495 | | | | | | | | |
| 496 | | | | | | | | |
| 497 | | | | | | | | |
| 498 | | | | | | | | |
| 499 | | | | | | | | |
| 500 | | | | | | | | |
| 501 | | | | | | | | |
| 502 | | | | | | | | |
| 504 | | | | | | | | |
| 505 | | | | | | | | |
| 506 | | | | | | | | |
| 507 | | | | | | | | |
| 508 | | | | | | | | |
| 509 | | | | | | | | |
| 511 | | | | | | | | |
| 512 | | | | | | | | |
| 514 | | | | | | | | |
| 515 | | | | | | | | |
| 521 | | | | | | | | |





| File No. | Plambeck | Capobianco | Toca | Friedman | Giessner | CSG | MPS | Treating Clinic |
|---|---|---|---|---|---|---|---|---|
| 557 | | | | | | | | |
| 558 | | | | | | | | |
| 559 | | | | | | | | |
| 560 | | | | | | | | |
| 562 | | | | | | | | |
| 563 | | | | | | | | |
| 564 | | | | | | | | |
| 565 | | | | | | | | |
| 566 | | | | | | | | |
| 567 | | | | | | | | |
| 568 | | | | | | | | |
| 569 | | | | | | | | |
| 570 | | | | | | | | |
| 571 | | | | | | | | |
| 572 | | | | | | | | |
| 573 | | | | | | | | |
| 574 | | | | | | | | |
| 575 | | | | | | | | |
| 578 | | | | | | | | |
| 579 | | | | | | | | |
| 580 | | | | | | | | |
| 581 | | | | | | | | |
| 582 | | | | | | | | |
| 583 | | | | | | | | |
| 584 | | | | | | | | |
| 585 | | | | | | | | |
| 586 | | | | | | | | |
| 587 | | | | | | | | |
| 589 | | | | | | | | |



The following patients had services performed in Alabama.  Answer as to each of the following Defendants:



| File No. | Plambeck | Capobianco | Toca | Friedman | Giessner | CSG | MPS | Treating Clinic |
|---|---|---|---|---|---|---|---|---|
| 627 | | | | | | | | |
| 628 | | | | | | | | |
| 629 | | | | | | | | |
| 630 | | | | | | | | |
| 635 | | | | | | | | |
| 639 | | | | | | | | |
| 640 | | | | | | | | |
| 641 | | | | | | | | |
| 642 | | | | | | | | |
| 643 | | | | | | | | |
| 644 | | | | | | | | |
| 645 | | | | | | | | |
| 646 | | | | | | | | |
| 647 | | | | | | | | |

| File No. | Plambeck | Friedman | Giessner | CSG | MPS | Treating Clinic |
|---|---|---|---|---|---|---|
| 670 | | | | | | |
| 671 | | | | | | |
| 672 | | | | | | |
| 673 | | | | | | |
| 674 | | | | | | |
| 675 | | | | | | |
| 676 | | | | | | |
| 677 | | | | | | |
| 678 | | | | | | |
| 679 | | | | | | |
| 680 | | | | | | |

**ATTACHMENT 3**

Unjust Enrichment

| List of Defendants: | QUESTION 8 |
|---|---|
| 1 | Chiropractic Strategies Group, Inc. | Yes |
| 2 | Dove Point Chiropractic Clinic, Inc. | Yes |
| 3 | Brownsville Chiropractic Clinic, Inc. ("Mesquite Chiropractic") | Yes |
| 4 | El Paso Chiropractic Clinic, LLC ("Eastwood Chiropractic and Central Chiropractic") | Yes |
| 5 | WTC Chiropractic Clinic, LLC ("Weslaco Chiropractic") | Yes |
| 6 | Harlingen Chiropractic Clinic, Inc. | Yes |
| 7 | Wolfin Chiropractic Clinic, LLC ("Washington Street Chiropractic") | Yes |
| 8 | 11th Street Chiropractic Clinic, LLC | Yes |
| 9 | Mainland Chiropractic Clinic, LLC | Yes |
| 10 | Bergstrom Chiropractic Clinic, Inc. (Ben White Chiropractic") | Yes |
| 11 | Laredo Chiropractic Clinic, LLC ("Rio Grande Chiropractic") | Yes |
| 12 | S A Chiropractic Clinic, LLC ("Leon Valley Chiropractic") | Yes |
| 13 | N. Carrier Chiropractic Clinic, Inc. ("Grand Prairie Chiropractic") | Yes |
| 14 | Buckner 30 Chiropractic Clinic, Inc. | Yes |
| 15 | Hampton Chiropractic Clinic, Inc. | Yes |
| 16 | Haltom City Chiropractic Clinic, Inc. | Yes |
| 17 | Congressional Chiropractic Health Center, Inc. ("Old Town Chiropractic") | Yes |
| 18 | Akron Square Chiropractic, Inc. (including | Yes |

| | | |
|---|---|---|
| | "Arlington Chiropractic") | Yes |
| 19 | East Broad Chiropractic, Inc. | Yes |
| 20 | Dayton Chiropractic, Inc. ("Northside Chiropractic") | Yes |
| 21 | Shaker Square Chiropractic, Inc. | Yes |
| 22 | Shoreway Chiropractic, LLC | Yes |
| 23 | Vernon Place Chiropractic Health Center, Inc. | Yes |
| 24 | West Broad Chiropractic, Inc. (sometimes called "Westgate Family Health") | Yes |
| 25 | West Tusc Chiropractic, LLC | Yes |
| 26 | Youngstown Chiropractic, Inc. | Yes |
| 27 | American Chiropractic, Inc. | Yes |
| 28 | Pearl Road Chiropractic, Inc. | Yes |
| 29 | Mobile Spine & Rehab Center on the Loop, Inc. | Yes |
| 30 | Five Points Chiropractic, Inc. | Yes |

## Question 9: Unjust Enrichment Damages

The following patients had services performed in Texas.  Answer as to each of the following Defendants:



| Claim File No. | CSG | Treating Clinic |
|---|---|---|
| 4 | | |
| 5 | | |
| 9 | | |
| 10 | | |
| 12 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |
| 29 | | |
| 30 | | |
| 31 | | |
| 32 | | |
| 33 | | |
| 34 | | |

| Claim File No. | CSG | Treating Clinic |
|---|---|---|
| 35 | | |
| 36 | | |
| 38 | | |
| 39 | | |
| 40 | | |
| 41 | | |
| 42 | | |
| 43 | | |
| 44 | | |
| 45 | | |
| 50 | | |
| 51 | | |
| 52 | | |
| 53 | | |
| 54 | | |
| 55 | | |
| 56 | | |
| 57 | | |
| 58 | | |
| 59 | | |
| 60 | | |
| 61 | | |
| 62 | | |
| 63 | | |
| 64 | | |



| Claim File No. | CSG | Treating Clinic |
|---|---|---|
| 65 | | |
| 66 | | |
| 67 | | |
| 68 | | |
| 69 | | |
| 70 | | |
| 71 | | |
| 72 | | |
| 73 | | |
| 74 | | |
| 75 | | |
| 76 | | |
| 77 | | |
| 78 | | |
| 80 | | |
| 81 | | |
| 82 | | |
| 83 | | |
| 84 | | |
| 85 | | |
| 86 | | |
| 87 | | |
| 89 | | |
| 90 | | |
| 91 | | |
| 92 | | |
| 94 | | |
| 95 | | |
| 96 | | |



| Claim File No. | CSG | Treating Clinic |
|---|---|---|
| 97 | | |
| 98 | | |
| 99 | | |
| 100 | | |
| 102 | | |
| 103 | | |
| 104 | | |
| 105 | | |
| 106 | | |
| 107 | | |
| 108 | | |
| 109 | | |
| 110 | | |
| 111 | | |
| 112 | | |
| 113 | | |
| 114 | | |
| 115 | | |
| 116 | | |
| 117 | | |
| 118 | | |
| 120 | | |
| 121 | | |
| 123 | | |
| 124 | | |
| 125 | | |
| 126 | | |
| 128 | | |
| 129 | | |

















| Claim File No. | CSG | Treating Clinic |
|---|---|---|
| 405 | ○ | ○ |
| 406 | | |
| 407 | | |
| 412 | | |
| 414 | | |
| 415 | | |
| 416 | | |
| 419 | | |
| 420 | | |
| 421 | | |
| 422 | | |
| 423 | | |
| 424 | | |
| 426 | | |
| 427 | | |
| 428 | | |
| 430 | | |
| 435 | | |
| 436 | | |
| 437 | | |
| 438 | | |
| 439 | | |
| 440 | | |
| 443 | | |
| 444 | | |

| Claim File No. | CSG | Treating Clinic |
|---|---|---|
| 445 | ○ | ○ |
| 447 | | |
| 448 | | |
| 449 | | |
| 450 | | |
| 451 | | |
| 452 | | |
| 453 | | |
| 454 | | |
| 455 | | |
| 456 | | |
| 457 | | |
| 458 | | |
| 459 | | |
| 460 | | |
| 461 | | |
| 462 | | |
| 463 | | |
| 464 | | |
| 465 | | |
| 466 | | |
| 475 | | |
| 476 | | |
| 477 | | |

The following patients had services performed in Ohio. Answer as to each of the following Defendants:

| File No. | CSG | Treating Clinic |
|---|---|---|
| 478 | | |
| 479 | | |
| 480 | | |
| 481 | | |
| 482 | | |
| 483 | | |
| 484 | | |
| 485 | | |
| 486 | | |
| 487 | | |
| 488 | | |
| 489 | | |
| 490 | | |
| 492 | | |
| 493 | | |
| 494 | | |
| 495 | | |
| 496 | | |
| 497 | | |
| 498 | | |
| 499 | | |
| 500 | | |
| 501 | | |
| 502 | | |
| 504 | | |
| 505 | | |
| 506 | | |

| File No. | CSG | Treating Clinic |
|---|---|---|
| 507 | | |
| 508 | | |
| 509 | | |
| 511 | | |
| 512 | | |
| 514 | | |
| 515 | | |
| 521 | | |
| 522 | | |
| 523 | | |
| 524 | | |
| 525 | | |
| 526 | | |
| 527 | | |
| 531 | | |
| 533 | | |
| 534 | | |
| 535 | | |
| 536 | | |
| 537 | | |
| 538 | | |
| 539 | | |
| 540 | | |
| 541 | | |
| 542 | | |
| 544 | | |
| 545 | | |

| File No. | CSG | Treating Clinic |
|---|---|---|
| 546 | ○ | ○ |
| 548 | | |
| 549 | | |
| 550 | | |
| 551 | | |
| 552 | | |
| 553 | | |
| 554 | | |
| 555 | | |
| 556 | | |
| 557 | | |
| 558 | | |
| 559 | | |
| 560 | | |
| 562 | | |
| 563 | | |
| 564 | | |
| 565 | | |
| 566 | | |
| 567 | | |
| 568 | | |
| 569 | | |
| 570 | | |
| 571 | | |
| 572 | | |
| 573 | | |
| 574 | | |
| 575 | | |
| 578 | | |
| 579 | | |

| File No. | CSG | Treating Clinic |
|---|---|---|
| 580 | O | O |
| 581 | | |
| 582 | | |
| 583 | | |
| 584 | | |
| 585 | | |
| 586 | | |
| 587 | | |
| 589 | | |
| 590 | | |
| 591 | | |
| 592 | | |
| 593 | | |
| 594 | | |
| 595 | | |
| 597 | | |
| 598 | | |
| 599 | | |
| 600 | | |
| 602 | | |
| 604 | | |
| 605 | | |
| 606 | | |
| 607 | | |
| 608 | | |
| 610 | | |
| 611 | | |
| 612 | | |
| 613 | | |
| 614 | | |

| File No. | CSG | Treating Clinic |
|---|---|---|
| 615 | ◯ | |
| 617 | | ◯ |
| 618 | | |
| 619 | | |
| 621 | | |
| 624 | | |
| 625 | | |
| 626 | | |
| 627 | | |
| 628 | | |
| 629 | | |
| 630 | | |
| 635 | | |
| 639 | | |
| 640 | | |
| 641 | | |
| 642 | | |
| 643 | | |
| 644 | | |
| 645 | | |
| 646 | | |
| 647 | | |

The following patients had services performed in Alabama.  Answer as to each of the following Defendants:

| File No. | CSG | Treating Clinic |
|---|---|---|
| 670 | | |
| 671 | | |
| 672 | | |
| 673 | | |
| 674 | | |
| 675 | | |
| 676 | | |
| 677 | | |
| 678 | | |
| 679 | | |
| 680 | | |
| 681 | | |
| 682 | | |
| 683 | | |
| 684 | | |

| File No. | CSG | Treating Clinic |
|---|---|---|
| 689 | | |
| 690 | | |
| 691 | | |
| 692 | | |
| 693 | | |
| 694 | | |
| 695 | | |
| 696 | | |
| 697 | | |
| 698 | | |
| 699 | | |
| 700 | | |
| 701 | | |
| 702 | | |
| 703 | | |

**ATTACHMENT 4**

Chart of patient (claim) files not to be considered by you for any purpose whatsoever.

| Patient # | Claimant Last Initial | Claimant First Name |
|---|---|---|
| 2 | P. | Amber |
| 3 | R. | Sonia |
| 6 | V. | Patricia |
| 7 | S. | Kenny |
| 8 | A. | Ashlee |
| 11 | D. | Ramona |
| 13 | G. | Enrique |
| 20 | Z. | Carolina |
| 37 | S. | Rosalinda |
| 46 | O. | Jose |
| 47 | O. | Maria |
| 48 | G. | Nancy |
| 49 | G. | Jonathan |
| 79 | A. | Joshua |
| 88 | G. | Angelica |
| 93 | V. | Roberto |
| 101 | C. | Procopio |
| 119 | C. | Alicia |
| 122 | H. | Evelyn |
| 127 | C. | Glendaly |
| 161 | G. | Juan |

| Patient # | Claimant Last Initial | Claimant First Name |
|---|---|---|
| 162 | M. | Evangelina |
| 165 | W. | Amber |
| 166 | Z. | Jaime |
| 176 | E. | Jerry |
| 177 | M. | Leticia |
| 178 | E. | Desiree |
| 183 | G. | Barbara |
| 184 | G. | Samantha |
| 186 | H. | Isidra |
| 187 | G. | Maria |
| 188 | G. | San Juana |
| 190 | R. | Cecilio |
| 191 | R. | Nicole |
| 192 | L. | Laura |
| 196 | G. | Maricela |
| 197 | H. | Beatriz |
| 198 | H. | Odilia |
| 199 | H. | Sandra |
| 200 | Q. | Nydia |
| 201 | C. | Myra |
| 208 | G. | David |
| 209 | A. | Josefina |
| 215 | R. | Rolando |
| 222 | M. | Manuel |

| | | |
|---|---|---|
| 232 | A. | Martha |
| 237 | M. | Carlos |
| 251 | A. | Julissa |
| 302 | B. | Humberto |
| 327 | M. | Jose Manuel |
| 351 | R. | Maria |
| 352 | R. | Edgar |
| 365 | A. | Noemi Morales |
| 367 | R. | Faustino |
| 371 | C. | Pablo |
| 393 | M. | Shai Anne |
| 394 | H. | Julien |
| 398 | L. | Steven |
| 408 | R. | Angel |
| 409 | P. | Maria |
| 410 | P. | Norma |
| 411 | E. | Jose |
| 413 | C. | Felix |
| 417 | C. | Estella |
| 418 | H. | Jorge |
| 425 | D. | Lawrence |
| 429 | S. | Alyssa |
| 431 | B. | Gabriela |
| 432 | F. | Jose |
| 433 | F. | Jorge |
| 434 | F. | Ana Delia |
| 441 | G. | Jessie |
| 442 | G. | Estrella |

| | | |
|---|---|---|
| 467 | O. | Veronica |
| 468 | O. | Adrian |
| 469 | O. | Isaac |
| 471 | H. | Petra |
| 472 | H. | Patricio |
| 473 | K. | Eddie |
| 474 | M. | Emma |
| 491 | C. | Danielle |
| 503 | H. | Randal |
| 510 | W. | Ramona |
| 513 | T. | Kenyatta |
| 516 | M. | James |
| 517 | T. | Clarence |
| 518 | N. | Kathy |
| 519 | F. | Ahmad |
| 520 | S. | Heather |
| 528 | B. | Trina |
| 529 | C. | Jacqueline |
| 530 | F. | David |
| 532 | S. | Foster |
| 543 | L. | Anicia |
| 547 | R. | Keyna |
| 576 | W. | Michael |
| 577 | O. | Christian |
| 588 | D. | Takeyria |
| 596 | W. | Everett F. |
| 601 | C. | Shaunda |
| 620 | G. | Reole |

| | | |
|---|---|---|
| 631 | H. | William |
| 632 | H. | Patricia |
| 633 | S. | Patrick |
| 648 | J. | Denise |
| 649 | T. | Toya |
| 650 | T. | Valerie |
| 651 | M. | Tshawn |
| 652 | M. | Marcus |
| 653 | B. | Angeline |
| 654 | W. | Quinn |
| 655 | M. | Michael |

| | | |
|---|---|---|
| 656 | S. | Debra |
| 657 | C. | Mary |
| 658 | W. | Tracy |
| 665 | A. | Juan |
| 667 | H. | Tissia |
| 668 | F. | Robert |
| 669 | J. | Brittany |
| 685 | B. | Alvea |
| 686 | N. | Doris |
| 687 | M. | Doris |
| 688 | C. | Tommy |