UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | CASE NO. 3:08-CV-388-M |
| § | |
| MICHAEL KENT PLAMBECK, D.C., *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiffs' Motion for Entry of Judgment [Dkt. No. 667]; Plaintiffs' Motion for Attorneys' Fees and Costs [Dkt. No. 673]; Chiropractic Defendants'[1] Post-Trial Motion for Judgment as a Matter of Law [Dkt. No. 675]; and Chiropractic Defendants' Motion for New Trial [Dkt. No. 676]. Plaintiffs' Motion for Entry of Judgment is **GRANTED** as specified herein, Plaintiffs' Motion for Attorneys' Fees and Costs is **GRANTED in part**, Defendants' Motion for Judgment as a Matter of Law is **DENIED** except as specified herein, and Defendants' Motion for New Trial is **DENIED**.[2]

**I.    BACKGROUND**

Plaintiff Allstate Insurance Company and three of its affiliates ("Plaintiffs") filed this action on March 6, 2008, asserting common law fraud, conspiracy to defraud, unjust enrichment,

---

[1] The "Chiropractic Defendants" are those parties as to whom the Court ultimately submitted jury questions from the group of defendants that filed the Chiropractic Defendants' First Amended Answer, [Dkt. No. 143], and are hereinafter referred to as "Defendants."

[2] Consistent with this Order, the Court also **DENIES as moot** Defendants' previously filed Motion for Judgment [Dkt. No. 639] and Motion for Judgment Renewed [Dkt. No. 649].

and violations of the federal and Ohio RICO statutes. Plaintiffs argued at trial that Defendants provided unnecessary and unreasonable chiropractic care to 555 patients involved in motor vehicle accidents, where those patients or the other driver was insured by Plaintiffs and, thus, the chiropractic billings were submitted to Plaintiffs for payment. Plaintiffs claimed that, in the billings, Defendants made fraudulent misrepresentations to them concerning the reasonableness and necessity of care to these patients.

This case was tried to a jury over a period of six weeks. On April 4, 2013, the jury found that all of the Defendants violated Sections 1962(c) and 1962(d) of the federal RICO statute, and that certain Defendants violated the Ohio RICO statute.[3] The jury further found certain Defendants liable on Plaintiffs' fraud and unjust enrichment claims, but awarded Plaintiffs no damages on these claims.[4] Although these parties now move for judgment, none has yet requested preparation of the entire trial record, so the Court does not have the benefit of the trial record in resolving the instant Motions.

## II.    RENEWED RULE 50(B) MOTION[5]

Defendants argue that judgment should be entered in their favor because there is no legally sufficient evidentiary basis to support the jury's findings with respect to Plaintiffs'

---

[3] The jury found that the following Defendants did not violate the Ohio RICO statute: Kim Von Readen, Charles Mora, Irma Escandon, Brownsville Chiropractic Clinic, Inc., El Paso Chiropractic Clinic, LLC, WTC Chiropractic Clinic, LLC, Harlingen Chiropractic Clinic, Inc., Wolfin Chiropractic Clinic, LLC, 11th Street Chiropractic Clinic, LLC, Mainland Chiropractic Clinic, LLC, Bergstrom Chiropractic Clinic, Inc., Laredo Chiropractic Clinic, LLC, SA Chiropractic Clinic, LLC, N. Carrier Chiropractic Clinic, Inc., Buckner 30 Chiropractic Clinic, Inc., Hampton Chiropractic Clinic, Inc., Haltom City Chiropractic Clinic, Mobile Spine & Rehab Center on the Loop, Inc., and Five Points Chiropractic, Inc.

[4] Plaintiffs acknowledged at the hearing held on the parties' post-trial motions that they are not moving for judgment on their fraud or unjust enrichment claims.

[5] Federal Rule of Civil Procedure 50(b) provides that a party may renew a motion for judgment made as a matter of law under Rule 50(a) within 28 days after post-trial entry of judgment. Fed. R. Civ. P. 50(b). The Court has not yet entered judgment on the jury's verdict, but ordered the parties to file their post-trial motions on or before May 3, 2013. [Dkt. No. 668]. Defendants' Motion is, therefore, ripe for resolution.

federal and Ohio RICO claims. "A [motion for judgment as a matter of law] challenges the legal sufficiency of the evidence to support the verdict." *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 195 (5th Cir. 2006).

> Judgment as a matter of law is appropriate with respect to an issue if there is no legally sufficient evidentiary basis for a reasonable jury to find for a party on that issue. This occurs when the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary verdict. In considering a Rule 50 motion, the court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party; the court may not make credibility determinations or weigh the evidence, as those are jury functions. In reviewing the record as a whole, the court must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.

*Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 362 (5th Cir. 2004) (citations, brackets, and internal quotation marks omitted). "A jury verdict must stand unless there is a lack of substantial evidence, in the light most favorable to the successful party, to support the verdict." *Am. Home Assurance Co. v. United Space Alliance, LLC*, 378 F.3d 482, 487 (5th Cir. 2004). Thus, in reviewing the jury's verdict, the question the Court must ask is "whether the jury finding could, with reason, be made upon the evidence before it." *Id.* at 490 (internal citation and quotation marks omitted).

For the following reasons, and except as specified below, the Court concludes that Defendants are not entitled to judgment in their favor.

### A. Federal Racketeer Influenced and Corrupt Organizations Act ("federal RICO")

Section 1962(c) of RICO makes it "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).

"Racketeering activity" is any of the predicate acts defined in Section 1961(1), which includes, among others, mail fraud and wire fraud. 18 U.S.C. § 1961(1). Section 1962(d) imposes liability on persons who conspire to violate Section 1962(c). 18 U.S.C. § 1962(d). Any person injured in his business or property by reason of a violation of section 1962 can bring a civil action. 18 U.S.C. § 1964(c).

Claims under all subsections of Section 1962 require three elements: "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (internal quotation marks and citation omitted). The person engaging in the racketeering activity must be distinct from the enterprise, and the enterprise must be distinct from the series of predicate acts that constitute the racketeering activity. *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000).

### B. Ohio Corrupt Practices Act ("Ohio RICO")

The Ohio Corrupt Practices Act "is adopted directly from the [federal] RICO Act," and "[a]s a result, Ohio courts look to federal case law applying the RICO Act when analyzing claims brought under the [Corrupt Practices Act]." *See Cochran v. VendMasters, Inc.*, No. 4-CV-24, 2006 WL 2709777, at *5 (S.D. Ohio Sept. 20, 2006) (analyzing plaintiff's federal and Ohio state RICO claims together); *State v. Allen,* No. 11AP–1130, 2013 WL 596377, at *1 n.1 (Ohio Ct. App. Feb. 14, 2013) ("The Ohio Corrupt Practices Act was modeled on the federal Racketeer Influenced and Corrupt Organizations Act . . . [and] has been denominated 'Ohio's RICO statute.'") (internal citation omitted). Thus, to establish Defendants' liability under the Ohio RICO statute, Plaintiffs were required at trial to produce sufficient evidence establishing at

least the predicate elements required by federal RICO.[6]  *See supra* at 4.

### C. Plaintiffs demonstrated the existence of an enterprise

The jury found that Plaintiffs proved an association-in-fact enterprise consisting of Michael Kent Plambeck,[7] Douglas Friedman,[8] Randall Toca,[9] Chiropractic Services Group, Inc. ("CSG"),[10] Media Placement Services, Inc. ("MPS"),[11] Professional Management Group, LLC ("PMG"), and Law Office Network, LLC ("LON").[12]  Defendants argue that the evidence does not support this finding.  The Court disagrees.

To demonstrate the existence of an association-in-fact enterprise among these Defendants, Plaintiffs were required to provide evidence of an (1) ongoing organization that

---

[6] The Ohio RICO statute penalizes a person's participation in the affairs of an enterprise through a pattern of "corrupt activity," rather than "racketeering activity," as stated in federal RICO.  *Compare* R.C. § 2923.32 *with* 18 U.S.C. § 1962.  Under Ohio RICO, "corrupt activity" includes the RICO predicate racketeering offenses (*i.e.*, federal mail and wire fraud and the federal statute prohibiting the transport of stolen money), as well as other specified violations of Ohio law.  That Ohio RICO uses the term "corrupt activity," rather than "racketeering activity" does not mean that it substantively departs from RICO.  *See* Jury Charge at 10 [Dkt. No. 658] ("To establish that Defendants have violated section 1962(c), Plaintiffs must prove each of the following four elements for each Defendant by a preponderance of the evidence: (1) That an 'enterprise' existed; (2) That the Defendant was employed by or associated with the alleged enterprise; (3) That the Defendant knowingly and willfully conducted or participated, directly or indirectly, in the conduct of the affairs of the alleged enterprise; and (4) That the Defendant did so knowingly and willfully through a pattern of racketeering activity."); *id.* at 23 ("In order for Plaintiffs to recover under the Ohio Corrupt Practices Act, you must find by a preponderance of the evidence the four elements of section 1962(c) of RICO that I have described for you beginning at page 10 of the Charge.").

[7] At all relevant times, Plambeck was the sole owner of CSG, MPS, and a majority of the clinic entities.

[8] At all relevant times, Friedman was the marketing director of CSG and manager of MPS.

[9] At all relevant times, Randall Toca was the owner of PMG and LON.

[10] Among other things, CSG provided training to the chiropractors who worked at the clinic entities and forwarded clinic records and billing reports to law offices, which then sent to Plaintiffs demand packages on behalf of clinic patients.

[11] MPS was a telemarketing firm that solicited patients for chiropractic treatment at the clinic entities.

[12] PMG and LON managed law offices that were alleged to have submitted demand packages to Plaintiffs on behalf of the chiropractic patients.

(2) exists separate and apart from the pattern of racketeering; and (3) functions as a continuing unit as shown by a hierarchical or consensual decision making structure. *See Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 426-27 (5th Cir. 1987). The enterprise must have a shared purpose, and each member of the enterprise must share this purpose. *Morse v. Commonwealth Land Title Ins. Co.*, No. 12-CV-375, 2013 WL 5372395, at *10 (E.D. Tex. Sept. 24, 2013).

Notwithstanding Defendants' arguments to the contrary, Plaintiffs presented legally sufficient evidence at trial that the members of the enterprise shared a common purpose—*i.e.*, the solicitation, treatment, and legal representation of patients through which the enterprise profited by presentation of claims. This evidence adequately demonstrated that the members were not at cross-purposes or acting independently but were, instead, an interdependent and coordinated association that existed to perpetuate the enterprise and its profitability. A shared "desire to make money" is sufficient to satisfy RICO's common purpose requirement. *United States v. Elliot*, 571 F.2d 880, 898 (5th Cir. 1978).[13] Plaintiffs also presented sufficient evidence that the enterprise had an existence separate and apart from the alleged racketeering activity—*e.g.*, that the enterprise solicited and provided treatment and representation to patients who actually required such treatment. Thus, the enterprise alleged in this case is different from that discussed

---

[13] The Court charged that the alleged enterprise "may have been organized for a legitimate and lawful purpose, or it may have been organized for an unlawful purpose." Jury Charge at 12. This instruction was adopted from Defendants' proposed jury instructions. *See* Defs.' Proposed Jury Instructions at 11 [Dkt. No. 588]. Defendants' argument that the alleged purpose of the enterprise was to unlawfully enrich the enterprise members through the fraudulent presentation of claims appears to conflate the "common purpose" element of the enterprise determination with the question of whether a "person" has conducted or participated in the affairs of an enterprise through a pattern of racketeering (or corrupt) activity. *See also* Pls.' RICO Case Statement at 61-62 [Dkt. No. 114] ("The purpose of the association in fact enterprise was to provide services (management, lobbying, marketing, etc.) to clinics and to law offices representing clinic patients. There is nothing inherently illegal in these activities (singularly or collectively), and the enterprise still serves that function, and not all patients treated at the clinics are part of the fraud scheme.").

by the Fifth Circuit in *Clark v. Douglas*, in that Plaintiffs here did not argue at trial that "[t]he 'enterprise' came into being only for the purpose of engaging in fraudulent activity." No. 06-40364, 2008 WL 58774, at *4-5 (5th Cir. 2008).

Plaintiffs, likewise, presented sufficient evidence that the enterprise functioned as a continuing unit, with a hierarchical or consensual decision-making structure. Decisions in an association-in-fact enterprise "may be made on an ad hoc basis and by any number of methods." *Boyle v. United States*, 556 U.S. 938, 948 (2009). Plaintiffs demonstrated that the enterprise functioned as a continuing unit—without meaningful interruption—at all relevant times, and that it did so through a discernible decision-making structure. Indeed, Plaintiffs introduced testimony and other documentary evidence showing, among other things, that: (1) the enterprise members were tied together geographically; (2) money was transferred between Plambeck/CSG and Randall Toca/PMG/LON; (3) PMG/LON managed law offices and CSG related clinics made coordinated office openings subsequent to meetings among the enterprise members regarding the same; (4) CSG employees had access to PMG/LON client files; (5) Plambeck and Randall Toca determined how to split settlement payments; (6) Plambeck was involved in the settlement of claims; (7) Friedman conferred with and advised Plambeck on new clinic openings; (8) Friedman developed telemarketing scripts used by MPS telemarketers to "convert" individuals into clinic patients by discussing the possibility of hidden injuries; (9) Friedman was the marketing director for CSG and manager of MPS; and (10) employment and termination decisions were coordinated among the various members of the enterprise.

The Court, therefore, cannot conclude that the jury's finding of an enterprise as alleged by Plaintiffs lacked substantial supporting evidence.

**D. Plaintiffs demonstrated RICO causation**

The Court charged the jurors that to find Defendants liable on Plaintiffs' RICO claims, they were required to determine that Plaintiffs' injuries were caused "by reason of" Defendants' RICO violations. Jury Charge at 20-21. The Court further charged that "[i]n order to recover damages, Plaintiffs must demonstrate what portion, if any, of the amounts paid for each of the 555 patients was the direct result of Defendants having bills generated for particular services that were not reasonable or necessary, by reason of violations of federal or Ohio RICO laws." *Id.* at 29.

The Court does not accept Plaintiffs' arguments that *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008), "establish[es] the bright-line rule that plaintiffs asserting RICO claims . . . need not assert or establish their reliance on the fraud." *See Bridgewater v. Double Diamond-Delaware*, No. 9-CV-1758, 2011 WL 1671021, at *11 (N.D. Tex. Apr. 29, 2011) (Boyle, J.). In *Bridgewater*, Judge Boyle held that *Bridge* essentially stands for the proposition "that in most cases, plaintiffs will either have to show third-party reliance or first-party reliance." *Id.* This Court agrees. Plaintiffs cannot demonstrate causation for a RICO violation without demonstrating some type of reliance. *Id.* This issue, however, is academic under the instant facts, because Plaintiffs have demonstrated reliance sufficient to establish causation.

Responding to the Fifth Circuit's decision in *Allstate Ins. Co. v. Receivable Fin. Co., LLC*, 501 F.3d 398, 411 (5th Cir. 2007),[14] Plaintiffs presented the testimony of claims adjusters and/or evaluation consultants who personally worked on 39 of the 555 claims submitted to the jury. These individuals testified as to their reliance on the chiropractors' medical billings submitted in connection with the underlying insurance claims, in deciding what settlement

---

[14] Plaintiffs' counsel in this case also represented Plaintiffs in the *Receivable Finance* case.

amounts to pay. The Court rejects Defendants' argument that this Court should dismiss the testimony of some of these adjusters because they only recommended settlement amounts, though they did not ultimately make the decision as to how much to pay. Those adjusters testified that the ultimate settlement decision was based on their recommendations. *See id.* at 412 (holding that Plaintiffs could have demonstrated reliance by, for instance, presenting the testimony of adjusters who *worked* on the claims).

Plaintiffs also presented at trial reliance testimony from corporate representatives who, although they did not personally work on the underlying claims, spoke to the claims handling practice of Plaintiffs' adjusters, and did so in a manner that was more specific than was the testimony in *Receivable Finance*. This Court does not read *Receivable Finance* to hold that the testimony of Plaintiffs' corporate representatives, who did not directly work on claims, is never to be considered in a reliance analysis, but that it was insufficient where, as there, it was "sparse and unspecific," *id.* at 408, and Plaintiffs did not present testimony of adjusters who worked on the underlying claims. Here, Plaintiffs presented a combination of reliance testimony from adjusters who personally worked on a significant number of the claims submitted to the jury as well as corporate representatives who were familiar with Plaintiffs' claims handling procedures and who provided reliance testimony of a more specific nature than occurred in *Receivable Finance*.

The Court further finds that the Plaintiffs' reliance evidence as to the 39 claims could properly be extrapolated to demonstrate reliance as to the broader universe of claims, particularly when it was supported by the testimony of Plaintiffs' corporate representatives. *See id.* at 411 (noting that Plaintiffs "could have, but did not, introduce the testimony of adjusters (or other similar agent or employee) who in fact worked on some significant number of the 1,800-plus

Page **9** of **17**

claim files at issue, to say that they relied on the medical claims submitted in deciding to settle a claim").[15]

### E. Defendants' remaining arguments do not demonstrate that they are entitled to judgment on Plaintiffs' federal and Ohio RICO claims, except with respect to Defendants Escandon and Von Readen

Defendants further argue that: (1) Plaintiffs did not proffer competent evidence of damages; (2) certain of Plaintiffs' federal RICO claims are barred by the statute of limitations; and (3) alternatively, certain individual Defendants are entitled to judgment in their favor. Except as is specified below, the Court finds that these arguments provide no more of a basis for granting Defendants judgment than do their other arguments. First, Defendants have not convinced the Court that the jury's damages award lacks competent supporting evidence. Second, although Defendants now challenge the timeliness of Plaintiffs' RICO causes of action to the extent that they are based on claims paid or settled before March 6, 2004, Defendants explicitly stated to the Court that they did not want the Court to submit limitations questions to the jury. Had Defendants not waived this issue, the Court would have submitted limitations questions to the jury. The Court does not believe the issue of when Defendants knew, or should have known, of the injuries caused by Defendants' conduct is a legal matter, and the Defendants waived their right to have the jury decide this question. Finally, as to all Defendants except Escandon and Von Readen, the Court concludes, in light of the evidence presented at trial, that the jury's verdict establishing their RICO liability is factually based and legally proper.

The Court reaches a contrary result with respect to Escandon and Von Readen, because it concludes that the jury's verdict as to their liability was not legally sufficient. The Court charged

---

[15] Defendants argue that Ms. Campbell testified that she could not speak to what other adjusters relied on in handling claims. The Court disagrees with this characterization of her testimony. It is the Court's recollection that Ms. Campbell testified that she could *generally* speak to how other adjusters settle claims, although she could not discern the specific thoughts of these other adjusters in evaluating claims.

the jury that to find a Defendant liable under the substantive federal RICO provision, they were required to find that the "Defendant knowingly and willfully *conducted or participated* directly or indirectly in the conduct of the affairs of the enterprise through a pattern of racketeering [or corrupt] activity." Jury Charge at 31-32 (emphasis added).  The Supreme Court has held that in order to satisfy the "conduct or participate" element, a defendant must "participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 177-79, 185 (1993).  Although "the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise . . . *some* part in directing the enterprise's affairs is required." *Id.* at 179.

Plaintiffs did not present at trial legally sufficient evidence establishing that Escandon or Von Readen had a part in directing or otherwise influencing the affairs of the enterprise alleged by Plaintiffs.  Plaintiffs did not show that either of these Defendants were in any position to "direct" the affairs of the enterprise, or that they otherwise held any "position" in the enterprise by which they knowingly participated in actions that facilitated the accomplishment of any racketeering acts.  *See U.S. v. Posada-Rios*, 158 F.3d 832, 856 (5th Cir. 1998).  The Court, therefore, enters judgment in favor of Escandon and Von Readen on Plaintiffs' Section 1962(c) claims.

The Court similarly concludes that Escandon and Von Readen are entitled to judgment in their favor on Plaintiffs' federal RICO conspiracy claims.  Defendants argue both in their pre-verdict and Rule 50(b) Motion that Escandon and Von Readen did not "engage[] in any conspiracy with other defendants." *See* Defs.' Rule 50(a) Mot. at 31-32; Defs.' Post-Trial Mot. for J. at 31-32.  The Court does not read Defendants' pre-verdict argument as having been made

only with respect to Plaintiffs' fraud and unjust enrichment claims, such that Defendants could be said to have waived the right to make this post-verdict argument as to RICO. *See* Pls.' Resp. at 3 (specifically identifying Rule 50(b) arguments that Plaintiffs argued Defendants have waived). In order to demonstrate RICO conspiracy as to Escandon and Von Readen, Plaintiffs were required to show "(1) that two or more people agreed to commit a substantive RICO offense and (2) that [Escandon and Von Readen] knew of and agreed to the overall objective of the RICO offense." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010) (internal citation and quotation marks omitted). They did not do so. Plaintiffs' Section 1962(d) claims against Escandon and Von Readen fail because Plaintiffs did not offer legally sufficient evidence at trial that either of these Defendants had knowledge of any conspiracy and/or agreed to the aim of the RICO offense.

In sum, the Court concludes that Defendants Escandon and Von Readen are entitled to judgment in their favor on Plaintiffs' federal RICO causes of action,[16] whereas the remaining Defendants are not.

### F. Defendants are entitled to judgment that Plaintiffs take nothing on their fraud and unjust enrichment claims

Defendants argue that, because the jury answered "zero" for all damages questions relating to Plaintiffs' fraud and unjust enrichment claims, judgment should be rendered that Plaintiffs take nothing from Defendants on these claims. The Court **GRANTS** Defendants' Motion only to the limited extent that the Court will enter judgment that Plaintiffs take nothing from Defendants on these claims.

---

[16] In compliance with Federal Rule of Civil Procedure 50(c), should this Circuit reverse or vacate the Court's judgment in favor of these Defendants, the Court would grant a new trial for these two Defendants only, as it finds that the jury verdict against them is against the great weight of the evidence.

III.   **DEFENDANTS' MOTION FOR NEW TRIAL**

Defendants alternatively move for a new trial in the event that the Court does not enter judgment in their favor. "New trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great weight of the evidence." *Dawson v. Wal-Mart Stores*, 978 F.2d 205, 208 (5th Cir. 1992). Defendants' arguments raised in support of this Motion are largely the same as those that the Court has now rejected in deciding Defendants' Rule 50(b) Motion.

To the extent that Defendants raise arguments in their Motion for New Trial not considered by the Court on their Rule 50(b) Motion, the Court finds such arguments unavailing. Not only does the Court disagree with Defendants' contention that the verdict was against the great weight of the evidence—except as to Defendants Escandon and Von Readen—but it also disagrees with Defendants' argument that the jury's verdict was inconsistent and not reconcilable, given that the jury awarded Plaintiffs no damages for fraud and unjust enrichment, but did award Plaintiffs damages on their RICO claims. *See, e.g.*, *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 781 (5th Cir. 1986) ("[J]ury responses . . . are inconsistent only if irreconcilable. We have no difficulty reconciling the jury's verdict in the instant case. The jury might well have concluded that Holt would unjustifiably receive a double recovery if damages were awarded under both theories of recovery.").

The Court similarly finds unpersuasive Defendants' argument that a new trial is necessary because Plaintiffs presented to the jury evidence on 126 claims that were ultimately not submitted. Although the jurors heard evidence as to such claims, the Court specifically charged the jurors that it was "improper for [them] to consider any testimony or exhibits about these 126 claims" and that they "must be scrupulous to not consider such evidence for any

purpose." Jury Charge at 9. Defendants conclusorily argue that evidence as to these claims "undoubtedly poisoned the jury's attitude with respect to Defendants generally and the remaining 555 claims specifically," Defs.' Mot. at 7, but provide no evidence in support thereof. The Court has confidence that the jurors followed this Court's instructions and, without more, will not conclude that the jurors in this case impermissibly ignored the Court's directive as to the 126 claims.

## IV. PLAINTIFFS' MOTION FOR JUDGMENT

Plaintiffs move for entry of judgment based on the jury's verdict, pursuant to Federal Rule of Civil Procedure 58. Plaintiffs' Motion is **GRANTED** except to the extent that Plaintiffs: (1) seek to hold the defaulting defendants jointly and severally liable for damages exceeding the trebled amounts of actual damages that the jury found against these defendants;[17] and (2) seek prejudgment interest on their RICO claims, an award of which is a matter solely within this Court's discretion.[18] *See, e.g.*, *Vanderbilt Mortg. & Fin., Inc. v. Flores*, No. C-09-312, 2011 WL 767163, at *3 n.3, 4 (S.D. Tex. Feb. 25, 2011); *La. Power & Light Co. v. United Gas Pipe Line Co.*, 642 F. Supp. 781, 811 (E.D. La. 1986) (refusing prejudgment interest on RICO claim because "multiple damages more than reimburse a plaintiff for any loss he suffers from an unavailability of the funds he seeks to recover.").

---

[17] Plaintiffs could have, but did not, request that the Court submit the same damages questions as to both the defaulting and non-defaulting defendants. Consequently, the Court will not decide as a matter of law that the defaulting defendants are jointly and severally liable on the full amount of damages awarded against the non-defaulting defendants. Plaintiffs requested separate damage findings against the defaulting defendants, and the judgment entered by this Court will reflect this distinction. The Court will, however, hold the defaulting defendants jointly and severally liable for the attorneys' fees awarded.

[18] "[A]side from the question of whether this Court should award prejudgment interest, the Chiropractic Defendants concur with the formulation of the judgment proposed by Plaintiffs." Defs.' Resp. at 4.

V.   **PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**[19]

Plaintiffs seek in their Motion for Attorneys' Fees and Costs, pursuant to Federal Rule of Civil Procedure 54(d), 18 U.S.C. § 1964(c), and Ohio Revised Code § 2923.34, a judgment for $1,903,006.75 in attorneys' fees and $119,162.37 in costs incurred in the prosecution of this action, and $19,531.57 in costs incurred in the successful defense of Defendants' counterclaims.

Determining the proper amount of a fee award and taxable costs is a matter within this Court's discretion. *Kinnison v. City of San Antonio*, No. 8-CV-421, 2011 WL 1399094, at *2 (W.D. Tex. April 12, 2011); *Chambers v. Joseph T. Ryerson & Son, Inc.*, No. 5-CV-1533, 2007 WL 4302738, at *1 (N.D. Tex. Dec. 10, 2007) (Fitzwater, C.J.). Where a party is deemed "prevailing," although he succeeds on only certain of his claims for relief, two questions must be asked. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.*

The Supreme Court counseled:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . . . If on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.

---

[19] Defendants argue that Plaintiffs' Motion is "premature," stating that "[a]lthough the Court issued an order setting a deadline for 'post-trial' motions (*e.g.*, motions for judgment) to be filed by May 3, 2013 . . . this does not appear to encompass post-*judgment* motions, such as a motion for attorneys' fees or a bill of costs." Defs.' Resp. at 2. Defendants further argue that "[b]ecause no judgment has yet been entered, it is impossible to determine whether the Plaintiffs are entitled to recover the costs they seek at this time . . . ." and, thus, "reserve the right to file an additional response to Plaintiffs' Motion after the Court enters judgment." *Id.* at 3. Defendants addressed in their Response Plaintiffs' entitlement to attorneys' fees but did not address the merits of Plaintiffs' request for an award of costs. It is premature to rule on the amount of costs that Plaintiffs are entitled to at this time, and the Court will do so only if the parties dispute the amounts identified in Plaintiffs' bill of costs, once filed. *See infra* at 17. The Court will, however, rule now on Plaintiffs' entitlement to attorneys' fees, and in what amount.

> This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. . . . [T]he most critical factor is the degree of success obtained.

*Id.* at 435-36.

Defendants do not contest that Plaintiffs' counsels' hourly rates are reasonable, and Defendants do not appear to urge generally that the work performed by counsel was unnecessary,[20] or that the time spent on that work was unreasonable.  Rather, Defendants argue that Plaintiffs' fees are excessive because they have failed to segregate their successful claims from their unsuccessful claims; that is, Defendants contend that any fees awarded to Plaintiffs must be reduced commensurate with the degree of success that Plaintiffs secured on the underlying claims on which they originally brought suit.

Plaintiffs' argument that they have achieved total success, because they prevailed on their RICO causes of action makes little sense where, as here:  (1) Plaintiffs' causes of action were based on 721 underlying insurance claims; and (2) Plaintiffs asserted additional causes of action but did not recover on them.  Taking Plaintiffs' argument to its logical end would require a full award of fees even were Plaintiffs to prevail on only a single claim of hundreds originally brought.  The Court, therefore, exercises its discretion to reduce the fees sought by Plaintiffs commensurate with the level of success achieved by them in this case.  Plaintiffs originally brought suit based on 721 underlying claims.  *See* Pls.' Reply at 9 ("Allstate pursued causes of action under the federal and Ohio RICO statutes and sought damages based on payment of 721 *underlying* insurance claims.").  Of the claims initially brought, only 555 were actually submitted to the jury.  Of those submitted to the jury, damages were awarded on only 391 claims.  Plaintiffs succeeded on roughly 54% of the underlying insurance claims initially sued upon.

---

[20] The Court finds without merit Defendants' argument that Plaintiffs' fees must be reduced to the extent that Plaintiffs spent time in pursuing their argument that reliance is not an element of a RICO claim.

The Court, therefore, finds that Plaintiffs should recover 54% of the total attorneys' fees they seek. Plaintiffs are, therefore, entitled to recover $1,027,623.65 in attorneys' fees. Plaintiffs shall further be entitled to taxable court costs. After Plaintiffs file a bill of costs, Defendants may dispute the amount of same, and they will then be subject to judicial review.

## VI. CONCLUSION

For the aforementioned reasons, the Court finds that judgment should be entered in Plaintiffs' favor. A separate judgment will be entered.

**SO ORDERED**.

March 31, 2014.

_____
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS