IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, ET AL., | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | No. 3:08-cv-388-M |
| MICHAEL KENT PLAMBECK, D.C., ET AL., | § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

The "Chiropractic Defendants" – defined as those parties that filed Chiropractic Defendants' First Amended Answer [Dkt. No. 143], except for Brownsville Chiropractic Clinic, Inc., Main Street Chiropractic, Inc., Monon Trail Chiropractic, Inc., and West TUSC Chiropractic, Inc. – filed a Motion to Review Taxation of Costs [Dkt. No. 703]. District Judge Barbara M.G. Lynn has referred this motion to the undersigned magistrate judge. *See* Dkt. No. 709. Plaintiffs have responded, *see* Dkt. No. 704, but the Chiropractic Defendants have not filed a reply, and their time to do so has passed, *see* N.D. Tex. L. Civ. R. 7.1(f). Based on the following findings of fact and conclusions of law, the Motion to Review Taxation of Costs [Dkt. No. 703] should be denied.

**Background**

Neither the parties nor Judge Lynn need any general briefing from the undersigned on the background of this case.

-1-

On April 16, 2014, the Court entered its Final Judgment [Dkt. No. 691], and Plaintiffs then filed their Bill of Costs [Dkt. No. 692], requesting taxable costs in the amount of $119,162.37, as well as another Bill of Costs [Dkt. No. 693], as Counter-Defendants, requesting taxable costs in the amount of $19,531.57. (For ease of reference, the undersigned will refer to Plaintiffs/Counter-Defendants simply as "Plaintiffs" unless the context dictates otherwise.) The Clerk of the Court has taxed these amounts against Defendants. *See* Dkt. Nos. 699 & 700.

The Chiropractic Defendants challenge certain costs taxed for what the Chiropractic Defendants describe as "duplicative deposition charges (i.e., charging for both stenographic and video recordings of depositions) and charges for multiple copies of documents." Dkt. No. 703 at 1.

## Legal Standards and Analysis

Taxable costs are recoverable under 28 U.S.C. § 1920. Section 1920(2) authorizes recovery of costs "for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Section 1920(4) authorizes recovery of "costs of making copies of any materials where the copies are necessarily obtained for use in the case." *Id.* § 1920(4). The party seeking recovery of costs bears the "burden of justifying the necessity of obtaining the depositions and copies at issue." *Fogleman v. ARAMCO (Arabian Am. Oil Co.)*, 920 F.2d 278, 286 (5th Cir. 1991).

<u>Objections to Costs for Video Recordings of Depositions</u>

Plaintiffs sought recovery of their costs for stenographic transcripts of the numerous depositions taken in this case as well as the costs for video recording of those

depositions that were videotaped. *See* Dkt. Nos. 692, 693, 699, & 700. "[T]he Chiropractic Defendants do not dispute that the Plaintiffs are entitled to their costs for stenographic transcripts of the numerous depositions taken herein," but the Chiropractic Defendants assert that "no showing can be made that [Plaintiffs] are entitled to recover the costs of the video recording thereof, save for those depositions for which the videos were actually utilized at trial." Dkt. No. 703 at 3. According to the Chiropractic Defendants, Plaintiffs' "bills of cost list 74 volumes of depositions for which they seek to recover stenographic transcripts," and, "[f]or 58 of those volumes, [Plaintiffs] also request costs for the 'video fee' of the same deposition/volume." *Id.* at 3-4. But, the Chiropractic Defendants contend, "at the trial of this cause, 38 of those depositions (by volume) played no role at all." *Id.* at 4. The Chiropractic Defendants argue that "the need to obtain video deposition copies was particularly wanting with regard to the depositions of the parties or party representatives and their experts, who [Plaintiffs] should have reasonably anticipated would be present at trial." *Id.* "[W]ith regard to such depositions taken in this case," the Chiropractic Defendants continue, "the only use of the depositions which was ever presented before the Court was the use of the stenographic transcript, which transcripts were undisputedly utilized by both sides to identify relevant deposition excerpts in the pretrial proceedings." *Id.*

The Chiropractic Defendants request a reduction in the Plaintiffs' taxable cost in the amount of $18,973.57 – $13,713.57 from Plaintiffs' Bill of Costs [Doc. 692], *see* Dkt. No. 699, and $5,260.00 from Counter-Defendants' Bill of Costs [Doc. 693], *see* Dkt. No. 700 – for costs that they allege are not properly recoverable under 28 U.S.C. §

1920(2). *See* Dkt. No. 703 at 4 & n.4. They make two arguments to support this request.

First, the Chiropractic Defendants contend that, while videotape deposition costs and deposition transcripts are both recoverable costs, the Court should not award costs for both transcripts and videos unless the videos were actually used at trial. *See id.* at 2. According to the Chiropractic Defendants, because Section 1920(2) utilizes the disjunctive "or" when discussing recoverable costs for "printed or electronically recorded transcripts," it would be contrary to the plain language of Section 1920 to allow Plaintiffs to recover costs for both stenographic transcripts and video costs for the same depositions. *See id.* at 3 (quoting 28 U.S.C. § 1920(2)).

Second, the Chiropractic Defendants assert that, because the videos of the depositions in this case were not used at trial, the video copy of same simply was not "obtained for use in the case," and, as a result, the costs for video recording of those depositions should not be deemed taxable. *See id.* at 4 (quoting 28 U.S.C. § 1920(2)).

As to the first argument, although the scope of taxable costs is "narrow" and "modest" and "limited by statute," *Taniguichi v. Kan P. Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012), the governing statute, 28 U.S.C. § 1920(2), as amended in 2008, indisputably authorizes recovery of costs for video recordings of depositions, *see* 28 U.S.C. § 1920(2); *S & D Trading Academy, LLC v. AAFIS, Inc.*, 336 F. App'x 443, 450-51 (5th Cir. 2009). And several judges in Texas have permitted recovery of costs for both the stenographic transcript and video recording of the same depositions in a case, so long as both were reasonably obtained for use in the case. *See, e.g., Cox v. Waste*

-4-

*Mgmt. Of Tex., Inc.*, Civ. A. No. H-10-1626, 2013 WL 690849, at *2 (S.D. Tex. Feb. 25, 2013); *Eolas Techs. Inc. v. Adobe Sys., Inc.*, 891 F. Supp. 2d 803, 805 (E.D. Tex. 2012). But other Texas judges – apparently in an exercise of discretion and not as a matter of statutory interpretation – have taken the position that recovery of costs for both transcripts and videos will not be allowed unless the videos were actually used at trial. *See, e.g.*, *Structural Metals, Inc. v. S & C Elec. Co.*, No. SA-09-CV-984-XR, 2013 WL 3790450, at *4 (W.D. Tex. July 19, 2013); *Nilesh Enters., Inc. v. Lawyers Title Ins. Corp.*, No. SA-08-CV-661-XR, 2010 WL 2671728, at *3 (W.D. Tex. July 1, 2010) (citing *HEI Res. E. OMG Joint Venture v. S. Lavon Evans*, No. 5:07-CV-62, 2010 WL 536997, at *5 (S.D. Tex. Feb. 10, 2010)). Yet judges on courts outside this circuit have held that Section 1920(2), based on its text, only permits recovery of costs for the stenographic transcript or the video recording of a deposition – but not both. *See, e.g.*, *Am. Guarantee & Liab. Ins. Co. v. U.S. Fid. & Guar. Co.*, 4:06CV655RWS, 2010 WL 1935998, at *2 (E.D. Mo. May 10, 2010).

Neither the United States Supreme Court nor the United States Court of Appeals for the Fifth Circuit has not directly addressed this issue. But their decisions interpreting and applying Section 1920 provide helpful guidance.

The Supreme Court has generally advised that "[s]tatutory interpretation focuses on 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *Caraco Pharm. Labs., Ltd. V. Novo Nordisk A/S*, 132 S. Ct. 1670, 1680 (2012) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). While a statutory construction analysis always begins with the

statutory language itself, context often matters when determining a statute's meaning. *See, e.g.*, *Caraco Pharm.*, 132 S. Ct. at 1680-81; *FCC v. AT&T, Inc.*, 131 S. Ct. 1177, 1182, 1184 (2011); *Johnson v. United States*, 559 U.S. 133, 139 (2010).

When interpreting the language of Section 1920's provisions authorizing recovery of costs, the Supreme Court has looked to "the ordinary meaning of the cost items Congress authorized" within "the statutory context." *Taniguichi*, 132 S. Ct. at 2004, 2005 n.5, 2006. The Fifth Circuit, sitting *en banc*, has explained that Supreme Court precedent regarding Section 1920 "limits judicial discretion with regard to the kind of expenses that may be recovered as costs; it does not, however, prevent courts from interpreting the meaning of the phrases used in § 1920." *Gaddis v. United States*, 381 F.3d 444, 455 (5th Cir. 2004) (en banc) (internal quotation marks omitted). That is, while the Supreme Court has dictated that courts must strictly construe the kinds of expenses that may be recovered under Section 1920, *see S & D Trading*, 336 F. App'x at 450, the Supreme Court and Fifth Circuit agree that nothing requires courts to narrowly interpret Section 1920's "plain statutory language," *Gaddis*, 381 F.3d at 457; *accord Taniguichi*, 132 S. Ct. at 2005 ("No other rule of construction compels us to depart from the ordinary meaning of 'interpreter.'").

More specifically as to costs relating to depositions, the Fifth Circuit has held that "[c]osts related to the taking of depositions are allowed under § 1920(2) and (4) 'if the materials were necessarily obtained for use in the case.'" *Marmillion v. Am. Intern. Ins. Co.*, 381 F. App'x 421, 429 (5th Cir. 2010) (quoting *Stearns Airport Equip. Co., Inc. v. FMC Corp.*, 170 F.3d 518, 536 (5th Cir. 1999)). "[A] deposition need not be

introduced into evidence at trial in order to be 'necessarily obtained for use in the case.'" *Fogleman*, 920 F.2d at 285. "A deposition is necessarily obtained for use in the case '[i]f, at the time the deposition was taken, a deposition could reasonably be expected to be used for trial preparation, rather than merely for discovery.'" *Marmillion*, 381 F. App'x at 429 (quoting *Fogleman*, 920 F.2d at 285). And "a deposition copy obtained for use during trial or for trial preparation, rather than for the mere convenience of counsel, may be included in taxable costs." *Fogleman*, 920 F.2d at 285.

With these background rules and principles in mind, the undersigned concludes that 28 U.S.C. § 1920(2)'s authorization for recovery of costs "for printed or electronically recorded transcripts necessarily obtained for use in the case" is not limited to costs for the printed transcript or the video recording of a deposition but not both.

Turning first to to the statutory language itself, the Court need not venture into authorities that hold that "and" sometimes means "or" and "or" sometimes means "and" or into an analysis of whether Section 1920(2)'s use of the word "or" is "conjunctive" or "disjunctive." *Cf. Bruce v. First Fed'l Savs. & Loan Ass'n*, 837 F.2d 712, 714-15 & n.2 (5th Cir. 1988) (collecting cases). Section 1920(2) certainly employs the word "or" (in one sense) disjunctively, rather than conjunctively – at least insofar as recovery is not limited to costs associated with depositions as to which a party has obtained both the paper transcript and video recording of a videotaped deposition. But the undersigned respectfully disagrees with other courts that have concluded that Section 1920(2)'s

disjunctive use of "or" indicates, in ordinary usage, an alternative and "means that the statute should be construed to permit either stenographic transcription or video-recording of depositions, but not both."*Am. Guarantee*, 2010 WL 1935998, at *2.

The ordinary meaning of "or," as used disjunctively, is not to indicate an exclusive alternative – that is, one or the other but not both. At least, that is not the only ordinary usage of the word "or." Rather, the word "or" "can be used in both an 'inclusive' sense ('A or B [or both]') and an 'exclusive' sense ('A or B [but not both]')." *Shaw v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 605 F.3d 1250, 1254 n.8 (11th Cir. 2010). By way of illustration, the United States Court of Appeals for the Eleventh Circuit has offered the following example:

> Compare the phrase, "if you are a husband or a father, you'll understand," with, "you may eat an apple or an orange." In the first example, the or is probably inclusive (people who are both husbands and fathers will probably understand, too), but in the second, it is probably exclusive (you are probably not allowed to eat both fruits).

*Id.* But, while the meaning of "or" will always depend on the context of its use, and "both senses of 'or' are commonly used," "the inclusive use of 'or' is the more common." *B-50.com, LLC v. InfoSync Services, LLC*, No. 3:10-cv-1994-D, 2014 WL 285096, at *7 (N.D. Tex. Jan. 27, 2014).

It is not the case, then, that "or," when used to mean "or" and not "and," ordinarily signifies a choice between A and B and a prohibition on choosing both. As one district judge has explained, "'printed or electronically recorded transcripts' does not mean that costs may be taxed for only one of the two recited types of transcripts,"

because, "[a]bsent a qualifying 'either,' 'or' is typically interpreted in the inclusive manner." *Eolas*, 891 F. Supp. 2d at 805.

No other rule of construction requires the Court to narrowly construe Section 1920(2)'s language. *See Taniguichi*, 132 S. Ct. at 2005; *Gaddis*, 381 F.3d at 457. Neither does Section 1920 contain other, limiting words or phrases – such as "either" or "but not both" – that might support reading Section 1920(2)'s use of "or" in the "exclusive" sense.

And the reading of Section 1920(2)'s use of "or" in the "inclusive" sense is the best interpretation in the context of Section 1920 as a whole and the courts' background rules interpreting and applying Section 1920(2) and the "real-world" context in which Section 1920(2)'s authorization of cost recovery operates. As the United States Court of Appeals for the Tenth Circuit explained in a decision issued prior to Section 1920(2)'s 2008 amendment, "in most cases" both a transcript and the video recording of a videotapes deposition will be "necessarily obtained for use in the case." *Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471, 1478 (10th Cir. 1997). For either trial preparation or use at trial, reliance on a video recording alone will rarely be effective, yet a party may also reasonably expect that the video recording, along with the paper transcript, will be reasonably necessary during trial or for trial preparation. *See id.*; *cf. United States v. Kolesar*, 313 F.2d 835, 840 (5th Cir. 1963) ("Effective cross examination of witnesses frequently rests on availability of pretrial depositions either of that witness or other witnesses. This, as all lawyers – and lawyers-turned-judges – know is not a spur of the moment bit of legal forensics. Like the rest of successful trial

advocacy, it depends on preparation. Preparation means selection and that means mechanical aids such as checks, underscoring, marginal notes, and the like."). As one judge explained, "it cannot be said that a videotape of a deposition is wholly duplicative of a transcript of the same deposition because the transcript only captures verbal communication, while the videotape captures both verbal and nonverbal communication." *Baisden v. I'm Ready Prods., Inc.*, 793 F. Supp. 2d 970, 977 (S.D. Tex. 2011). And it may be "reasonable to believe that videotapes would be necessary at trial if any of the witnesses were unable to testify in person, or if a witness testified inconsistently with his or her deposition testimony." *Id.*

Reading Section 1920(2)'s use of "or" in the "inclusive" sense also is in keeping with the statutory command that a transcript or recording each must be "necessarily obtained for use in the case." 28 U.S.C. § 1920(2); *Marmillion*, 381 F. App'x at 429. Nothing in Section 1920(2)'s text itself suggests that printed transcripts and electronically recorded transcripts cannot both be necessarily obtained for use in the case – that is, that a printed transcript can be necessarily obtained for use in the case only when an electronically recorded transcript has not been obtained or that an electronically recorded transcript can be necessarily obtained for use in the case only when a printed transcript has not been obtained.

Further, as one court has noted, the 2008 amendment to Section 1920(2) apparently "was intended to clarify or expand the scope of recoverable costs under the statute." *Higgins v. Potter*, No. 08-2646-JWL, 2011 WL 3667097, at *3 (D. Kan. Aug. 22, 2011). Congress enacted the amendment against the backdrop of differing

interpretations of the scope of the earlier version of Section 1920(2), where courts including the Fifth Circuit had interpreted Section 1920(2) to exclude the recovery of costs for video recordings of depositions. *See S & D Trading*, 336 F. App'x at 450. Accordingly, the majority of district courts have adopted the interpretation of "the amended Section 1920(2) as merely a recognition by Congress that depositions can be recorded by both stenographic and non-stenographic means rather than a limitation on the scope of taxable costs." *Higgins*, 2011 WL 3667097, at *2. The alternative view of Congress's intent is difficult to understand. It is not clear what would support the view that Congress amended the statute to expressly authorize a prevailing party to recover costs for videotaped depositions but only if the party foregoes recovery of the costs of stenographic transcripts that courts had agreed that Section 1920(2) already permitted.

Reading Section 1920(2)'s use of "or" in the "inclusive" sense is also consistent with the Fifth Circuit's holdings that "necessarily obtained for use in the case" means that, "at the time the deposition was taken, [the] deposition could reasonably be expected to be used for trial preparation, rather than merely for discovery," and any "deposition copy [was] obtained for use during trial or for trial preparation, rather than for the mere convenience of counsel." *Fogleman*, 920 F.2d at 285. So long as each version (the paper transcript and video recording) of a videotaped deposition had a legitimate use independent from the other version – so long as both the paper transcript and video recording of a videotaped deposition are necessarily obtained for use in the case – Section 1920(2)'s language and context suggest that the statutory

authorization for recovery of costs is not limited to costs for the printed transcript <u>or</u> the video recording of a deposition but not both.

On the basis of Section 1920(2)'s language itself, the specific context in which that language is used, and the broader context of Section 1920 as a whole, the undersigned concludes that Section 1920(2) authorizes recovery of costs for the printed transcript or the video recording of a deposition or both and "permits costs to be taxed for both printed and electronically recorded transcripts so long as they are [each] 'necessarily obtained for use in the case.'" *Eolas*, 891 F. Supp. 2d at 805. And this does not require the actual use at trial of both the paper transcript and the video recording. Rather, Section 1920(2) authorizes recovery of the cost for both so long as, at the time that a transcript was obtained and a video recording were made, each could reasonably be expected to be used during trial or for trial preparation, rather than for the mere convenience of counsel or merely for discovery. *See Marmillion*, 381 F. App'x at 429; *Fogleman*, 920 F.2d at 285.

This leads to the Chiropractic Defendants' second basis for objecting to the taxed costs for the video recordings of depositions – that the video recordings were not obtained for use in the case as Section 1920(2) requires for recovery of costs. "The Chiropractic Defendants contend that the video depositions of the following individuals are not properly taxable due to the fact that the video was not utilized at trial: Michael Capobianco, Stephanie Carey, Lindley Cohen, Michelle Cristan, Arthur Croft, Gary Evans, Michael Freeman, Douglas Friedman, Jennifer Giessner, Paul Grindstaff, Darrell Hobson, Curtis Hoyt, Gary Martin, James Mathis, Aaron Patterson, Michael

Plambeck, William Ramsey, Joseph Rocha, Michael Sierra, Alisha Thibodaux, Ruthie Thomas, and Bill Timberlake, along with all of the video depositions from the counter-claim due to the fact that none was ever utilized or cited." Dkt. No. 703 at 3 n.3. As Plaintiffs note, "the Chiropractic Defendants do not complain of inadequate supporting documentation of the video deposition costs, but only that the costs should not be taxed because they were not used at trial." Dkt. No. 704 at 8; *accord* Dkt. No. 703; Dkt. No. 704 at 2.

Plaintiffs respond that "five of the depositions listed by the Chiropractic Defendants were, in fact, used at the trial"; that "[t]he remainder were, at the time of the deposition, reasonably video recorded (or, in the case of depositions taken by Defendants, copies of the video reasonably obtained) in anticipation of use in trial preparation or at trial"; that "several of the video depositions at issue were utilized in a presentation during the May 2009 mediation of the case"; that "[s]ome of the depositions at issue were in fact 'trial' depositions, of witnesses beyond the subpoena range of the Court, and thus intended at the time taken to be presented at trial"; and that, as to "the counterclaim video depositions, none were presented at trial, as the Court granted complete summary judgment on the counterclaims after the video depositions were taken." Dkt. No. 704 at 2, 6.

As to the depositions of Friedman, Cristan, Hoyt, Sierra, and Thomas, Plaintiffs explain that these video depositions were played at trial. *See id.* at 9; Dkt. No. 705 at 5 of 9. Because the Chiropractic Defendants object to the costs for "video fees" for these depositions only on the basis that the videotaped depositions were not used at trial, the

undersigned finds that Plaintiffs have shown that these video recordings were reasonably expected to be used during trial, that the videotaped depositions were necessarily obtained for use in the case, and that the taxed costs for these videotaped depositions (totaling $1,939.25, *see* Dkt. No. 692 at 5-6 of 67) should be allowed over the Chiropractic Defendants' objections, which should be denied.

As to the videotaped deposition of Alisha Thibodaux, Plaintiff explains that, while Thibodaux was ultimately was able to appear at trial, at the time that her video deposition was conducted, Thibodaux had been charged with theft, and, as a Louisiana resident, Plaintiffs could not subpoena her to appear at trial. *See* Dkt. No. 704 at 9; Dkt. No. 705 at 5 of 9. In fact, although Plaintiffs stated an intention at the pretrial conference to call Thibodaux live at trial, the parties submitted designated testimony from both of Thibodaux's depositions and the parties' respective objections for a pretrial ruling. *See* Dkt. No. 607 at 18. The undersigned finds that Plaintiffs reasonably expected, at the time the deposition was taken, that Thibodaux might not be available to testify and that the video deposition would be used at trial. Accordingly, the videotaped deposition was necessarily obtained for use in the case. The taxed cost for this videotaped deposition ($573.75, *see* Dkt. No. 692 at 5-6 of 67) should be allowed over the Chiropractic Defendants' objection, which should be denied.

In addition to Friedman's deposition, which was played at trial, the Chiropractic Defendants complain of the video depositions of five other defendants – Plambeck, Capobianco, Giessner (individually and as a corporate representative), and Grindstaff. Plaintiffs respond that the litigation involved alleged activity in a number of states and

that, at the time of the depositions, only three of these Defendants – Plambeck, Grindstaff, and Giessner – had residences within the Court's subpoena range of the Court, and Plambeck had another home in Kenner, Louisiana and then changed his residency from Texas to Florida during the course of the litigation, while Giessner changed her residence from Tarrant County, Texas, to Hamilton County, Texas, after the litigation was filed. *See* Dkt. No. 704 at 10 & n.3 Plaintiffs contend that there was therefore a possibility that some defendants would not appear at trial and note that, in fact, five of the ten defendants that Plaintiffs deposed (Friedman, Randy Toca, Ric Toca, Charles Mora, and Irma Escandon) ultimately did not appear at the 2013 trial, and their video depositions were presented, showing Plaintiffs' videoing of defendants' depositions was not without sound basis. *See id.* at 10. Plaintiffs also note that "Giessner's video depositions would have been used at trial, but for the fact she was barely within the subpoena range of the Court and was served a trial subpoena during the trial." *Id.*

Given the nature of this litigation and the possibility that individual defendants might not appear at trial or be within the Court's subpoena power, the undersigned finds that Plaintiffs reasonably expected, at the time the depositions were taken, that Plambeck, Capobianco, Giessner, and Grindstaff might not be available to testify and that the video deposition would be used at trial. Accordingly, these videotaped depositions were necessarily obtained for use in the case. The taxed costs for these videotaped depositions (totaling $4,462.50, *see* Dkt. No. 692 at 5-6 of 67) should be allowed over the Chiropractic Defendants' objections, which should be denied.

As to the videotaped deposition of Gary Evans, Plaintiffs explain that this was taken by the Chiropractic Defendants, in Evans's county of residence (Bexar County); that Plaintiffs obtained a copy of the video for possible presentation at trial; that the Chiropractic Defendants named Evans as a possible witness and designated portions of his deposition to be presented at trial but ultimately did not present Evans's testimony. *See* Dkt. No. 704 at 11. In fact, the undersigned ruled on objections to Evans's designated deposition testimony in anticipation of its possible presentation at trial. *See* Dkt. No. 609 at 22. On the basis of these facts, the undersigned finds that Plaintiffs reasonably expected that Evans's video deposition would be used at trial and that Plaintiffs' copy of the videotaped deposition was necessarily obtained for use in the case. The taxed cost for the copy of this videotaped deposition ($225.00, *see* Dkt. No. 692 at 5-6 of 67) should be allowed over the Chiropractic Defendants' objection, which should be denied.

The Chiropractic Defendants also object to the costs related to two other telephonic videotaped depositions – Stephanie Carey and Lindley Cohen. Plaintiffs explains that Carey's deposition was also taken as a counterclaim witness; that Plaintiffs sought to present these depositions at trial and portions of these witnesses' deposition testimony; but that, in response to the Chiropractic Defendants' motion in limine, the Court precluded the testimony, although portions of the testimony, in written form, were presented as offers of proof. *See* Dkt. No. 704 at 11. On the basis of these facts, the undersigned finds that Plaintiffs reasonably expected that Carey's and Cohen's video depositions would be used at trial and that the videotaped depositions

were necessarily obtained for use in the case. The taxed costs for these videotaped depositions ($692.27, *see* Dkt. No. 692 at 5-6 of 67) should be allowed over the Chiropractic Defendants' objections, which should be denied.

The Chiropractic Defendants also object to the taxed costs for the video fees for Plaintiffs' depositions of Defendants' experts Croft, Freeman, Martin, Mathis, Ramsey, and Hobson. Plaintiffs argue that videotaping these depositions was reasonable at the time the depositions were taken, in the event that Defendants presented testimony of some of their experts through the depositions, and Plaintiffs note that Croft, Freeman, Mathis, and Ramsey resided in (respectively) California, Oregon, Nevada, and Ohio. *See* Dkt. No. 704 at 11-12. On the basis of these facts, the undersigned finds that, at the time that these video recordings were made, the video recordings could reasonably be expected to be used during trial or for trial preparation, rather than for the mere convenience of counsel or merely for discovery, and that the videotaped depositions were necessarily obtained for use in the case. The taxed costs for these videotaped depositions ($4,095.80, *see* Dkt. No. 692 at 5-6 of 67) should be allowed over the Chiropractic Defendants' objections, which should be denied.

The Chiropractic Defendants also object to the taxed costs for the video fees for the depositions of Patterson, Rocha, and Timberlake. But Plaintiffs explain that the Chiropractic Defendants video recorded the depositions they took of Allstate representatives Patterson and Rocha and Allstate chiropractic expert Timberlake and that Plaintiffs obtained copies from the videographer in case Defendants presented any of the video at trial. *See* Dkt. No. 704 at 12. On the basis of these facts, the undersigned

finds that, at the time that these video recordings were made, the video recordings could reasonably be expected to be used during trial or for trial preparation, rather than for the mere convenience of counsel or merely for discovery, and that Plaintiffs' copies of the videotaped depositions were necessarily obtained for use in the case. The taxed costs for the copies of these videotaped depositions ($1,725.00, *see* Dkt. No. 692 at 5-6 of 67) should be allowed over the Chiropractic Defendants' objections, which should be denied.

Finally, the Chiropractic Defendants object to the taxed costs for the ten video depositions taken in connection with Plaintiffs' counterclaims because none was ever utilized or cited. But Plaintiffs respond that the counterclaims did not go to trial because the Court granted complete summary judgment in Allstate's favor as to the counterclaims but that, at the time the depositions were taken before that summary judgment ruling, it could reasonably be expected that they would be used in trial preparation or at trial. *See* Dkt. No. 704 at 13. The undersigned agrees. When it comes to taxable costs, Plaintiffs should not lose for winning as the Chiropractic Defendants suggest. On the basis of these facts, the undersigned finds that, at the time that these video recordings were made, the video recordings could reasonably be expected to be used during trial or for trial preparation, rather than for the mere convenience of counsel or merely for discovery, and that the videotaped depositions were necessarily obtained for use in the case. The taxed costs for these videotaped depositions ($5,260.00, *see* Dkt. No. 693 at 2-3) should be allowed over the Chiropractic Defendants' objections, which should be denied.

Objections to Costs for Multiple Copies of Documents

The Chiropractic Defendants also object to the taxed costs for charges for multiple copies of documents – that is, that Plaintiffs have, in several instances, sought recovery for excess numbers of copies. *See* Dkt. No. 703 at 5. Specifically, the Chiropractic Defendants complain that "Plaintiffs have sought to recover for six sets of 1,507 copies and eight 'Sets of Documents' in binders," "for six sets of 2,133 copies, six sets of 251 color copies, and seven sets of tabs," and for "six sets of 1,345 copies." *Id.* According to the Chiropractic Defendants, "Plaintiffs have proffered no explanation as to why six or more sets of copies were required in this instance," and, "with regard to those copies which relate to exhibits introduced at trial, at most three sets of copies would have been sufficient (one for Plaintiffs, one to provide to the Chiropractic Defendants, and one for the Court) and for reproductions which were not of exhibits for trial, two sets of documents would have been sufficient, one for each side." *Id.* The Chiropractic Defendants contend that "the cited reproduction charges should be, at minimum, halved so that the Chiropractic Defendants are charged only for taxable costs necessarily obtained for use in the case rather those which have been obtained only for the convenience of counsel." *Id.* The Chiropractic Defendants request a total reduction of $2,387.59 in the taxed copying costs. *See id.*

Plaintiffs respond that, "[a]t the time trial commenced, Michael Plambeck had separate counsel from the other Chiropractic Defendants"; "there were two pro-se Defendants – Randall Toca and Eugene Mercier (although, ultimately, neither

appeared)"; and, "[t]herefore, Allstate anticipated (in regard to exhibits, etc.) that there would be four defense counsel or pro-se defendants at trial." Dkt. No. 704 at 3.

Under Section 1920(4), "reproductions necessarily obtained for use in the case are included within taxable costs, provided that the prevailing party demonstrates that necessity." *Fogleman*, 920 F.2d at 286 (footnotes omitted). The Fifth Circuit has explained that "[the losing party] should be taxed for the cost of reproducing relevant documents and exhibits for use in the case, but should not be held responsible for multiple copies of documents, attorney correspondence, or any of the other multitude of papers that may pass through a law firm's xerox machines." *Id*. While taxable costs include charges for "copies made as part of discovery and the copies of documents filed with the court," "[e]xtra copies for the convenience of counsel are not considered necessary for these purposes and therefore not taxed as costs." *Iniekpo v. Avstar Int'l Corp.*, No. SA-07-CA-879-XR, 2010 WL 3909321, at *2 n.21 (W.D. Tex. Sept. 30, 2010).

The undersigned finds that Plaintiffs have met this standard as to the challenged copy costs. Plaintiffs assert that they did not obtain multiple copies for convenience of their counsel but because the copies were necessary for use in the case. *See* Dkt. No. 704 at 5. Specifically, one challenged invoice for copying expenses related what Plaintiffs' bill of costs identified as Plaintiffs' response to the Chiropractic Defendants' motion for summary judgment. *See id*. at 4; *accord* Dkt. No. 692 at 3, 187; Dkt. No. 705 at 4, 6-9. Plaintiffs explain that the Chiropractic Defendants' summary judgment motion and brief totaled some 124 pages, with a 2,544 page appendix and that Plaintiffs' Summary Judgment Response, supporting Brief, and 1,520-page

appendix was filed on August 3, 2009, four days after the invoice date. *See* Dkt. No. 704 at 5. Plaintiff explains that, as to the six copies concerning the summary judgment response, one copy was forwarded to the assigned U.S. Magistrate Judge pursuant to the procedures of the Court and the other copies were forwarded by certified mail to five *pro se* parties (Randy Toca, Ric Toca, Angel Junio, Mercier, and Robert Ekin) who did not receive electronic filings, as reflected in the certificates of service for the Allstate filings. *See id.*

Plaintiffs note that the other challenged invoices for copying expenses related what Plaintiffs' bill of costs identified as trial exhibits. *See id.* at 4; *accord* Dkt. No. 692 at 3,188-90; Dkt. No. 705 at 4-5. Plaintiffs explain that "the six copies referenced in the three invoices concerning trial exhibits were necessitated by the number of defense counsel and pro-se defendants" and that, "[p]rior to trial, it was anticipated, in addition to a copy for the Court and a copy for Allstate's own counsel, copies would be provided to counsel for Defendant Plambeck, the separate counsel for the other Chiropractic Defendants, as well as pro-se Defendants Randall Toca and Eugene Mercier." Dkt. No. 704 at 5-6.

On the basis of these facts, the undersigned finds that the copies as to which the Chiropractic Defendants object were necessarily obtained by Plaintiffs for use in the case and were not made for Plaintiffs' counsel's convenience and that the taxed costs for these expenses (*see* Dkt. No. 692 at 3, 187-90) should be allowed over the Chiropractic Defendants' objections, which should be denied.

**Recommendation**

The Chiropractic Defendants' Motion to Review Taxation of Costs [Dkt. No. 703] should be denied. The Chiropractic Defendants' objections to the costs taxed by the Clerk of the Court, *see* Dkt. Nos. 699 & 700, should be denied.

Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 2, 2014

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE